Craig Solomon  Ganz (TX Bar. No. 24127203)
ganzc@ballardspahr.com
Michael S. Myers (AZ Bar No. 029978)
myersm@ballardspahr.com
Joel F. Newell (TX Bar No. 24137409)
newellj@ballardspahr.com
BALLARD SPAHR LLP
1 East Washington  Street, Suite 2300
Phoenix, Arizona  85004
Telephone: (602) 798-5400
Facsimile:  (602) 798-5595

*Attorneys for Broadstone ZCW Portfolio, LLC, Realty Income Illinois Properties I, LLC, Realty Income Properties 17, LLC, Realty Income Properties 21, LLC, Realty Income Properties 26, LLC,  Realty Income Properties 29, LLC, Realty Income Properties 30, LLC, MDC NC1, LP, MDC NC2, LP,  MDC Coast 7, LLC, MDC Coast 16, LLC, MDC Coast 20, LLC, MDC Coast 26, LLC,  Spirit Master Funding X, LLC, Spirit Realty, L.P., SCF RC Funding IV, LLC, Store Capital Acquisitions, LLC, STORE Master Funding VII, LLC, FSC ZCW Roanoke VA, LLC, and,  FSC ZCW Lynchburg, VA, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 25-80069 (MVL) |
| | § | |
| ZIPS CAR WASH, LLC *et. al.*[1] | § | Chapter 11 |
| | § | |
| Debtors. | § | |

**BROADSTONE ZCW PORTFOLIO, LLC, REALTY INCOME CORPORATION, SCF RC FUNDING IV, LLC, STORE CAPITAL ACQUISITIONS, LLC STORE MASTER FUNDING VII, LLC's AND FSC ZCW ROANOKE VA, LLC, AND, FSC ZCW LYNCHBURG, VA, LLC OBJECTION TO DEBTOR'S JOINT PLAN OF REORGANIZATION OF ZIPS CAR WASH, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Zips Car Wash, LLC (3045); Express Car Wash Holdings, LLC (6223); Zips 2900 Wade Hampton, LLC (N/A); Zips 3107 N. Pleasantburg, LLC (N/A); Zips 6050 Wade Hampton, LLC (N/A); Zips Operating Holdings, LLC (2161); Zips Portfolio I, LLC (9999); Zips Portfolio II, LLC (1864); Zips Portfolio III, LLC (N/A) and Zips Portfolio IV, LLC (N/A).

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ...................................................................................................... 3

II.   ARGUMENT ........................................................................................................... 4

    A.   The Plan seeks to improperly extend the time to assume or reject leases. ............. 4

    B.   The Master Leases must be assumed or rejected in toto. ...................................... 8

    C.   Debtors must provide for the cure of all outstanding lease obligations,
        including Landlords' attorneys' fees, as part of the cure amounts. ..................... 12

    D.   The Plan cannot expunge or disallow claims without due process...................... 14

    E.   The Plan improperly seeks to deprive creditors of their setoff and
        recoupment rights. ........................................................................................... 15

    F.   The injunction and release provisions of the Plan are overbroad and
        ambiguous. ....................................................................................................... 15

III.  RESERVATION OF RIGHTS ............................................................................... 17

IV.  JOINDER IN OBJECTIONS .................................................................................. 17

V.   CONCLUSION ...................................................................................................... 17

Broadstone ZCW Portfolio, LLC ("Broadstone"), Realty Income Illinois Properties I, LLC, Realty Income Properties 17, LLC, Realty Income Properties 21, LLC, Realty Income Properties 26, LLC, Realty Income Properties 29, LLC, Realty Income Properties 30, LLC, MDC NC1, LP, MDC NC2, LP, MDC Coast 7, LLC, MDC Coast 16, LLC, MDC Coast 20, LLC, MDC Coast 26, LLC, Spirit Master Funding X, LLC, Spirit Realty, L.P.,("collectively, Realty Income Corporation"), SCF RC Funding IV, LLC ("SCF"), STORE Capital Acquisitions, LLC and STORE Master Funding VII, LLC (collectively, "STORE"), FSC ZCW Roanoke VA, LLC, and, FSC ZCW Lynchburg, VA, LLC (collectively "FSC") (together, the "Landlords"), by and through their undersigned attorneys, hereby make this objection (the "Objection") to the Debtors' *Joint Plan of Reorganization of ZIPS CAR WASH, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), and respectfully represent as follows:

## I.    BACKGROUND

1.      On February 5, 2025 (the "Petition Date"), Zips Car Wash, LLC and affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases").

2.      The Debtors are authorized to continue operating their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 cases.

3.      The Debtors lease commercial space from the Landlords pursuant to unexpired leases of nonresidential real property (each, a "Lease" or "Master Lease" (as applicable) and collectively, the "Leases") at the locations (the "Properties") more fully set forth on the attached Schedule A. As summarized in Schedule A, Debtors lease multiple Properties under various Master Leases, and they lease certain individual properties under various single-site Leases.

4.      On February 7, 2025, the Debtors filed their Plan [Docket No. 16] and Disclosure Statement [Docket No. 17].  On March 18, 2024, the Court entered an order conditionally approving the Disclosure Statement, scheduling a combined Disclosure Statement and Confirmation Hearing for April 18, 2025 (the "Confirmation Date") [Docket No. 240].  On April 4, 2025, the Debtors filed the Plan Supplement [Docket No. 320].

5.      The Landlords do not object to the Debtors' efforts to confirm a plan of reorganization, but as drafted, the Plan improperly seeks to modify the Landlords' rights under their Leases and the Bankruptcy Code, including Debtors' purported attempt to sever Master Leases of multiple properties governed by such Master Leases.

6.      Counsel for the Landlords have obtained a copy of the draft Confirmation Order[2] and has proposed certain language for the inclusion therein to address many of the issues raised by this Objection. As of the time of the filing of this Objection, Landlords have previewed those comments with the Debtors.  Landlords will continue to work with the Debtors in advance of confirmation in an attempt to informally resolve the issues raised by this Objection.

## II.      ARGUMENT

### A.      The Plan seeks to improperly extend the time to assume or reject leases.

7.      The Plan would permit the Debtors "to reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule or the Rejected Executory Contracts and Unexpired Leases Schedule (if any) at any time up to forty-five (45) days after the Effective Date." *See* Plan, Article V, A.  As of the date of the filing of this Objection, Broadstone and SCF's respective Master Leases were designated for assumption, but the Leases of the other Landlords (FCS, Realty, and STORE) have not been designated for either assumption or rejection, including several Master Leases. *See* Plan Supplement.  Should the Court enter an order

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and accompanying documents.

confirming the Plan on the current April 18, 2025 Confirmation Date, it will cut off the ability of the Debtors to designate the remaining Leases for assumption or rejection beyond that date, as those Leases will be deemed rejected by operation of law within the expiration of the 365(d)(4) deadline.

8.     Section 1129(a)(1) provides that "a plan may not be confirmed unless the plan complies with the applicable provisions of Title 11 . . . ." *Mabey v. S.W. Elec. Power Co. (In the Matter of Cajun Elec. Power Cooperative, Inc.)*, 150 F. 3d 503, 513, n.3 (5th Cir. 1998) (*citing Mickey's Enters., Inc. v. Saturday Sales, Inc. (In re Mickey's Enters., Inc.)*, 165 B.R. 188, 193 (Bankr. W.D. Tex. 1994) ("In order to confirm a plan the court must find that the plan and its proponent have complied with the applicable provisions of Title 11.")). Moreover, a plan cannot be confirmed if it violates the provisions of Title 11. *See Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 298 (Bankr. N.D. Tex. 2007).

9.     The Debtors cannot reserve the right to pick and choose which Bankruptcy Code provisions to follow and which to ignore. Section 365(d)(4) requires the assumption or rejection of leases no later than the *entry of the order confirming a plan of reorganization*. That subsection provides:

> (A) Subject to subparagraph (B), *an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected*, and the trustee shall immediately surrender that nonresidential real property to the lessor, if *the trustee does not assume or reject the unexpired lease by the earlier of*--
>
> (i) the date that is 120 days after the date of the order for relief; or
>
> (ii) *the date of the entry of an order confirming a plan.*
>
> (B)(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

11 U.S.C. § 365(d)(4)(A) (emphases added).

10.     This Court has entered confirmation orders where a debtor's executory contract or unexpired lease would be assumed or rejected prior to the effective date (i.e., on the entry of the

confirmation order) or as of the effective date—but not *after* the effective date.  *See In Re Trivascular Sales LLC*, No. 20-31840 (SGJ), 2020 WL 5552598, at *51 (Bankr. N.D. Tex. Sept. 16, 2020) ("All Executory Contracts and Unexpired Leases listed on Plan Schedule V.C shall be deemed rejected as of the Effective Date."); *In re Taco Bueno Restaurants, LLC*, No. 18-33678, 2018 WL 6720774, at *56 (Bankr. N.D. Tex. Dec. 20, 2018) ("Entry of the Confirmation Order shall constitute the Court's order approving the assumptions or rejections, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases[.]"); *In re Kidkraft, Inc.*, No. 24-80045-MVL11, 2024 WL 3154690, at *67 (Bankr. N.D. Tex. June 21, 2024) (stating all executory contracts and unexpired leases shall be rejected as of the effective date *i.e.* unless designated on a schedule of assumed contracts, previously assumed or rejected by the debtors, pursuant to a final order, etc.). Here too, Debtors must abide by this requirement to confirm their Plan.

11.    As noted above, Article V of the Plan purports to give the Debtors the ability to reserve the right to assume or reject leases after entry of the Confirmation Order. This contradicts the plain language of the Bankruptcy Code and lacks support from both statutory authority and case law. Section 365(d)(4) is automatic -- the Debtors and this Court lack the statutory authority to extend the period beyond the Confirmation Date. *See In re Compuadd Corp.*, 66 B.R. 862, 866 (Bankr. W.D. Tex. 1994) (concluding that the rejection of the Debtor's shopping center leases occurred by operation of law sixty (60) days from the petition date since the debtor's did not file a motion to assume or motion to extend the time to assume or reject); *see also In re Wisper, LLC*, No. 13-10770, 2015 Bankr. LEXIS 2505, *9 (Bankr. W.D. Tenn. Feb. 13, 2015) (*citing In re Brown*, 367 B.R. 599, 603 (Bankr. S.D. Ohio 2006)) ("If a debtor-in-possession fails to assume a lease of nonresidential real property within § 365(d)(4)(A)'s time period or fails to seek an extension of that time period pursuant to § 365(d)(4)(B), the lease is deemed rejected.  Such rejection occurs by

operation of law because § 365(d)(4)'s provisions are 'self-executing.'"); *In re Dickinson Theatres,*

*Inc.*, Case No. 12-22602, 2012 Bankr. LEXIS 5684, at *8 (Bankr. D. Kan. Dec. 4, 2012) (explaining

that section 365(d)(4) "unambiguously states that a lease of nonresidential real property will be

deemed rejected unless assumed by the earlier of two dates, one of which is the date of an order of

confirmation. There is no provision in § 365(d)(4) allowing for a conditional assumption - an

assumption subject to a later option to reject. The Court therefore concludes that the Plan

violates § 365(d)(4) by attempting to extend the time for Debtor to decide whether to assume or

reject the Palm Valley portion of the Master Lease beyond the date of entry of an order

of confirmation."); *In re Esmizadeh*, 272 B.R. 377, 386 (Bankr. E.D.N.Y. 2002) ("The Landlord

has no affirmative duty to seek Lease rejection upon the expiration of the 60-day period following

the filing of the petition in bankruptcy as § 365(d)(4) of the Code states that the Lease is deemed

rejected if the Debtor (or the Trustee) fails to move to assume the Lease within the 60-day period,

and such rejection is self-executing."); *see also In re Grayson-Robinson Stores, Inc.*, 227 F. Supp.

609, 613-15 (S.D.N.Y. 1964) (pre-Code case where court refused to permit rejection of an executory

contract after plan confirmation).

12.     The Bankruptcy Code requires that all leases of non-residential real property be

assumed or rejected no later than the date of entry of the Confirmation Order, absent the written

consent by the counterparty to extend such date beyond the time permitted under the statute.

Accordingly, the Debtors must either finalize their schedule of assumed and rejected leases, or they

must delay confirmation in order to abide by the Bankruptcy Code's requirement to assume or reject

leases of nonresidential real property by the entry of the Confirmation Order. The date the

Confirmation Order is entered is controlling and cannot be circumvented by way of an amendment

to the schedule of assumed and rejected leases forty-five (45) days after the Effective Date. The

relief sought by the Debtors is unsupported by the Bankruptcy Code, and is an attempt to contract

around the 365(d)(4) deadline for any deemed rejection of the Leases and the requirement to obtain the Landlords' consent.

**B.    The Master Leases must be assumed or rejected *in toto*.**

13.    The Landlords and the Debtors are parties to certain Master Leases, whereby Debtors agreed to lease multiple Properties under each Master Lease.

14.    The Debtors' Plan provides that:

> If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to this Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to this Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to this Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to this Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Combined Hearing (to the extent not resolved by the parties prior to the Combined Hearing).

Plan, Article VI, A.

15.    Presently, certain of the Landlords and Debtors are actively negotiating lease amendments, pursuant to which, *inter alia*, Debtors would continue to lease properties from the Landlords in Master Leases. However, Landlords request that Debtors confirm this position by amending the Assumed Executory Contract and Unexpired Lease Schedule or otherwise confirming in writing that they are assuming the Master Leases, as amended, *in toto* and are not attempting to sever any of the Landlords' Master Leases. Out of an abundance of caution, Landlords object to the above-referenced provision in the Plan to preserve their rights under the Master Leases while they continue to work on the amendments to those Master Leases.

16.    The Master Leases are enforceable, unexpired leases that must be assumed or rejected in their entirety. A debtor cannot assume the benefits and reject the unfavorable aspects of the same contract. *See Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996); *In re Mirant Corp.*, 197 Fed. App'x. 285, 289 (5th Cir. 2006); *In re Buffets Holdings, Inc.*,

387 B.R. 115, 121-23 (Bankr. D. Del. 2008). In limited circumstances, the Fifth Circuit has approved the assumption of divisible agreements that are part of a master agreement upon the determination that a master agreement is severable. *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 389 (Bankr. N.D. Tex. 2003) (citing *Stewart Title*, 83 F.3d at 739). No determination has been made whether any of the Landlords' Master Leases are severable, and no such finding would be made with respect to the Master Leases here because they clearly qualify as unitary, non-severable agreements under applicable law.

17.     For purposes of assumption and assignment, courts must determine, under applicable law, whether a contract or lease is properly construed as a unitary agreement that can only be assumed and assigned as a whole, or whether it may be severed. *See Cafeteria Operators, L.P.*, 299 B.R. at 389; *Buffets*, 387 B.R. at 120. As the court in *Buffets* made clear, "there is 'no federal policy which requires severance of a lease condition solely because it makes a debtor's reorganization more feasible.' . . . Rather, the determination of whether a specific contract or lease is an indivisible agreement or is several agreements in one, which should properly be severable, depends on the application of state law." *Buffets*, 387 B.R. at 124 (quoting *Bistrain v. E. Hampton Sand & Gravel Co.*, 25 B.R. 193, 199 (Bankr. E.D.N.Y. 1982)). Expressions of intent can be, and have been, taken as sufficient evidence of parties' intent – including in a case involving a master lease with Spirit Master Funding, LLC, an affiliate of Spirit Realty.[3] *See Dickinson*, No. 12-22602, 2012 WL 4867220, at *3 (Bankr. D. Kan. Oct. 12, 2012) (holding that an expression of intent was "controlling" as to the parties' intent). The present case includes two master leases of former Spirit Realty entities—Spirit Master Funding X, LLC and Spirit Realty, L.P.—as well as several other master

---

[3]     Spirit Realty was more recently acquired by Realty Income, thus explaining the "Spirit Master" and "Spirit Realty" landlord entities that are part of the Realty Income landlord entities.

leases of the various Landlords that contain substantially similar expressions of the intent to create unitary, indivisible master leases.

18.    To the extent the Debtors rely on *Cafeteria Operators* to justify severing the Master Leases, that case is distinguishable from the facts in this case because it involved a master sublease agreement that allowed the individual premises to be severed, included rent reduction provisions across 43 premises, featured varying lease terms for individual properties, permitted subletting that effectively removed locations from the master agreement and reflected through the parties' conduct a clear intent to divide the leases before bankruptcy. *Cafeteria Operators, L.P.*, 299 B.R. at 390-392.

19.    The same is true with *Convenience USA. See also In re Convenience USA*, No. 01-81478, 2002 WL 230772, at *4-8 (Bankr. M.D.N.C. Feb. 12, 2002). In that case, the court severed six out of twenty-seven leases because the leases permitted transferring properties to new agreements while maintaining the energy lease, rent reduction provisions, termination of the tenant's possession rights for individual properties. Moreover, the parties conduct indicated divisibility through allocation of rent for each property. *Id. Compare with In re Mirant Corp.*, 197 Fed. App'x at 292 (finding that the back-to-back agreement was not severable because all parties agreed to a single promise supported by a single consideration, the performance was not divisible, or there was no evidence that the parties intended the agreement to be severable). Thus, "[w]here a lease or contract *contains several different agreements,* and the lease or contract can be severed under applicable non-bankruptcy law, section 365 allows assumption or rejection of the severable portions of the lease or contract." *In re Wolflin Oil, L.L.C.*, 318 B.R. 392, 397 (Bankr. ND. Tex. 2004) (internal citation omitted) (emphasis added).

20.    Here, the Master Leases are single, unitary contracts, rather than individual separate properties. Under applicable state law, the parties intended the Master Leases to be non-severable

when viewed as a whole. The parties stated their express intent unambiguously in the Master Leases, and the Master Leases are replete with terms supporting this express, stated intent. *See*, *e.g.*, *Buffets*, 387 B.R. at 121-22 (holding that master lease was non-severable, notwithstanding express apportionment of consideration, because such evidence was only one factor, and not conclusive for determining the intent of the parties). To the extent that the Debtors claim that the Master Leases should not be recognized as single, unitary agreements, the Master Leases do not characterize the Master Leases as anything other than that. Further, there is a single rent payment for each of the Master Leases that cannot be allocated by Property, and Debtors' obligations under the respective Master Leases cannot otherwise be severed. All of these terms are consistent with provisions in Master Leases in which both parties agreed that the Master Leases are unitary, non-severable leases. As such, Debtor must assume the Master Leases *in toto*.

21.    The Landlords object to any attempts by the Debtors to sever the Master Leases by rejecting only a portion of the properties subject to the Master Leases (defined below), and apparently reserving the remaining cherry-picked properties for potential assumption. Landlords strenuously maintain their objection to the Debtor's attempt to pick and choose portions of the Master Leases to reject.[4]

22.    The Debtors' proposal in the Plan is not the deal with Landlords, which was negotiated and reflected in the Master Leases. The Debtors are requesting this Court to simply ignore the plain language and unequivocally stated intent of the Master Leases, and rewrite the terms so that the Debtors have the benefits of certain properties under the Master Leases without bearing the burdens of the integrated Master Lease structure. This is precisely what the Debtors cannot do under applicable federal bankruptcy rules, prior bankruptcy court rulings, and well-established state law.

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Master Lease Agreements.

23.     The deal struck under the Master Leases prior to bankruptcy is the deal the Debtors must live with now.  The Master Leases are unitary, unexpired leases that the Debtors must either assume or reject *in toto*, and only upon rejection of the Master Leases in their entirety may the Debtors reject the individual properties within the Master Leases, as contemplated by the Plan.

24.     Upon request, the substantive terms and structure of the Master Leases reinforce the parties' stated intent to create a single lease.  The heart of the bargain struck between the parties was a single lease, subject to a single monthly rent payment.  Therefore, the Court should require the Debtors to modify the above-referenced provision in the Plan and find that, under the terms of the Master Leases, the Debtors may not sever the Master Leases and are prohibited from rejecting some—but not all—of the properties under the Master Leases.  In sum, the Debtor must either reject or assume the Master Leases *in toto* upon the Confirmation Date.

25.     Simply stated, the Debtors do not appear to know, in their business judgment, which unexpired leases the Debtors are going to assume or reject at this time.  However, if they are not ready to assume or reject the Leases at this time, they must delay the Confirmation Hearing to make that determination.

## C.     Debtors must provide for the cure of all outstanding lease obligations, including Landlords' attorneys' fees, as part of the cure amounts.

26.     Debtor's Plan provides for the payment of all Cure costs related to Unexpired Leases that are being assumed under the Plan in the ordinary course of business.  Plan, Article V, C.  However, the Plan then includes sentences indicating that it is necessary for counterparties to file objections to preserve their right to a full cure.

27.     Specifically, the Plan provides:

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed no later than fourteen (14) days after the service of notice of assumption on affected counterparties. Any such request that is not timely

> Filed shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure costs shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure costs.

Plan, Article V, C.

28.    While the Debtors generally appear to be current on lease obligations to Landlords, Landlords are aware of at least certain outstanding tax amounts. Debtors should confirm that they will pay any outstanding lease obligations in the ordinary course without Landlords needing to engage in a cure reconciliation process with Debtors.

29.    Furthermore, Landlords have incurred significant attorneys' fees in asserting their rights under the Leases in these bankruptcy proceedings, which amounts are recoverable under the terms of the Leases. *See, e.g.*, Master Land and Building Lease Agreement between Realty Income Properties 30, LLC and Zips Car Wash, LLC dated May 11, 2022, Section 22.1.[5] Landlords estimate that they have incurred attorneys' fees and costs of $7,500 per lease.

30.    Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are proper components of a cure claim, and the Debtor must satisfy these lease charges as part of the assumption of the Leases. *See In re Senior Care Centers, LLC*, 607 B.R. 580, 593 (Bankr. N.D. Tex. 2019); *In re Entm't, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998) (citation omitted). For example, in the *Senior Care Centers* case, the court held that, even assuming that attorney fee provisions in master agreements governing the commercial leases that Chapter 11 debtors sought to assume were in nature of "prevailing party" attorney fee provisions, debtors' success in persuading bankruptcy court to allow them to assume leases did not preclude award of

---

[5]    "Tenant shall reimburse Landlord, upon demand, for any costs or expenses incurred by Landlord in connection with any breach or default under this Lease, whether or not suit is commenced or judgment entered. Such costs shall include reasonable attorneys' fees and costs incurred for the negotiation of a settlement, enforcement of rights, or otherwise."

attorney fees as part of the "cure" amounts that debtors would have to pay as prerequisite to assuming leases, given that landlords were successful in compelling debtors to decide whether to assume leases, raising significant issues with regard to debtors' ability to promptly cure defaults, and in generally ensuring that their interests were adequately protected. *In re Senior Care Centers, LLC*, 607 B.R. at 593.

31.    There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *In re Entm't, Inc.*, 223 B.R. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.*, *see also In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001) (landlord's fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 WL 5355479, at *9 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)*, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. *Travelers Cas. & Sur. Co. Of Am. v. Pac. Gas & Elec.*, 127 S. Ct. 1199, 1206 (2007).

32.    As such, in addition to confirming that Debtors will pay all rent and other lease charges in the ordinary course, Debtors should pay Landlords the sum of $7,500 per assumed Lease as part of the applicable cure.

    **D.    The Plan cannot expunge or disallow claims without due process.**

33.     The Plan seeks to permit the Debtors to disallow claims that have been late-filed without further notice, action, court order or approval. *See* Plan, Article V, B. The Debtors cannot unilaterally decide whether or not a claim has been filed late, without providing notice to the affected counterparties and an opportunity to object and be heard, and Landlords object to any attempt to do so here.

**E.     The Plan improperly seeks to deprive creditors of their setoff and recoupment rights.**

34.     Through the injunction provision, the Debtors improperly seek to deprive Landlords of their rights to setoff and recoupment. *See* Plan Article VIII, F. To the extent of any security deposits or credits applied under the Leases, or there are claim objections or preference actions that may be prosecuted against the Landlords following plan confirmation, the Landlords should not be deprived of their rights to assert setoffs or exercise recoupment, or limited in their ability to enforce these rights. The Debtors fail to provide any authority for seeking to void Landlords' ability to exercise their setoff and recoupment rights pursuant to the terms of their Leases, and/or applicable law, and Debtors should not be permitted to deprive Landlords of these rights. *See In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001) recognizing that under "§ 553 that this title [the Bankruptcy Code] does not affect any right of a creditor to offset...."), *see also Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entm't Grp. Inc.)*, 963 F.2d 1269 (9th Cir. 1992), *cert denied* 506 U.S. 918 (1992) (setoff rights survive plan confirmation); *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257-61 (3d Cir. 2000) (recoupment defense survives free and clear sale of debtor's assets). This is especially true where the Plan seeks to preserve all of the Debtors' rights to setoff and recoupment. *See* Plan Article. VIII. C; VI, M.

**F.     The injunction and release provisions of the Plan are overbroad and ambiguous.**

35.     The release and injunction provisions of the Plan are overbroad and require revision. The language does not adequately address the fact that various claims and rights under the Leases

must survive confirmation of the Plan for the continuing obligations that exist under the terms of the Leases. The Debtors assume the Leases subject to their terms, and must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease and indemnity obligations under the Leases.

36.     Landlords may have claims for year-end reconciliation payments that have accrued (or are accruing) prior to confirmation, which have not yet been billed under the Leases. Year-end reconciliations and adjustments for the Debtors for 2024 and 2025 may not be completed prior to plan confirmation for many locations. In some instances, for real property taxes for instance, charges are paid in arrears, and cannot be calculated until after year-end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. As such, these legitimate lease obligations must survive plan confirmation.

37.     In addition, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to claims at the Properties. Such claims may not become known until after the Effective Date of the Plan, examples of which may include claims such as personal injuries at the Properties and damage to the Properties by the Debtors or their agents. The Plan cannot cut off these indemnification obligations, regardless of when they arose. Nothing in any Plan or Confirmation Order should preclude the Landlords from pursuing the Debtors for any indemnification obligation that Landlords have under the Leases, and the Plan and any Confirmation Order should specifically preserve all rights of the parties with respect to the assumed Leases.

38.     For the avoidance of doubt, pursuant to the terms of the proposed Plan, Landlords opt out of the Third-Party Releases.

## III.  RESERVATION OF RIGHTS

39.  Landlords reserve their rights to raise further objections to the Plan or any amendments thereto, and in response to any amended Plan filed by the Debtors.

## IV.  JOINDER IN OBJECTIONS

40.  Landlords also join in any objection of other landlords, to the extent not inconsistent with this Objection.

## V.  CONCLUSION

Landlords request that the Court not confirm the Plan unless and until the Debtors amend the Plan consistent with this Objection, including the modifications requested herein and denying rejection of any of the Master Leases unless the Debtors seek to reject the Master Leases in their entirety, and for such other and further relief as may be just and required under all circumstances.

DATED: April 10, 2025

Respectfully submitted,

By: */s/ Michael S. Myers*
Craig Solomon Ganz (TX Bar No. 24127203)
Michael S. Myers (AZ Bar No. 029978)
Joel F. Newell (TX Bar. No. 24137409)
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
602-798-5400- Telephone
214-798-5595 - Facsimile
ganzc@ballardspahr.com
myersm@ballardspahr.com
newellj@ballardspahr.com

*Attorneys for Broadstone Net Lease, Inc., Broadstone ZCW Portfolio, LLC, Realty Income Illinois Properties I, LLC, Realty Income Properties 17, LLC, Realty Income Properties 21, LLC, Realty Income Properties 26, LLC, Realty Income Properties 29, LLC, Realty Income Properties 30, LLC, MDC NC1, LP, MDC NC2, LP, MDC Coast 7, LLC, MDC Coast 16, LLC, MDC Coast 20, LLC, MDC Coast 26, LLC, Spirit Master Funding X, LLC, Spirit Realty, L.P., SCF RC Funding IV, LLC, Store Capital Acquisitions, LLC and STORE Master Funding VII, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2025, a true and correct copy of the above and foregoing was filed electronically, and notice was served via the court's CM/ECF system on all parties entering an appearance and requesting such notice in this case.

/s/ Michael S. Myers
Michael S. Myers, Esq.

## SCHEDULE A

| | | |
|---|---|---|
| **Broadstone ZCW Portfolio, LLC Amended and Restated Master Lease Agreement dated December 21, 2023** | | |
| | 3008 S. Congress | Boynton Beach, FL |
| 323 | 440 New Circle Rd | Lexington, KY |
| **FSC ZCW Lynchburg, VA, LLC Deed of Lease dated November 15, 2018** | | |
| | 3805 Wards Road | Lynchburg, VA |
| **FSC ZCW Roanoke VA, LLC Deed of Lease dated November 15, 2018** | | |
| | 4035 Challenger Ave | Roanoke, VA |
| **MDC Coast 7, LLC Master Land and Building Lease Agreement dated September 21, 2017** | | |
| 904 | 360 Airport Road | Arden, NC |
| 903 | 125 Tunnel Road | Asheville, NC |
| 120 | 1208 Decatur Pike | Athens, TN |
| 620 | 11816 Bandera Road | Helotes, TX |
| 122 | 106 Moss Grove Blvd | Knoxville, TN |
| 125 | 1106 Foch Street | Maryville, TN |
| 130 | 102 S. Illinois Avenue | Oak Ridge, TN |
| 128 | 9025 Jac Cate Road | Ooltewah, TN |
| 901 | 6 Gill Road | Weaverville, NC |
| 704 | 1329 N. Maize Road | Wichita, KS |
| **MDC Coast 16, LLC Amended and Restated Master Land and Building Lease Agreement dated December 23, 2020** | | |
| 410 | 11647 St. Charles Rock Road | Bridgeton, MO |
| 306 | 4405 Bardstown Road | Louisville, KY |
| 411 | 1008 State Highway K | O'Fallon, MO |
| 412 | 9430 Page Avenue | Saint Louis, MO |
| 413 | 3410 S Kings Highway | Saint Louis, MO |
| 414 | 4453 Meramec Bottom Road | Saint Louis, MO |
| **MDC Coast 20, LLC Assignment and Assumption of Lease dated January 8, 2021** | | |

| 502 | 1511 Niedringhaus Ave | Granite City, IL |

| | **MDC NC1, LP, Realty Income Illinois Properties I, LLC, MDC Coast 26, LLC<br>Master Land and Building Lease Agreement dated December 15, 2022** | |
|---|---|---|
| 1101 | 604 44th Ave W | Alexandria, MN |
| 106 | 6083 Airline Road | Arlington, TN |
| 1102 | 7560 Universal Dr | Baxter, MN |
| 203 | 802 S Park Street | Carrollton, GA |
| 202 | 733 Joe Frank Harris Pkwy SE | Cartersville, GA |
| 951 | 7910 N Tryon Street | Charlotte, NC |
| 950 | 5740 Albemarle Road | Charlotte, NC |
| 131 | 4907 TN-58 | Chattanooga, TN |
| 129 | 1688 N. Main Street | Crossville, TN |
| 1104 | 100 Richwood Rd #34 | Detroit Lakes, MN |
| 955 | 1975 Highway 70 SE | Hickory, NC |
| 127 | 7525 Mtn Grove Drive | Knoxville, TN |
| 2102 | 3601 Calumet Ave | Manitowoc, WI |
| 649 | 1590 S. Custer Road | McKinney, TX |
| 1103 | 3410 28th Ave S | Moorhead, MN |
| 123 | 5506 Rivers Ave | North Charleston, SC |
| 309 | 2801 N Classen Blvd | Oklahoma City, OK |
| 310 | 1821 E. Memorial Road | Oklahoma City, OK |
| 503 | 4192 Hwy 162 | Pontoon Beach, IL |
| 2103 | 475 E Green Bay Ave | Saukville, WI |
| 400 | 11355 Gravois Road | St Louis, MO |
| 124 | 2048 Bells Highway | Walterboro, SC |
| | **MDC NC2, LP Master Land and Building Lease Agreement<br>dated April 25, 2019** | |
| 923 | 2608 S Main Street | High Point, NC |
| | **MDC NC2, LP Master Land and Building Lease Agreement<br>dated March 28, 2019** | |
| 930 | 11571 US Hwy 70 Business W | Clayton, NC |
| 931 | 7510 Purfoy Rd | Fuquay Varina, NC |

| 932 | 9200 Brier Creek Pkwy | Raleigh, NC |
| 933 | 2402 Wake Forest Road | Raleigh, NC |
| 934 | 2121 S Main St | Wake Forest, NC |
| **Realty Income Properties 17, LLC Master Land and Building Lease Agreement dated September 1, 2022** | | |
| | 3294 Poplar Ave | Memphis, TN |
| **Realty Income Properties 17, LLC Master Land and Building Lease Agreement dated October 18, 2022 (Woodies Wash Shack)** | | |
| 141 | 1984 Whitten Rd | Memphis, TX |
| **Realty Income Properties 17, LLC dated November 15, 2022 (McKinney)** | | |
| 678 | 6102 Stacy Rd | McKinney, TX |
| **Realty Income Properties 17, LLC Master Land and Building Lease Agreement dated October 4, 2022 (Jet Brite II Pack)** | | |
| 504 | 625 W. Lake St. | Addison, IL |
| 506 | 1427 N Farnsworth Ave | Aurora, IL |
| 513 | 246 S Weber Rd | Bolingbrook, IL |
| 509 | 600 E Boughton Rd | Bolingbrook, IL |
| 508 | 1251 N Gary Ave | Carol Stream, IL |
| 512 | 6948 W Grand Ave | Chicago, IL |
| 507 | 7150 W 54th St | Chicago, IL |
| 514 | 850 E Ogden Ave | Naperville, IL |
| 510 | 2100 N Mannheim Rd | Northlake, IL |
| 505 | 153 W. Roosevelt Rd. | Villa Park, IL |
| 511 | 900 W Lake St | Roselle, IL |
| **Realty Income Properties 21, LLC Master Land and Building Lease Agreement dated June 23, 2022 (Flash n Dash)** | | |
| 217 | 9191 & 9207 GA Hwy 142 N | Covington, GA |
| **Realty Income Properties 21, LLC Master Land and Building Lease Agreement dated May 11, 2022** | | |
| 701 | 3661 N. Newton Street | Jasper, IN |

| Realty Income Properties 21, LLC Amended and Restated Master Land and Building Lease Agreement dated May 12, 2022 | | |
|---|---|---|
| 701 | 3661 N. Newton Street | Jasper, IN |
| 316 | 103 Log Cabin Road NE | Milledgeville, GA |
| 214 | 302 Commercial Dr. | Savannah, GA |
| 215 | 4747 US Highway 80 E | Savannah, GA |
| 213 | 10000 Abercorn St. | Savannah, GA |
| **MDC NC2LP and Realty Income Properties 21, LLC Master Land and Building Lease Agreement dated May 18, 2022 (Lightning McClean Portfolio)** | | |
| 606 | 550 Piney Forest Rd | Danville, VA |
| 962 | 1031 Martin Luther King Jr. Pkwy | Durham, NC |
| 607 | 17559 Forest Rd | Forest, VA |
| 604 | 7616 Timberlake Rd | Lynchburg, VA |
| 305 | 3210 Old Forest Rd | Lynchburg, VA |
| **Realty Income Properties 26, LLC Master Land and Building Lease Agreement dated May 16, 2019** | | |
| 138 | 295 E. Emroy Rd | Powell, NM |
| **Realty Income Properties 26, LLC Master Land and Building Lease dated June 17, 2019** | | |
| 139 | 2935 Miller Place Way | Knoxville, TN |
| **Realty Income Properties 26, LLC Master Land and Building Lease Agreement dated May 21, 2019** | | |
| 700 | 701 E Lewis and Clark Pkwy | Clarksville, IN |
| 302 | 4711 Dixie Hwy | Louisville, KY |
| 303 | 9500 Dixie Hwy | Louisville, KY |
| **Realty Income Properties 26, LLC Master Land and Building Lease Agreement dated May 30, 2019** | | |
| 800 | 3101 N. Prince Street | Clovis, NM |
| 663 | 4101 Olton Rd. | Plainview, TX |
| 801 | 3616 N. Main St | Rosewell, NM |

| 661 | 3402 Knickerbocker Rd | San Angelo, TX |
| 660 | 4106 Sherwood Way | San Angelo, TX |
| 662 | 2704 N. Bryant Blvd | San Angelo, TX |
| **Realty Income Properties 29, LLC Assignment and Assumption of Lease dated January 8, 2021** | | |
| 104 | 2178 North Cherry Road | Rock Hill, SC |
| **Realty Income Properties 29, LLC Assignment and Assumption of Lease dated January 8, 2021** | | |
| 2104 | 123 West Johnson Street | Fond du Lac, WI |
| 300 | 7773 Dixie Highway | Louisville, KY |
| 122 | 3955 Ashley Phosphate Rd | North Charleston, SC |
| **Realty Income Properties 30, LLC Master Land and Building Lease Agreement dated June 16, 2022** | | |
| 328 | 160 Codella Drive | Winchester, KY |
| **Realty Income Properties 30, LLC Master Land and Building Lease Agreement dated June 21, 2022** | | |
| 372 | 3601 E US Hwy 377 | Granbury, TX |
| **Realty Income Properties 30, LLC Master Land and Building Lease Agreement dated July 7, 2022 (Titus Car Wash Portfolio)** | | |
| 673 | 23685 Walton Ave | New Caney, TX |
| **Realty Income Properties 30, LLC Master Land and Building Lease Agreement dated January 30, 2023** | | |
| 327 | 130 Marlene Drive | Nicholasville, KY |
| **Realty Income Properties 30, LLC Master Land and Building Lease Agreement dated August 16, 2022 (Dream Wash Portfolio)** | | |
| 677 | 2835 Eldorado Pkwy | Frisco, TX |
| 676 | 6100 N Josey Lane | Lewisville, TX |
| 673 | 23685 Walton Ave | New Caney, TX |
| 675 | 5006 Lemmon Ave | Dallas, TX |

| **Spirit Realty, L.P. Amended and Restated Master Lease Agreement dated August 4, 2022 as amended** | | |
|---|---|---|
| | 905 S White Sands Blvd | Alamogordo, NM |
| | 3399 N White Sands Blvd | Alamogordo, NM |
| | 13519 US-290 W | Austin, TX |
| | 7361 Glory Rd | Baxter, MN |
| | 8250 Pinellas Dr | Bluffton, SC |
| | 7 Baylor Brook Dr | Bluffton, SC |
| | 1008 Fording Island Rd | Bluffton, SC |
| | 8875 Dallas Acworth Hwy | Dallas, GA |
| | 3541 Forest Ln | Dallas, TX |
| | 5021 Ross Ave | Dallas, TX |
| | 1415 US-10 | Detroit Lakes, MN |
| | 2295 S University Drive | Fargo, ND |
| | 508 N Berkeley Blvd | Goldsboro, NC |
| | 2698 US-169 | Grand Rapids, MN |
| | 1008 William Hilton Pkwy # B | Hilton Head Island, SC |
| | 301 Grand Hill Pl | Holly Springs, NC |
| | 4860 Cane Run Rd | Louisville, KY |
| | 509 Garden City Connector | Murrells Inlet, SC |
| | 2755 Agnes Lane | Myrtle Beach, SC |
| | 8010 N Kings Hwy | Myrtle Beach, SC |
| | 593 International Dr | Myrtle Beach, SC |
| | 2089 Highway 501 | Myrtle Beach, SC |
| | 1212 Highway 17 S | North Myrtle Beach, SC |
| | 1604 Highway 17 N | North Myrtle Beach, SC |
| | 1464 Chattahoochee Dr | Rockmart, GA |
| | 1000 Hog Mountain Rd | Watkinsville, GA |
| **STORE Capital Acquisitions, LLC (Single-Site Leases) Amended and Restated Lease Agreement dated September 11, 2018** | | |
| | 2825 N. Rock Rd | Derby, KS |

Schedule A-6

| | 1431 Culebra Rd | San Antonio, TX |
|---|---|---|
| | 3910 Oxford Station Way | Winston-Salem, NC |
| **STORE Master Funding VII, LLC Eight Amended and Restated Master Lease Agreement dated January 18, 2022 (Central Pool)** | | |
| | 3107 W Wedington Dr | Fayetteville, AR |
| | 2910 N. Kitty Street | Shreveport, LA |
| | 2000 W Pleasant Grove Rd | Rogers, AR |
| | 1004 South Walton | Bentonville, AR |
| | 2702 S Shackelford | Little Rock, AR |
| | 12301 Maumelle Blvd | North Little Rock, AR |
| | 6810 Goodman Rd | Olive Branch, MS |
| | 14201 Cantrell Rd | Little Rock, AR |
| | 565 S Andover Rd. | Andover, KS |
| | 12167 Montgomery Rd | Cincinnati, OH |
| | 1525 Jungermann Rd | St. Peters, MO |
| **STORE Master Funding VII, LLC  Eight Amended and Restated Master Lease Amendment dated August 17, 2021 (East Pool)** | | |
| | 5795 Raleigh LaGrange Rd | Memphis, TN |
| | 4324 Hacks Cross Rd | Memphis, TN |
| | 1565 N Germantown Pkwy | Cordova, TN |
| | 420 Neal St | Cookeville, TN |
| | 693 S. Willow Ave | Cookeville, TN |
| | 5211 University Pkwy | Winston-Salem, NC |
| | 6317 Stadium Dr | Clemmons, NC |
| | 71 Jesse Mae Thurmond Connector | Cleveland, GA |
| | 2907 Eagle Dr | Woodstock, GA |
| | 719 N Charles St | Warrensburg, MO |
| | 6401 Neiman Rd | Shawnee, KS |
| | 1530 S Rangeline Rd | Joplin, MO |
| | 125 Athens Hwy | Loganville, GA |
| | 2585 Loganville Hwy | Grayson, GA |

| | **STORE Master Funding VII, LLC Sixth Amended and Restated Master Lease Agreement dated December 30, 2022 (West Pool)** | |
|---|---|---|
| | 7323 NW Expressway | Oklahoma City, OK |
| | 950 Sonoma Park Dr | Norman, OK |
| | 3912 S. Sheridan Rd | Tulsa, OK |
| | 8300 S. Western Ave | Oklahoma City, OK |
| | 9553 Riverside Pkwy | Tulsa, OK |
| | 3450 West Kenosha St | Broken Arrow, OK |
| | 13408 N MacArthur Blvd | Oklahoma City, OK |
| | 4651 Little Rd | Arlington, TX |
| | 797 SW Wilshire Blvd | Burleson, TX |
| | 1641 Precinct Line Rd | Hurst, TX |
| | 701 West Debbie Ln | Mansfield, TX |
| | 6705 Westworth Blvd | Westworth Village, TX |
| | 1309 S. Madison St | Webb City, MO |
| | 100 E. McLeroy Blvd | Saginaw, TX |
| | 104 Osborne Way | Georgetown, KY |
| | 2320 Grey Lag Way | Lexington, KY |
| | 301 E. Rendon Crowley | Burleson, TX |
| | 5900 Quebec St | Fort Worth, TX |
| | **Spirit Master Funding X, LLC Amended and Restated Master Lease Agreement dated March 29, 2017** | |
| | 9809 US Highway 64 | Arlington, TN |
| | 8242 FM 78 | Converse, TX |
| | 1308 S. Santa Fe Avenue | Edmond, OK |
| | 1537 North Limestone | Lexington, KY |
| | 132 Highway 46 | New Braunfels, TX |
| 99 | 5807 W Reno Ave | Oklahoma City, OK |
| | 12425 N. Pennsylvania Avenue | Oklahoma City, OK |
| 106 | 10623 Culebra Rd | San Antonio, TX |
| 196 | 2612 Washington Ave | Sheboygan, WI |
| 98 | 7900 Highway 107 | Sherwood, AR |
| 100 | 300 Highway 412 W | Siloam Springs, AR |
| 95 | 1112 S Thompson St | Springdale, AR |
| 102 | 2806 Richmond Rd | Texarkana, TX |

Schedule A-8

| 107 | 2809 Pat Booker Rd | Universal City, TX |