

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed April 18, 2025**

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ZIPS CAR WASH, LLC, *et al.*,[1] | ) Case No. 25-80069 (MVL) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### ORDER (I) APPROVING THE DEBTORS' DISCLOSURE STATEMENT AND (II) CONFIRMING THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF ZIPS CAR WASH, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of the Debtors' federal tax identification numbers, are Zips Car Wash, LLC (3045); Express Car Wash Holdings, LLC (6223); Zips 2900 Wade Hampton, LLC (N/A); Zips 3107 N. Pleasantburg, LLC (N/A); Zips 6050 Wade Hampton, LLC (N/A); Zips Operating Holdings, LLC (2161); Zips Portfolio I, LLC (9999); Zips Portfolio II, LLC (1864); Zips Portfolio III, LLC (N/A); and Zips Portfolio IV, LLC (N/A). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 8400 Belleview Drive, Suite 210, Plano, Texas 75024.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") having:[2]

a.   commenced, on February 5, 2025 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules");

b.   Filed,[3] on February 5, 2025, the *Declaration of Kevin Nystrom, Chief Transformation Officer of Zips Car Wash, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14], detailing the facts and circumstances of these Chapter 11 Cases;

c.   continued to operate their business and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

d.   Filed, on February 5, 2025, (i) the *Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 16] and (ii) the *Disclosure Statement for the Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17];

e.   Filed, on February 5, 2025, the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 18];

f.   Filed, on February 7, 2025, the *Notice of Revised Proposed Order Granting the Debtors' Disclosure Statement Motion* [Docket No. 47];

g.   Filed, on February 13, 2025, the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving the Form and Manner for Filing Proofs of Claim; and (III) Approving the Form and Manner for Filing Proofs*

---

[2]   Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings given to them in the *Third Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, attached hereto as **Exhibit A** (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Plan"). The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

[3]   Unless otherwise indicated, use of the term "Filed" herein refers also to the service of the applicable document filed on the docket in these Chapter 11 Cases, as applicable.

*of Claim, Including Section 503(b)(9) Requests Notice of Bar Dates* [Docket No. 114];

h.    obtained, on March 12, 2025, entry of the Order (I) Setting Bar Dates for Filing Proofs of Claim; (II) Approving Form and Manner for Filing Proofs of Claim; and (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests Notice of Bar Dates [Docket No. 216] (the "<u>Bar Date Order</u>");

i.    Filed, on March 17, 2025, (i) the *Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 230] and (ii) the *Disclosure Statement for the Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 231] (the "<u>Disclosure Statement</u>");

j.    obtained, on March 18, 2025, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 240] (the "<u>Conditional Disclosure Statement Order</u>"), approving the Disclosure Statement and approving: (i) the related solicitation and voting procedures (the "<u>Solicitation and Voting Procedures</u>"), and (ii) the related notices, including the Non-Voting Status Notices, forms (including the opt out form attached to the Ballot or Non-Voting Status Notice, the "<u>Opt Out Forms</u>"), cover letters, and Ballots (collectively, the "<u>Solicitation Packages</u>");

k.    caused the initial Solicitation Packages, including the *Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan Filed By the Debtors and Related Voting and Objection Deadlines* (the "<u>Combined Hearing Notice</u>") to be distributed on or about March 20, 2025, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Procedures for Complex Chapter 11 Bankruptcy Cases* for the United States Bankruptcy Court for the Northern District of Texas, the Conditional Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by the *Affidavit of Service* [Docket No. 296] (together with all the exhibits thereto, the "<u>Initial Solicitation Affidavit</u>"), and caused the supplemental Solicitation Packages to be distributed on or about March 31, 2025, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Procedures for Complex Chapter 11 Bankruptcy Cases* for the United States Bankruptcy Court for the Northern District of Texas, the Conditional Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by the *Affidavit of Service* [Docket No. 344] (together with all the exhibits thereto, the "<u>Supplemental Solicitation Affidavit</u>," and together with the Initial Solicitation Affidavit, the "<u>Solicitation Affidavits</u>");

l.    caused the Combined Hearing Notice to be published in *The New York Times* (national edition) on March 22, 2025, as evidenced by the *Proof of Publication*

[Docket No. 265], and in *The Dallas Morning News* on March 24, 2025, as evidenced by the *Affidavit of Publication* [Docket No. 266] (collectively, the "<u>Publication Affidavits</u>," and together with the Solicitation Affidavits, the "<u>Affidavits</u>");

m.    Filed, on April 4, 2025, the *Notice of Filing of Plan Supplement* [Docket No. 320] (the "<u>Plan Supplement</u>");

n.    Filed on April 16, 2025, the *Second Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 348];

o.    Filed, on April 16, 2025, the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 349] (the "<u>Voting Report</u>");

p.    Filed, on April 16, 2025, *Declaration of Scott Vogel in Support of Confirmation of the Second Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 350] (the "<u>Vogel Declaration</u>");

q.    Filed, on April 16, 2025, the *Declaration of Kevin Nystrom in Support of (I) Final Approval of the Disclosure Statement for the Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code; and (II) Confirmation of the Second Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 351] (the "<u>Nystrom Declaration</u>");

r.    Filed, on April 16, 2025, the *Declaration of Jeffrey Liu in Support of Confirmation of the Second Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 352] (the "<u>Liu Declaration</u>" and together with the Nystrom Declaration, the Vogel Declaration, and the Voting Report, the "<u>Confirmation Declarations</u>");

s.    Filed, on April 16, 2025, the *Debtors' Memorandum of Law in Support of (I) Final Approval of the Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Zips Car Wash, LLC, and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code; and (II) Confirmation of the Second Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 353] (the "<u>Confirmation Brief</u>"); and

t.      Filed, on April 18, 2025, the *Third Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 365].

This Bankruptcy Court having:

a.      entered, on March 18, 2025, the Conditional Disclosure Statement Order conditionally approving, among other things, the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.      set April 10, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for relevant parties to vote on the Plan (the "Voting Deadline");

c.      set April 10, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for Filing objections to confirmation of the Plan (the "Objection Deadline");

d.      set April 18, 2025, at 9:30 a.m. (prevailing Central Time) as the date and time for the Combined Hearing, pursuant to sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, as set forth in the Conditional Disclosure Statement Order;

e.      reviewed the (i) Plan, (ii) the Disclosure Statement, (iii) the Disclosure Statement Motion, (iv) the Conditional Disclosure Statement Order, (v) the Solicitation Packages, (vi) the Plan Supplement, (vii) the Confirmation Brief, (viii) the Confirmation Declarations, (ix) the Affidavits, (x) the Combined Hearing Notice, and (xi) all Filed pleadings, exhibits, statements, responses, and comments regarding confirmation of the Plan, including all objections, joinders, statements, and reservations of rights;

f.      considered the Restructuring Transactions incorporated and described in the Plan, including the Plan Supplement;

g.      held the Combined Hearing on April 18, 2025, at 9:30 a.m. (prevailing Central Time);

h.      heard the statements and arguments made by counsel in respect of Confirmation;

i.      considered all oral representations, testimony, documents, filings, exhibits, and other evidence regarding Confirmation;

j.      overruled (i) any and all objections to the Plan and to Confirmation, except as otherwise stated or indicated on the record, and (ii) all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

k.      taken judicial notice of all pleadings and other documents Filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that the Combined Hearing Notice and the opportunity for any party in interest to object to final approval of the Disclosure Statement and Confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents Filed in support of Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Findings and Conclusions.**

1.      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      This Bankruptcy Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  This Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.      Eligibility for Relief.**

3.      The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases.**

4.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 49], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

**E.      Appointment of the Committee.**

5.      On February 21, 2025, the U.S. Trustee appointed the official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 125] to represent the interests of the Debtors' unsecured creditors in these Chapter 11 Cases. The current members of the Committee are:  (a) Realty Income Corporation, (b) Broadstone ZCW Portfolio, LLC, (c) Sonny's Enterprises, LLC, and (d) Tango Analytics, LLC.

**F.      Judicial Notice.**

6.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of final approval of the Disclosure Statement and Confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts,

and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

**G.    Plan Supplement.**

7.    The Debtors Filed the Plan Supplement on April 4, 2025.  The Plan Supplement (including as may be subsequently amended, supplemented, or otherwise modified from time to time in accordance with the Plan) complies with the Bankruptcy Code and the terms of the Plan, and the Debtors provided good and proper notice of the filing of the Plan Supplement in accordance with the Conditional Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and requirements.  No other or further notice will be required with respect to the Plan Supplement or any of the documents contained therein or related thereto, unless any such documents are further modified.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement and any of the documents contained therein or related thereto pursuant to the terms of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

**H.    Modifications to the Plan.**

8.    Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan described or set forth in this Confirmation Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.  These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and the Solicitation Packages served

pursuant to the Conditional Disclosure Statement Order and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.

9.     In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast votes accepting or rejecting the Plan.  Accordingly, the Plan is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan.

### I.     Objections Overruled.

10.     Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Bankruptcy Court on the record at the Combined Hearing is hereby incorporated by reference.  All unresolved objections, statements, joinders, and reservations of rights, if any, are hereby **OVERRULED** and **DENIED** on the merits (except with respect to timely filed objections in connection with Cure amounts arising under assumed Executory Contracts and Unexpired Leases and the severability of Executory Contracts and Unexpired Leases, which are adjourned and fully preserved for the reasons stated on the record at the Combined Hearing or are otherwise addressed in this Confirmation Order).

### J.     Conditional Disclosure Statement Order.

11.     On March 18, 2025, the Bankruptcy Court entered the Conditional Disclosure Statement Order, setting the Objection Deadline as April 10, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for (a) voting to accept or reject the Plan and opt out of the Third-Party Release and (b) objecting to final approval of the Disclosure Statement and Confirmation of the Plan.  The Debtors' use of the Combined Hearing process set forth in section 105(d)(2)(B)(vi) of

the Bankruptcy Code was appropriate. The Debtors' use of the Disclosure Statement to solicit

votes to accept or reject the Plan was authorized by the Conditional Disclosure Statement Order.

The Disclosure Statement contains adequate information as required by the Bankruptcy Code and

may be finally approved in conjunction with Confirmation of the Plan.

**K.      Burden of Proof—Confirmation of the Plan.**

12.      The Debtors, as proponents of the Plan, have met their burden of proving the

applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance

of the evidence, which is the applicable evidentiary standard for Confirmation. In addition, and to

the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

Each witness who testified on behalf of the Debtors in connection with Confirmation, including

those who testified via written declaration, was credible, reliable, and qualified to testify as to the

topics addressed in his or her testimony.

**L.      Notice.**

13.      As evidenced by the Affidavits and the Voting Report, the Debtors provided due,

adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Plan (and the

opportunity to opt out of the Third-Party Release), the Disclosure Statement, the Combined

Hearing, the Plan Supplement, the Objection Deadline, and all other materials distributed by the

Debtors in connection with Confirmation in compliance with the Bankruptcy Code, the

Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules,

and the procedures set forth in the Conditional Disclosure Statement Order. Further, the Combined

Hearing Notice was published in *The New York Times* (national edition) on March 22, 2025, and

*The Dallas Morning News* on March 24, 2025, in accordance with Bankruptcy Rule 2002(l) and

the Conditional Disclosure Statement Order. Such notice was adequate and sufficient under the

facts and circumstances of these Chapter 11 Cases and was made in compliance with the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Conditional Disclosure Statement Order. No other or further notice is or shall be required.

**M.      Solicitation.**

14.      As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act.

15.      As described in the Voting Report and the Solicitation Affidavits, as applicable, the Solicitation Packages, including the Opt-Out Forms, were transmitted and served, including to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, the Conditional Disclosure Statement Order, and any applicable nonbankruptcy law. Transmission and service of the Solicitation Packages was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required.

16.      As set forth in the Voting Report, the Solicitation Packages were distributed to Holders of Claims in Voting Class 3 that held a Claim or Interest as of March 3, 2025 (the "Voting Record Date"), as set by the Conditional Disclosure Statement Order, and Holders of Claims in Voting Class 4, in accordance with submitted proofs of claim pursuant to the Bar Date Order, and the Debtors' Schedules. The establishment and notice of the Voting Record Date was reasonable and sufficient.

17.      The period during which the Debtors solicited acceptances of, or rejections to, the Plan was a reasonable and sufficient period of time for each Holder in the Voting Classes to make an informed decision to accept or reject the Plan.

18.     Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) (collectively, the "Unimpaired Classes") are Unimpaired and conclusively deemed to have accepted the Plan.  The Debtors were not required to solicit votes from the Holders of Claims and Interests in Class 7 (Section 510(b) Claims), Class 8 (Preferred Equity Interests), and Class 9 (Common Equity Interests) (the "Deemed Rejecting Classes"), which were Impaired and deemed to reject the Plan under the Bankruptcy Code. Holders of Claims and Interests in Class 5 (Intercompany Claims) and Class 6 (Intercompany Interests) (Classes 5 and 6, together with the Deemed Rejecting Classes, the "Deemed Accepting/Rejecting Classes," together with the Unimpaired Classes, the "Non-Voting Classes") are Unimpaired and conclusively presumed to have accepted the Plan (to the extent Reinstated) or are Impaired and deemed to have rejected the Plan (to the extent canceled and released), and, in either event, are not entitled to vote to accept or reject the Plan.

19.     The Debtors served the Combined Hearing Notice on the Debtors' full creditor matrix and served Non-Voting Status Notices on all Non-Voting Classes.  The Combined Hearing Notice adequately informed Holders of Claims or Interests of critical information regarding voting on (if applicable) and objecting to the Plan, including deadlines and the inclusion of release, exculpation, and injunction provisions in the Plan, and adequately summarized the terms of the Third-Party Release.  Further, because the Opt-Out Form was included in both the Ballots and the applicable Non-Voting Status Notice, every known stakeholder, including the Sponsor and Holders of Claims and Interests in Classes 1, 2, 7, and 8), was provided with the means by which the stakeholders could opt out of the Third-Party Release.

**N.     Voting.**

20.     As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the Disclosure Statement, the Conditional Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation. Based on the foregoing, and as evidenced by the Voting Report, at least one Impaired Class of Claims (excluding the acceptance by any insiders of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124, 1126 and 1129 of the Bankruptcy Code.

**O.      Bankruptcy Rule 3016.**

21.      The Plan and all modifications thereto were dated and identified the Entities submitting such modification, thus satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the Entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

**P.      Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

22.      The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 thereof, as required by section 1129(a)(1) of the Bankruptcy Code.

**(i)      *Sections 1122 and 1123—Proper Classification.***

23.      Article III of the Plan provides for the separate classification of Claims and Interests into nine Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

13

(ii)    *Section 1123(a)(2)—Specified Unimpaired Classes.*

24.    Article III of the Plan specifies that Claims, as applicable, in the following Classes are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

| Class | Claims |
|---|---|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |

25.    Holders of Intercompany Claims in Class 5 and Holders of Intercompany Interests in Class 6 are either Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to have rejected the Plan, and, in either event, are not entitled to vote to accept or reject the Plan.  Additionally, Article II of the Plan specifies that Allowed Administrative Claims, Allowed DIP Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and Restructuring Expenses will be paid in accordance with the terms of the Plan, although these Claims are not classified under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

(iii)    *Section 1123(a)(3)—Specified Treatment of Impaired Classes.*

26.    Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code and describes the treatment of such Classes.

| Class | Claims |
|---|---|
| 3 | Term Loan Claims |
| 4 | General Unsecured Claims |
| 7 | Section 510(b) Claims |
| 8 | Preferred Equity Interests |
| 9 | Common Equity Interests |

Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### (iv)    *Section 1123(a)(4)—No Discrimination.*

27.    The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### (v)    *Section 1123(a)(5)—Adequate Means for Plan Implementation.*

28.    The provisions in Article IV and elsewhere in the Plan, together with the exhibits and attachments to the Plan (including the Plan Supplement), provide, in detail, adequate and proper means for the Plan's implementation, including regarding:  (a) the general settlement of Claims and Interests; (b) the authorization for the Debtors and the Reorganized Debtors, as applicable, to take all actions necessary to effectuate the Plan, including those actions necessary or appropriate to effectuate the Restructuring Transactions, including, without limitation, any restructuring transaction steps set forth herein or in the Restructuring Transactions Memorandum, as applicable, as the same may be modified or amended from time to time prior to the Effective Date; (c) the funding and sources of consideration for the Plan distributions and the establishment of the GUC Trust; (d) the adoption and authorization of, and entry into, the New Organizational Documents; (e) the vesting of assets in the Reorganized Debtors (with the exception of the GUC Trust Assets transferred or issued to the GUC Trust); (f) preserving the Reorganized Debtors' corporate existence following the Effective Date; (g) the issuance of New Zips Common Equity; (h) the reinstatement of the Indemnification Provisions in place as of the Petition Date; (i) the authorization and approval of the Exit Facilities and the transactions contemplated in connection therewith and entry into any agreements related to the same as set forth in the Plan or the Plan Supplement; (j) the cancellation of existing securities and agreements, and the surrender of existing securities (except as otherwise provided therein); (k) preserving the

coverage under the D&O Liability Insurance Policies; (l) providing for the exemption of certain securities law matters; (m) the appointment of the New Board; (n) the creation of the GUC Trust, the execution of the GUC Trust Agreement, the appointment of the GUC Trustee, and the transfer of the GUC Trust Assets to the GUC Trust; (o) granting of new Liens and security interests to secure the Exit Facilities; (p) the preservation and vesting of certain Causes of Action in the Reorganized Debtors; (q) the reservation of equity for future distribution in accordance with the terms and conditions of the Management Incentive Plan; and (r) the effectuation and implementation of documents and further transactions.    Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(vi)    *Section 1123(a)(6)—Voting Power of Equity Securities.*

29.    Article IV.J of the Plan provides that the New Organizational Documents will comply with section 1123(a)(6) of the Bankruptcy Code.  The New Organizational Documents prohibit the issuance of non-voting equity securities only to the extent required to comply with section 1123(a)(6) of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(vii)    *Section 1123(a)(7)—Directors and Officers.*

30.    Article IV.K of the Plan sets forth the structure of the New Board (to the extent known), which shall consist of those members listed in the Plan Supplement as Exhibit C, which is consistent with the interests of creditors and equity holders and with public policy.  Accordingly, the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code.

**(viii)    *Section 1123(a)(8) and 1123(c)—Debtor Is Not an Individual.***

31.    The Debtors are not individuals.    Accordingly, the requirements of sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are inapplicable.

**(ix)    *Section 1123(b)(1)—Impairment/Unimpairment of Classes.***

32.    Article III of the Plan impairs or leaves Unimpaired each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**(x)    *Section 1123(b)(2)—Assumption.***

33.    Article V.A of the Plan provides that, on the Effective Date, all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (a) are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected (to the extent applicable) by the Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date, to the extent agreed to by the counterparty to the Executory Contract or Unexpired Lease.    The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts and leases as set forth in the Plan Supplement.

34.    Article V.H of the Plan provides that, on the Effective Date, the Reorganized Debtors shall:  (a) assume the Employment Agreements, solely to the extent set forth in the Plan Supplement; *provided* that all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law; and (b) assume the Compensation and Benefits programs solely to the extent set forth in the Plan Supplement; *provided* that the following Compensation and Benefits Programs shall not be

assumed:  (i) all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Preferred Equity Interest or Common Equity Interests in any of the Debtors, which shall not constitute or be deemed to constitute Executory Contracts and shall be deemed terminated on the Effective Date, (ii) Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court; and (iii) Compensation and Benefits Programs that, as of the entry of this Confirmation Order, have been specifically waived by the beneficiaries of any Compensation and Benefits Program.  The Plan further provides that a counterparty to a Compensation and Benefits Program assumed pursuant to the Plan shall have the same rights under such Compensation and Benefits Program as such counterparty had thereunder immediately prior to such assumption (unless otherwise agreed by such counterparty and the applicable Reorganized Debtor(s)); *provided*, *however*, that any assumption of Compensation and Benefits Programs pursuant to the Plan or any of the Restructuring Transactions shall not trigger or be deemed to trigger any change of control, immediate vesting, termination, or similar provisions therein.

35.     Article IV.I of the Plan provides that contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will survive and remain unaffected by entry of this Confirmation Order.

36.     The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases. Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

(xi)   *Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action.*

37.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan.  The compromises and settlements embodied in the Plan are the result of extensive, arm's-length, good faith negotiations, and preserve value for the Debtors, their Estates, and all their stakeholders, avoid extended, uncertain, time-consuming, and value-destructive litigation, and represent a fair and reasonable compromise of all Claims, Interests, and controversies.  Entry into such compromises and settlements represented a sound exercise of the Debtors' business judgment.  The compromises and settlements in the Plan are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates and satisfy the requirements of applicable Law for approval pursuant to Bankruptcy Rule 9019.

38.     Accordingly, in consideration for the distributions and other benefits provided under the Plan, this Confirmation Order shall constitute the Bankruptcy Court's approval of such settlements, as well as a finding by the Bankruptcy Court that such settlements are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests and are fair, equitable, and reasonable.

39.     Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the settlements embodied in the Plan and this

Confirmation Order, because, among other things: (a) each such settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled Claims and disputes, on the one hand, and the benefits of fully and finally resolving such Claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent such settlement, there is a likelihood of complex and protracted litigation involving, among other things, such settlement, with the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' reorganization efforts; (c) each of the parties supporting such settlement, including the Debtors, the DIP Lenders, the Required Consenting Term Loan Lenders, and the Committee is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) such settlement is the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) such settlement is fair, equitable, and reasonable and in the best interests of the Debtors, the Reorganized Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates by preserving and protecting the ability of the Reorganized Debtors to continue operating outside of bankruptcy protection and in the ordinary course of business, and is essential to the successful implementation of the Plan. Based on the foregoing, the compromises and settlements in the Plan satisfy the requirements of applicable Fifth Circuit Law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

40.     **Debtor Release**.  Article VIII.C of the Plan describes certain releases granted by the Debtors (*i.e.*, the Debtor Release).  The Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the Debtor Release.  Each of the Released Parties has made a substantial contribution to the Plan and to the Debtors' reorganization. The Debtor Release is a necessary and integral element of the Plan, and is fair, equitable,

reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

41.    For the reasons set forth herein and in the Confirmation Declarations, including the Vogel Declaration, the Debtor Release: (a) reflects a reasonable balance between the possible success of litigation with respect to each of the settled Claims and disputes, on the one hand, and the benefits of fully and finally resolving such Claims and disputes and allowing the Debtors to exit chapter 11 expeditiously, on the other hand; (b) is a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Release; (c) is provided in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitate the Restructuring Transactions and implement the Plan, following extensive, arm's-length negotiations between sophisticated parties represented by able counsel and advisors; (d) is given, and made, after due notice and opportunity for hearing; and (e) serves as a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release. Further, as more fully described in the Vogel Declaration, the Disinterested Directors analyzed and considered all potential Claims and Causes of Action held by the Debtors and determined that granting the Debtor Release was appropriate and necessary under the circumstances. The Debtors' or the Reorganized Debtors pursuit of any such Claims or Causes of Action against the Released Parties is not in the best interests of the Estates or the Debtors' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such Claims or Causes of Action.

42.    The Debtor Release appropriately offers protection to parties that participated in the Restructuring Transactions. Each of the Released Parties made significant concessions and

contributions to these Chapter 11 Cases.  The Debtor Release for the Debtors' current and former directors and officers is appropriate because the Debtors' directors, officers, and managers share an identity of interest with the Debtors, supported and made substantial contributions to the success of the Plan and these Chapter 11 Cases, and actively participated in meetings, and negotiations during these Chapter 11 Cases.  The Debtor Release for the DIP Secured Parties and Holders of DIP Claims, Term Loan Secured Parties, Ad Hoc Term Lender Group, and Exit Facilities Secured Parties is appropriate because such parties have actively supported the Plan and agreed to equitize their Claims to deleverage the Debtors' prepetition capital structure, provided the Debtors with liquidity (both by providing the debtor-in-possession financing and by consenting to the use of cash collateral), and/or otherwise provided financing and made other contributions of value to the Debtors' restructuring.  The Debtor Release for the Sponsor and the Senior Preferred Equity Interest Holders is appropriate because those parties have actively supported the Plan and the Restructuring Transactions and have made other contributions of value to the Restructuring Transactions.  The Debtor Release for the Committee and each member thereof is an integral component of the Committee Settlement.

43.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan.

44.    **Third-Party Release**.  The Third-Party Release, set forth in Article VIII.D of the Plan, is a necessary and integral element of the Plan, is fair, equitable, reasonable, and is in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests.  Also, the Third-Party Release:  (a) is consensual (unless the Holder of a Claim or Interest has timely opted

out of the Third-Party Release as set forth in the Solicitation Procedures, in which case, such Person would not be a Releasing Party under the Plan); (b) represents a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (c) is beneficial to and in the best interests of the Debtors, their Estates, and theirs stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (d) is fair, equitable, and reasonable; (e) is specific in language and scope; (f) is essential to the confirmation of the Plan; (g) is given in exchange for the substantial contributions made and the good and valuable consideration provided by the Released Parties; (h) is a condition to the good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (i) is given and made after due notice and opportunity for hearing; (j) constitutes a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (k) facilitated participation of the Released Parties in both the Plan process and the Chapter 11 Cases generally; and (l) was instrumental in developing a plan that maximized value for all of the Debtors' stakeholders.

45. The Third-Party Release was a negotiated and integral term of the Plan and was critical to incentivizing parties to support the Plan. The Third-Party Release is specific in language and a condition of the compromises and settlements embodied in the Plan. As such, the Third-Party Release appropriately offers certain protections to parties who constructively participated in the Debtors' restructuring process and the Debtors had a good-faith basis for including the Third-Party Release in the Plan.

46. The Third-Party Release is consensual given that, among other things: (a) the Releasing Parties were provided adequate notice of these Chapter 11 Cases, the Plan, and the

23

deadline to object to Confirmation; (b) applicable Holders of Claims and Interests provided the Third-Party Release solely upon their affirmative election to opt out of the Third-Party Release; (c) the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the applicable Non-Voting Status Notice, and the Combined Hearing Notice; and (d) the Combined Hearing Notice was sent to all parties to receive notice in these Chapter 11 Cases (including those not entitled to vote on the Plan) and published in *The New York Times* (national edition) on March 22, 2025, and in *The Dallas Morning News* on March 24, 2025.

47.    The only Holders of Claims and Interests, including the non-voting parties, that have opted out of the Third-Party Release are those set forth in the tabulation summary attached as <u>Exhibit A-1</u> to the Voting Report.  For the avoidance of doubt, no party shall be bound by the Third-Party Release if they did not receive notice and opportunity to opt-out of the Third-Party Release.  For further avoidance of doubt, parties who vote to accept the Plan but who return a Release Opt-Out shall not be bound by the Third-Party Release set forth in Article VIII.D of the Plan.

48.    There is an identity of interests between the Debtors and the Entities that will benefit from the Third-Party Release. Each of the Released Parties, as stakeholders and critical participants in the Debtors' Chapter 11 Cases and the Plan process, share a common goal with the Debtors in seeing the Plan succeed. The scope of the Third-Party Release is also appropriately tailored to the facts and circumstances of the Chapter 11 Cases. For the reasons set forth above, each of the Released Parties has made significant concessions and contributions to the Debtors' Chapter 11 Cases.  Accordingly, the Third-Party Release, including its carveout for actual fraud, willful misconduct, or gross negligence, is fair, reasonable, and appropriate under the

circumstances of the Chapter 11 Cases and is consistent with established practice in this jurisdiction.

49. **Exculpation**. The exculpation described in Article VIII.E of the Plan (the "Exculpation") is appropriate under applicable law, and enforceable to the maximum extent allowed by *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022), because it was supported by proper evidence, proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and in compliance with applicable Laws with regard to solicitation of votes and distribution of consideration pursuant to the Plan, and is appropriately released and exculpated from any Claim or Cause of Action arising prior to or on the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Definitive Documents, the Plan Supplement, the Exit Facilities, the DIP Facility, the DIP Orders, the DIP Facility Documents, or the Filing of the Chapter 11 Cases, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, if applicable, in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and

responsibilities pursuant to the Plan.  The Exculpation, including its carveout for actual fraud, willful misconduct, or gross negligence, is fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases and is consistent with established practice in this jurisdiction.

50.     Solely with respect to the Exculpation, notwithstanding anything to the contrary in the Plan or Plan Supplement, each of the Exculpated Parties and 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.  No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the Exculpated Parties or 1125(e) Exculpation Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to this paragraph 50 of this Confirmation Order, without this Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against any such Exculpated Party or 1125(e) Exculpation Party and such party is not exculpated; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Exculpated Party or 1125(e) Exculpation Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

51.     **Injunction**.  The injunction provision set forth in Article VIII.F of the Plan is essential to the Plan and is necessary to implement, preserve, and enforce the Debtors' discharge,

the Debtor Release, the Third-Party Release, and the Exculpation. The injunction provision is appropriately tailored to achieve those purposes. Notwithstanding anything to the contrary in this Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E of the Plan, without the Bankruptcy Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

52.    **Preservation of Causes of Action**. Pursuant to Article IV.T of the Plan and in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, each Debtor or Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or exculpated by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

53.      For the avoidance of doubt, pursuant to the Committee Settlement, unless otherwise expressly retained by the Reorganized Debtors pursuant to the Plan, the Reorganized Debtors expressly waive any and all rights to recover or avoid transfers under sections 547 and 550 (to the extent such Claims arise solely in connection with Claims under section 547 of the Bankruptcy Code) of the Bankruptcy Code against non-insiders of the Debtors.  The provisions regarding the preservation of Causes of Action in the Plan, including those contained in the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

54.      **Lien Release**.  The release and discharge of mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.B of the Plan (the "Lien Release") is essential to the Plan and necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

(xii)    *Section 1123(b)(6)—Additional Plan Provisions.*

55.      The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiii)   *Section 1123(d)—Cure of Defaults.*

56.      Article V.C of the Plan provides for the satisfaction of Cures associated with each Executory Contract and Unexpired Lease to be assumed or assumed and assigned in accordance with section 365 of the Bankruptcy Code or as otherwise agreed between the Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract and Unexpired Lease.  The Debtors or the Reorganized Debtors, as applicable, shall pay the Cure amounts, if any, relating to Executory Contracts and Unexpired Leases that are being assumed under the Plan in

the ordinary course of business.  If there is any dispute regarding any Cure costs, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, such dispute shall be determined in accordance with the terms set forth in Article V.C of the Plan.

57.    The assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time on or prior to the effective date of assumption.  As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases.  Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

**Q.    Section 1129(a)(2)—Debtor Compliance with the Bankruptcy Code.**

58.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.    is eligible to be a debtor under section 109, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code;

b.    has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c.    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy Law, rule and regulation, the Conditional Disclosure Statement Order, and all other applicable Law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

59.    The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with respect to the offering, issuance, and distribution of recoveries under the Plan and, therefore are not and, on account of such distributions, will not be liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan so long as such distributions are made consistent with and pursuant to the Plan.

**R.    Section 1129(a)(3)—Plan Proposed in Good Faith.**

60.    The Debtors have proposed the Plan in good faith and not by any means forbidden by Law.  In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the commencement of these Chapter 11 Cases, including the Plan, the Confirmation Declarations, the process leading to Confirmation, including negotiation of the Committee Settlement and the overwhelming support of Holders of Claims for the Plan, and the transactions to be implemented pursuant thereto.  The Debtors' good faith is evident from the facts and the record of these Chapter 11 Cases, the Disclosure Statement, the hearing to approve the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.

61.    The Plan is the product of good-faith, arm's-length negotiations by and among the Debtors, the DIP Secured Parties, the Term Loan Secured Parties, the Committee, and other parties in interest.  These Chapter 11 Cases were Filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from these Chapter 11 Cases with a capital and organizational structure that will allow them to conduct their business and satisfy their obligations with sufficient liquidity and capital resources.  The Plan itself and the process leading to its formulation provide

independent evidence of the Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of Holders of Claims, Intercompany Interests, and Interests.  Consistent with the overriding purpose of chapter 11, the Debtors Filed the Chapter 11 Cases with the belief that the Debtors were in need of reorganization, and the Plan was negotiated and proposed with the intention of accomplishing a successful reorganization and maximizing stakeholder value and for no ulterior purpose.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**S.      Section 1129(a)(4)—Payment for Services or Costs and Expenses.**

62.      The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by or is subject to the approval of the Court as reasonable.  Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**T.      Section 1129(a)(5)—Directors, Officers, and Insiders.**

63.      Article IV.M of the Plan provides that on the Effective Date the identities of the members of the New Board, to the extent known, will have been disclosed in the Plan Supplement. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**U.      Section 1129(a)(6)—No Rate Changes.**

64.      The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.  Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable to these Chapter 11 Cases.

V.      **Section 1129(a)(7)—Best Interest of Creditors.**

65.     The liquidation analysis attached as <u>Exhibit B</u> to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered, prior to, or in connection with the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.  As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors, and the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

W.      **Section 1129(a)(8)—Acceptance by Certain Classes.**

66.     Classes 1 and 2 constitute the Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 5 and 6 are not entitled to vote and are either Unimpaired and presumed to accept or are Impaired and are deemed to reject the Plan.  Classes 7, 8, and 9 are not entitled to vote and are Impaired and deemed to reject the Plan.  As evidenced by the Voting Report, all of the Holders of Claims in Class 3 and of Holders of Claims in Class 4 voted nearly unanimously to accept the Plan.  Accordingly, each Class of Claims or Interests is either Unimpaired or has accepted the Plan and, as such, the Plan complies with section 1129(a)(8) of the Bankruptcy Code.

**X.      Section 1129(a)(9)—Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code.**

67.      The treatment of Allowed Administrative Claims, Professional Fee Claims, and Priority Tax Claims, under Article II of the Plan, and Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**Y.      Section 1129(a)(10)—Acceptance by At Least One Impaired Class.**

68.      As evidenced by the Voting Report, the Holders of Claims in Class 3 and Class 4, both of which are Impaired, voted to accept the Plan by the requisite numbers and amounts of Claims, as determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), as specified under the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**Z.      Section 1129(a)(11)—Feasibility.**

69.      The financial projections attached to the Disclosure Statement as Exhibit C, and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, the Combined Hearing, or in the Confirmation Declarations Filed in connection therewith (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will

have sufficient funds available to meet their obligations under the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**AA.    Section 1129(a)(12)—Payment of Fees.**

70.    Article XII.D of the Plan provides that all fees due and payable pursuant to section 1930 of Title 28 of the United States Code ("Statutory Fees") shall be paid by each of the Debtors or the Reorganized Debtors, as applicable, until the earliest of the applicable Reorganized Debtor's Chapter 11 Case being converted, dismissed, or closed. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**BB.    Section 1129(a)(13)—Continuation of Retiree Benefits.**

71.    The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Article V.H of the Plan provides that from and after the Effective Date, all retiree benefits, as defined in section 1114 of the Bankruptcy Code, if any, shall continue to be paid in accordance with applicable law.

**CC.    1129(a)(14), (15), and (16)—Non-Applicability of Certain Sections.**

72.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.    Section 1129(b)—"Cram Down" Requirements.**

73.    Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to each such Class will

34

receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no

Holder of a Claim in a Class senior to such Class is receiving more than 100% on account of its

Claim.  Accordingly, the Plan is fair and equitable to all Holders of Claims and Interests in the

Deemed Rejecting Classes.  *Third*, the Plan does not discriminate unfairly with respect to the

Deemed Rejecting Classes because similarly situated creditors and Holders of Claims or Interests

in such Classes that have not accepted the Plan will receive substantially similar treatment on

account of their Claims and Interests irrespective of Class.  *Finally*, Holders of Claims in the

Voting Classes voted to accept the Plan in sufficient number and in sufficient amount to constitute

accepting Classes under the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of

section 1129(b) of the Bankruptcy Code and may therefore be confirmed despite the fact that not

all Impaired Classes have voted to accept the Plan.

**EE.    Section 1129(c)—Only One Plan.**

74.    The Plan (including previous versions thereof) is the only chapter 11 plan Filed in

each of these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**FF.    Section 1129(d)—Principal Purpose of the Plan.**

75.    As evidenced by its terms, the principal purpose of the Plan is not the avoidance of

taxes or the avoidance of the application of section 5 of the Securities Act.  Accordingly, the

requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

**GG.    Section 1129(e)—Not Small Business Cases.**

76.    The Chapter 11 Cases are not small business cases, and accordingly,

section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**HH.    Section 1125(e)—Good Faith Solicitation.**

77.    The Debtors and their agents have solicited and tabulated votes on the Plan and

have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good

faith within the meaning of section 1125(e).  The Debtors and the 1125(e) Exculpation Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan and Consummation, including, among other things, the issuance of the New Zips Common Equity, the extension of financing under the DIP Facility and the Exit Facilities, and the solicitation of acceptances of the Plan, as applicable, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided for in the Plan and this Confirmation Order.

**II.      Satisfaction of Confirmation Requirements.**

78.      Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**JJ.      Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

79.      The Plan shall not become effective unless and until the conditions set forth in Article IX.A have been satisfied or waived in accordance with Article IX.B of the Plan.

**KK.      Implementation.**

80.      All documents necessary to implement the Plan and the Restructuring Transactions contemplated thereby, including those contained in the Plan Supplement, and all other relevant and necessary or desirable documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements, not avoidable and not in conflict with any federal, state, or foreign Law.  The documents and agreements are essential elements of the Plan, and entry into and consummation of the transactions contemplated by each such document or agreement are in the best interests of the Debtors, the Estates, and the Holders of Claims, Intercompany Interests,

and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**LL.  Disclosure of Facts.**

81.      The Debtors have disclosed all material facts regarding the Plan and with respect to consummation of the Restructuring Transactions, including:  (a) the method and manner of distributions under the Plan; (b) the adoption, execution, and implementation of the other matters provided for in the Plan, including those involving corporate action to be taken by or required of the Debtors or the Reorganized Debtors, as applicable; (c) the adoption, execution, and implementation of the GUC Trust Agreement and the identity of the GUC Trustee; (d) the exception under section 1146(a) of the Bankruptcy Code; (e) the Schedule of Retained Causes of Action; and (f) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**MM.  Good Faith.**

82.      The Debtors and their respective directors, officers, management, counsel, advisors, and other agents have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors or the Reorganized Debtors, as applicable, and their respective officers, directors, and advisors have been, are, and will continue to act in good faith if they proceed to:  (a) consummate and implement the Plan, the GUC Trust Agreement, the Restructuring Transactions, and all agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order

and the Plan to reorganize the Debtors' business and effectuate the New Organizational Documents and the other Restructuring Transactions.

**NN.    Exit Facilities.**

83.    The terms and conditions of the Exit Facilities and the Reorganized Debtors entry into the Exit Facilities, including all actions, undertakings, and transactions contemplated thereby, and payment of all fees, and indemnities, and expenses provided for thereunder, are essential elements of the Plan, necessary for the consummation thereof, and in the best interests of the Debtors, the Estates, and their stakeholders.  The Exit Facilities are critical to the overall success and feasibility of the Plan, and the Debtors have exercised reasonable business judgment in determining to enter into the Exit Facilities Documents, which have been negotiated and entered into in good faith and at arm's-length.

84.    The Debtors are authorized without further approval of this Bankruptcy Court or any other party to execute and deliver the Exit Facilities Documents, and execute, deliver, File, record, and issue, all agreements, guarantees, instruments, mortgages, control agreements, certificates, and other documents related or incidental thereto and to perform their obligations thereunder and all transactions contemplated thereby, including the payment or reimbursement of any fees, expenses, losses, damages, or indemnities and the creation or perfection of all Liens in connection therewith, in each case, without further notice to this Bankruptcy Court or further act or action under applicable nonbankruptcy Law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity.

**OO.    The GUC Trust.**

85.    As set forth in Article IV.H of the Plan, on the Effective Date, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement and the GUC Trust Assets shall vest or deem to be vested in the GUC Trust irrevocably and automatically, free and clear of all Claims,

Liens, and Interests. The transfers contemplated under the Plan from the Debtors to the GUC Trust shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax. The GUC Trust shall not be liable for any Statutory Fees.

86. To the extent that any GUC Trust Assets cannot be transferred to the GUC Trust because of a restriction on transferability under applicable nonbankruptcy Law that is not superseded or preempted by any provision of the Bankruptcy Code, such GUC Trust Assets shall be deemed to have been retained by the Reorganized Debtors on behalf of the GUC Trust and the GUC Trust shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such GUC Trust Assets on behalf of the Reorganized Debtors for the benefit of the GUC Trust Beneficiaries, until such transfer restrictions are removed or the Reorganized Debtors receive or become entitled to receive the net proceeds of such GUC Trust Assets that can be distributed.

**PP.    Vesting of Assets in the Reorganized Debtors.**

87. Except as otherwise provided in the Plan, this Confirmation Order, the Exit Facilities Documents, the GUC Trust Agreement, or any agreement, instrument, or other document incorporated therein or entered into in connection with or pursuant to the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan (other than the GUC Trust Assets) shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise specifically provided in the Plan, this Confirmation Order, the Exit Facilities Documents, the GUC Trust Agreement, or any agreement, instrument, or other document incorporated herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval

by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.
For the avoidance of doubt, no Reorganized Debtor shall be treated as being liable on any Claim
that is discharged pursuant to the Plan.

**QQ.    Treatment of Executory Contracts and Unexpired Leases.**

88.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides
for the assumption, assumption and assignment, assignment, or rejection of certain Executory
Contracts and Unexpired Leases, effective as of forty-five (45) days following the Effective Date
except as otherwise provided therein or herein or in a prior or pending notice, motion, and/or order,
or as otherwise agreed to by the counterparty to the Executory Contract or Unexpired Lease. The
Debtors' determinations regarding the assumption, assumption and assignment, assignment, or
rejection of Executory Contracts and Unexpired Leases are based on and within the sound business
judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best
interests of the Debtors, their Estates, Holders of Claims, Intercompany Interests, and Interests,
and other parties in interest in the Chapter 11 Cases.  The GUC Trust shall not be responsible for
any costs and expenses associated with the assumption of Executory Contracts.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.    **Findings of Fact and Conclusions of Law.**  The above findings of fact and
conclusions of law, as well as any additional findings of fact and conclusions of law announced
by the Bankruptcy Court at the Combined Hearing, are hereby incorporated in this Confirmation
Order.

2.    **Disclosure Statement, Solicitation Packages, and Solicitation Procedures.**  The
Disclosure Statement, the Solicitation Packages, and the Solicitation Procedures are APPROVED
on a final basis in all respects pursuant to section 1125 of the Bankruptcy Code.

3.      **Confirmation of the Plan.**  The Plan, attached hereto as **Exhibit A**, is approved in

its entirety and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan,

the Plan Supplement, and the exhibits thereto are incorporated by reference into and are an integral

part of this Confirmation Order; *provided* that, if there is any direct conflict between the terms of

the Plan (including the Plan Supplement) and the terms of this Confirmation Order, the terms of

this Confirmation Order shall control solely to the extent of such conflict.

4.      The terms of the Plan, the Plan Supplement, the exhibits thereto, and this

Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest,

including the Debtors, the Reorganized Debtors, Holders of DIP Claims, Holders of Term Loan

Claims, Holders of General Unsecured Claims, the Committee, the GUC Trust, and any and all

Holders of Claims, Intercompany Interests, or Interests (irrespective of whether such Claims,

Intercompany Interests, or Interests are presumed to have accepted or rejected the Plan, as

applicable), all Entities that are parties to or are subject to the settlements, compromises, releases,

discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan,

and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

5.      **Objections Overruled.**  All objections (including any reservations of rights

contained therein) to final approval of the Disclosure Statement or approval of Confirmation of

the Plan or the Sale Transactions that have not been withdrawn, waived, or settled prior to entry

of this Confirmation Order, or are not otherwise resolved as stated by the Debtors on the record of

the Combined Hearing, are OVERRULED and DENIED on the merits and in their entirety (except

with respect to timely filed objections in connection with Cure amounts arising under assumed

Executory Contracts and Unexpired Leases and the severability of Executory Contracts and

Unexpired Leases, which are adjourned and fully preserved for reasons stated on the record at the

Combined Hearing or are otherwise addressed in this Confirmation Order), and all withdrawn objections are deemed withdrawn with prejudice.

6.     All objections to final approval of the Disclosure Statement or Confirmation not Filed and served prior to the Objection Deadline set forth in the Combined Hearing Notice, if any, are deemed waived and shall not be considered by the Bankruptcy Court.

7.     **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan.

8.     **No Action Required.**  Under section 1142(b) of the Bankruptcy Code and any other comparable provisions under applicable Law, no action of the respective directors, equity holders, managers, or members of any of the Debtors is required to authorize any of the Debtors or the Reorganized Debtors, as applicable, to enter into, execute, deliver, File, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions, and any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including the Exit Facilities, the GUC Trust Agreement, the New Organizational Documents, and the appointment and election of the members of the New Board and the officers, directors, and/or managers of each of the Reorganized Debtors, as applicable.

9.     Subject to the terms of Article IV of the Plan, the Debtors, the Reorganized Debtors, and the GUC Trustee, as applicable, are also authorized from and after the date of entry of this Confirmation Order to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document or take any action necessary or appropriate to implement the transactions contemplated by the Plan.

10.     **Binding Effect.**     Subject to Article XII.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims against or Interests in the Debtors (irrespective of whether such Holders have, or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

11.     **Vesting of Assets in the Reorganized Debtors.**     Except as otherwise provided in the Plan, the Plan Supplement, or this Confirmation Order, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action (but not including any Claims or Causes of Action pursuant to the Schedule of Retained Causes of Action), and any property acquired by any of the Debtors pursuant to the Plan, shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances (except for Liens securing obligations under the Exit Facilities Documents and Liens securing Other Secured Claims that are Reinstated pursuant to the Plan, as applicable).  On the Effective Date, the GUC Trust Assets shall vest or deem to be vested in the GUC Trust.  On and after the Effective Date, except as otherwise provided herein or in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or

settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

12.     **Effectiveness of All Actions.**  All actions contemplated by the Plan are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been deemed taken by unanimous action of such officers, directors, managers, members, or equity holders.

13.     **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, and injunction provisions embodied in the Plan, including for the avoidance of doubt, those contained in Articles VIII.A through F of the Plan, are incorporated herein in their entirety, are hereby approved and authorized in their entirety, and shall be immediately effective and binding on the Effective Date on all Persons and Entities to the extent provided in the Plan, without further order or action by this Bankruptcy Court.

14.     **Preservation of Causes of Action.**  In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, each Debtor or Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or exculpated under the Plan (including, without limitation, by the Debtors)

44

pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.  For the avoidance of doubt, all Avoidance Actions are being released pursuant to the Plan and shall not constitute retained Causes of Action.

15.    **Executory Contracts and Unexpired Leases.**    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption, assumption and assignment, Cure, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety, except as stated herein.

16.    On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected (to the extent applicable) will be deemed rejected by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (a) are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) have previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected (to the extent applicable) by the Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date, to the extent agreed to by the counterparty to the Executory Contract or Unexpired Lease.

17.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to any assumed Unexpired Leases of real property, the Debtors or Reorganized Debtors, as applicable, shall remain liable for all obligations arising under the Unexpired Leases

that were not otherwise required to be asserted as a Cure cost, including: (a) for amounts owed or accruing under such Unexpired Leases that are unbilled or not yet due as of the Effective Date regardless of when such amounts or obligations accrued, on account of common area maintenance, insurance, taxes, and similar charges; (b) any regular or periodic adjustment or reconciliation of charges accrued or accruing under such Unexpired Leases that are not yet due or have not been determined or billed as of the Effective Date; (c) any percentage rent that comes due under such Unexpired Leases; (d) post-assumption obligations under such Unexpired Leases; and (e) any obligations under such Unexpired Leases to indemnify the non-Debtor counterparty to such Unexpired Leases for any Claims of third parties arising from the Debtor's use and occupancy of the premises pursuant to the terms of the Unexpired Leases, which are not known or liquidated by the time of the Effective Date (and therefore not payable as a Cure cost pursuant to Bankruptcy Code § 365(b)(1)(a)).  Other than with respect to Cure Claims fixed in connection with this Plan, subject to resolution of any related dispute, all rights of the parties to any assumed Unexpired Lease of non-residential real property to dispute amounts due thereunder are preserved. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to counterparties to Unexpired Leases, all rights of setoff, subrogation, or recoupment that such counterparty may possess pursuant to such Unexpired Lease, or under applicable bankruptcy or non-bankruptcy Law are fully preserved and shall not be enjoined by the Plan or this Confirmation Order.  Unless a party to an Executory Contract or Unexpired Lease has objected no later than the objection deadline specified in the Plan to the Cure amounts and any assumption or assumption and assignment of such Executory Contract or Unexpired Lease identified in the Plan Supplement and any amendments thereto, as applicable, the Debtors or the Reorganized Debtors, as applicable, shall pay such Cure amounts in accordance with the terms of the Plan or as otherwise agreed

between the Debtors and the counterparty to each such assumed or assumed and assigned Executory Contract or Unexpired Lease. The assumption or assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including relating to such assumption and assignment, defaults of provisions relating to any anti-assignment provisions or restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any disputed Cure amounts shall be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and nonbankruptcy law. For the avoidance of doubt, any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan or otherwise may not be terminated on account of such assumption or assumption and assignment or on account of the Plan, the transactions contemplated therein, or any change of control or ownership interest composition that may occur at any time before or on the Effective Date. Each Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall revest in, and be fully enforceable by, the applicable Reorganized Debtors in accordance with its terms, including in accordance with any amendments executed by the Debtors and the counterparties to the applicable Executory Contract or Unexpired Lease during these Chapter 11 Cases and effective upon the assumption by the Debtors, except as modified by the provisions of the Plan, this Confirmation Order, or any order of this Bankruptcy Court authorizing and providing for its assumption; *provided* that, prior to the Effective Date and in connection with such assumption, any such terms that are rendered unenforceable by the provisions of the Plan or the Bankruptcy Code shall remain unenforceable solely in connection therewith.

18.     The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.  This Confirmation Order shall constitute a Final Order approving the assumptions, assumptions and assignments, and rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan and the Assumed Executory Contracts and Unexpired Leases List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

19.     **Indemnification Provisions.**  Subject to section 510 of the Bankruptcy Code, the treatment of Section 510(b) Claims under the Plan, and to the fullest extent permitted under applicable law (including being subject to the limitations of the Delaware General Corporation Law, including the limitations contained therein on a corporation's ability to indemnify officers and directors), all Indemnification Provisions in place as of the Petition Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors than the Indemnification Provisions in place prior to the Effective Date; *provided* that nothing in the Plan shall expand any of the Debtors' indemnification obligations in place as of the

Petition Date or constitute a finding or conclusion that any party that may seek indemnification is entitled to indemnification under the terms of such Indemnification Provisions.

20.     For the avoidance of doubt, following the Effective Date, the Reorganized Debtors will not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date or any other individuals covered by any D&O Liability Insurance Policies will be entitled to the full benefits of any such policy for the full term of such policy for the full term of such policies, including but not limited to the six-year trail period that will go effective upon the Effective Date, in accordance with the terms thereof.

21.     **Plan Supplement.**  The Plan Supplement contains the following documents (each as defined in the Plan):  (a) the New Organizational Documents; (b) the Exit Facilities Documents; (c) to the extent known, the identities of the members of the New Board; (d) the Assumed Executory Contracts and Unexpired Leases Schedule; (e) the Rejected Executory Contracts and Unexpired Leases Schedule; (f) the Schedule of Retained Causes of Action; (g) the Restructuring Transactions Memorandum; and (h) the GUC Trust Agreement.

22.     The Debtors reserve the right to alter, amend, modify, or supplement any document in the Plan Supplement in accordance with the Plan at any time before the Effective Date of the Plan or any such other date as may be provided for by the Plan or by order of the Bankruptcy Court.  Notwithstanding anything in this Confirmation Order, the documents included in the Plan Supplement, whether filed by the Debtors prior to or after the Combined Hearing, remain subject in all respects to the consent, approval, and similar rights contained in the Plan.

23.     **Restructuring Transactions.**   On or before the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall consummate the Restructuring Transactions and are authorized in all respects to enter into and take any actions as may be necessary or appropriate to effectuate the Restructuring Transactions, as set forth in the Restructuring Transactions Memorandum.  The actions to implement the Restructuring Transactions may include (and in any event, shall be in accordance with the consent rights in the Definitive Documents):  (a) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, formation, organization, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree, including the documents constituting the Plan Supplement; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, and the other Definitive Documents, and having other terms to which the applicable Entities may agree; (c) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state Law; (d) the execution and delivery of the New Organizational Documents; (e) the issuance, distribution, reservation, or dilution, as applicable, of the New Zips Common Equity, as set forth herein; (f) the execution and delivery of the Exit Facilities Documents; (g) the execution of the GUC Trust Agreement and the conveyance of the GUC Trust Assets to the GUC Trust; and (h) all other actions

that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

24.  **Exit Facilities.**  On the Effective Date, the Reorganized Debtors shall enter into the Exit Facilities pursuant to the Exit Facilities Documents.  To the extent applicable, Confirmation of the Plan shall be deemed (a) approval of the Exit Facilities (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith), and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to, without further notice to or order of the Bankruptcy Court, (i) execute and deliver those documents and agreements necessary or appropriate to pursue or obtain the Exit Facilities, including the Exit Facilities Documents, and incur and pay any fees and expenses in connection therewith, and (ii) act or take action under applicable Law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or the Reorganized Debtors, as applicable, may deem to be necessary or appropriate to consummate the Exit Facilities.

25.  As of the Effective Date, without further action of the Debtors, Reorganized Debtors, or any other party, all of the Liens and security interests to be granted by the Debtors in accordance with the Exit Facilities Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral specified in the Exit Facilities Documents; (c) shall be deemed automatically perfected on or prior to the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit Facilities Documents; and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes

whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  To the extent provided in the Exit Facilities Documents, the Exit Facilities Agents are authorized to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests.  The priorities of such Liens and security interests shall be as set forth in the Exit Facilities Documents.  The Exit Facilities Agents shall be authorized to make all filings and recordings necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the occurrence of the Effective Date and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.  The guarantees granted under the Exit Facilities Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

26.     Notwithstanding the foregoing, New Zips and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents that may be necessary or desired to establish and perfect

such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will hereafter cooperate to make all other filings and recordings that otherwise may be necessary under applicable law to give notice of such Liens and security interests to third parties.

27.    The entry into the Exit Facilities is a necessary and integral component of these Restructuring Transactions, and the terms and conditions are fair, reasonable customary, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are based on good, sufficient, and sound business purposes and justifications, and are supported by reasonably equivalent value and consideration. The Debtors, the Exit Facilities Lenders, and their respective professional advisors negotiated the Exit Facilities in good faith and at arm's length.

28.    **Issuance of New Zips Common Equity.**  On the Effective Date, New Zips shall issue the New Zips Common Equity pursuant to its New Organizational Documents and the Plan. The issuance of the New Zips Common Equity, including equity awards reserved for the Management Incentive Plan, by the Reorganized Debtors shall be authorized without the need for any further corporate action or without any further action by the Debtors or Reorganized Debtors or by Holders of any Claims or Interests, as applicable.

29.    All of the shares (or comparable units) of New Zips Common Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Zips Common Equity shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and

conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s). Any Entity's acceptance of New Zips Common Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. The New Organizational Documents will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Zips Common Equity will be bound thereby in all respects. The New Zips Common Equity will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company, and the Reorganized Debtors will not be voluntarily subject to any reporting requirements promulgated by the SEC.

30. **Management Incentive Plan.** The New Board is authorized, but not directed, to adopt the Management Incentive Plan on, or as soon as reasonably practicable after, the Effective Date; provided, however, that nothing in this Confirmation Order or the Plan shall constitute allowance or approval of any payment or any award under the Management Incentive Plan, with such approval being vested solely in the discretion of the New Board.

31. **Establishment of the GUC Trust, Appointment of the GUC Trustee, and Approval of the GUC Trust Agreement.** On the Effective Date, as set forth in Article IV.H of the Plan, Olympus Guardians LLC is appointed the GUC Trustee, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement, and the GUC Trust Assets that are assigned to, and vest in, the GUC Trust shall be assigned to, and vested in the GUC Trust automatically without further action by any Person, free and clear of all Claims, Liens, and Interests, and such transfer

shall be exempt from any stamp, real estate transfer ,mortgage reporting, sales, use, or other similar tax. Under no circumstance shall the Debtors or the Reorganized Debtors or any other party be required to contribute any additional assets to the GUC Trust other than the GUC Trust Assets. The GUC Trustee shall be the exclusive administrator of the assets of the GUC Trust (including the GUC Trust Assets) for purposes of section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving Class 4 General Unsecured Claims under the Plan for purposes of carrying out the GUC Trustee's duties under GUC Trust Agreement. For the avoidance of doubt, the administration of the GUC Trust and the GUC Trust Fees and Expenses shall be at the sole expense of the GUC Trust. The GUC Trust shall not be liable for any Statutory Fees.

32. **Cancelation of Existing Securities, Agreements, and Interests.** On the Effective Date, except to the extent otherwise provided in the Plan or this Confirmation Order, all notes, instruments, certificates, credit agreements, and other documents evidencing Claims or Interests (other than those Reinstated Claims), Preferred Equity Interests, or Common Equity Interests, shall be canceled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged and deemed satisfied in full, released, canceled, discharged, and of no force and effect, without any need for further action or approval by the Bankruptcy Court for a Holder to take further action, and the Agents shall be released from all duties and obligations thereunder and shall have no further duty, obligation, or liability except as provided in the Plan and this Confirmation Order.

33. Holders of or parties to such canceled instruments, Preferred Equity Interests, or Common Equity Interests, and other documentation will have no rights arising from or relating to such instruments, Interests, and other documentation, or the cancellation thereof, except the rights provided for or reserved pursuant to the Plan. Notwithstanding anything to the contrary herein,

but subject to any applicable provisions of Article VI of the Plan, the Term Loan Credit Agreement and DIP Facility Documents shall continue in effect after the Effective Date to the extent necessary to: (a) permit Holders of Claims under the Term Loan Credit Agreement and DIP Facility Documents to receive and accept their respective distributions on account of such Claims, if any; (b) permit the Disbursing Agent or the Agents, as applicable, to make distributions on account of the Allowed Claims under the Term Loan Credit Agreement and DIP Facility Documents; (c) preserve any rights of the Agents, to maintain, exercise, and enforce any applicable rights of indemnity, expense reimbursement, priority of payment, contribution, subrogation, or any other similar claim or entitlement (whether such claims accrued before or after the Effective Date), and preserve any exculpations of the Agents, all of which shall remain fully enforceable against the Reorganized Debtors and all other applicable Persons under the Term Loan Credit Agreement and DIP Facility Documents; (d) permit the Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce the respective obligations owed to them under the Plan and to enforce any obligations owed to their respective Holders of Claims under the Plan in accordance with the applicable Term Loan Credit Agreement and DIP Facility Documents; and (e) permit the Agents to perform any functions that are necessary to effectuate the foregoing; *provided, however*, that (1) the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, this Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in the Plan (including clause (c) of the preceding proviso), and (2) except as otherwise provided in the Plan, the terms and provisions of the Plan shall not modify any existing contract or agreement that would in any way be inconsistent with distributions under the Plan.

34.      **Exemption from Registration Requirements.**  Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and distribution of New Zips Common Equity, in each case, as contemplated herein shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. federal, state, or local Laws requiring registration prior to the offering, issuance, distribution, or sale of securities.

35.      The New Zips Common Equity to be issued under the Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to:  (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code and compliance with any applicable securities laws and the rules and regulations of the SEC or state or local securities laws, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Zips Common Equity in the New Organizational Documents and any other applicable regulatory approvals.

36.      Any New Zips Common Equity that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder, and/or other available exemptions from registration of Securities will be considered "restricted securities" under the federal securities laws, will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act

or any similarly applicable exemption under state or local securities laws and will be further subject to any restrictions on the transferability of such New Zips Common Equity in the New Organizational Documents and any other applicable regulatory approvals.

37.    **Section 1146(a) Exemption.**    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors, including the New Zips Common Equity, (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facilities; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording

officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

38.    **Distributions.**  The procedures governing distributions in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan, the Disbursing Agent or the GUC Trustee, as applicable, shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with, and as set forth in, the Plan or this Confirmation Order, as applicable.

39.    **Subordination.**  The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan takes into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

40.    **Release of Liens.**  Except as otherwise provided in the Exit Facilities Documents, the Plan, this Confirmation Order, or any contract, instrument, release, or other agreement or document created or entered into, in each case, pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim or any related claim that may be asserted against a non-Debtor Affiliate, in

satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date,
except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan,
all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the
Estates or any non-Debtor affiliate shall be fully released and discharged, and all of the right, title,
and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security
interests shall revert to the Reorganized Debtors and their successors and assigns, as set forth in
Article VIII.B of the Plan.

41.     Any Holder of such Secured Claim or claim against a non-Debtor Affiliate (and the
applicable agents for such Holder) shall be authorized and directed to release any collateral or
other property of any Debtor or non-Debtor Affiliate (including any Cash Collateral and
possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take
such actions as may be reasonably requested by the Reorganized Debtors to evidence the release
of such Liens and/or security interests, including the execution, delivery, and filing or recording
of such releases. The presentation or filing of this Confirmation Order to or with any federal, state,
provincial, or local agency, records office, or department shall constitute good and sufficient
evidence of, but shall not be required to effect, the termination of such Liens.

42.     To the extent that any Holder of a Secured Claim that has been satisfied or
discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly
any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as
practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take
any and all steps reasonably requested by the Debtors, the Reorganized Debtors, or the Exit
Facilities Agents, that are necessary or desirable to record or effectuate the cancelation and/or
extinguishment of such Liens and/or security interests, including the making of any applicable

filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

43.    The provisions setting forth the release of Liens are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, and are approved in their entirety.

44.    **Provisions Regarding Governmental Units.**    Subject to the requirements applicable to Governmental Units set forth in the Bar Date Order, nothing in the Plan or this Confirmation Order shall effect a release of any claim by any Governmental Unit or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against any party or Person, nor shall anything in the Plan or this Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or Person for any liability of such Persons whatsoever, including, without limitation, any claim, suit, or action arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against such persons, nor shall anything in the Plan or this Confirmation Order exculpate any party or Person from any liability to any Governmental Unit or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against any party or Person.

45.    **Provision Regarding the SEC.**    Notwithstanding any provision to the contrary, nothing in the Plan, the Disclosure Statement, or this Confirmation Order shall:  (a) preclude the SEC from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any Claims, Causes of Action, proceedings, or investigations

against any non-debtor Person or non-debtor Entity in any forum.  Nothing in this Confirmation

Order shall excuse the Debtors or the Reorganized Debtors, as applicable, from complying with

all applicable securities Laws.

46.    **Provision Regarding the Committee Settlement.**  The Plan incorporates and

implements the Committee Settlement, a compromise and settlement of numerous issues and

disputes between and among the Debtors, the DIP Secured Lenders, the Prepetition Term Loan

Secured Parties, and the Committee, and is designed to achieve a reasonable and effective

resolution of the Chapter 11 Cases.  Except as otherwise expressly set forth herein or in the Plan,

the Committee Settlement constitutes a settlement of all potential issues and Claims between and

among the Debtors, the Committee, the DIP Secured Parties, and the Prepetition Term Loan

Secured Parties.

47.    **Provision Regarding B&S Equities.**  Notwithstanding anything to the contrary in

the Plan or this Confirmation Order, B&S Equities shall be a Released Party and a Releasing Party.

48.    **Provision Regarding Broadstone ZCW Portfolio, LLC, FSC ZCW Lynchburg,
VA, LLC, FSC ZCW Roanoke VA, LLC, MDC Coast 7, LLC, MDC Coast 16, LLC, MDC
Coast 20, LLC, MDC NC1, LP, Realty Income Illinois Properties I, LLC, MDC Coast 26,
LLC, MDC NC2, LP, Realty Income Properties 17, LLC, Realty Income Properties 21, LLC,
Realty Income Properties 26, LLC, Realty Income Properties 29, LLC, Realty Income
Properties 30, LLC, Spirit Realty, L.P., STORE Capital Acquisitions, LLC, STORE Master
Funding VII, LLC, Spirit Master Funding X, LLC, and SCF RC Funding IV, LLC
(collectively, the "Ballard Landlords").**  Notwithstanding anything to the contrary in the Plan or

this Confirmation Order, nothing in the Plan or this Confirmation Order shall discharge, cancel,

extinguish, alter, impair, modify, or otherwise prevent the Ballard Landlords from, to the extent

they exist, asserting any or all of the Ballard Landlords' defenses, arguments, or rights relating to (a) any proposed assumption, assumption and assignment, or rejection by any of the Debtors of the unexpired leases with the Ballard Landlords (collectively, the "Ballard Leases") or (b) in the event of assumption or an assumption and assignment of the Ballard Leases, any proposed Cure on account of such assumption or assumption and assignment; *provided* that the Ballard Landlords, as applicable, shall be required to assert such rights, interests, defenses, or arguments in a written objection filed with this Bankruptcy Court on or prior to the date that is fourteen (14) calendar days following notice to the Ballard Landlords, as applicable, of such of proposed assumption, assumption and assignment, or rejection.  If any Ballard Landlord files such a written objection, such Ballard Lease shall not be deemed to be assumed or rejected, as applicable—unless the Ballard Landlord and the Debtors or the Reorganized Debtors, as applicable, otherwise agree in writing—until entry of an order by this Bankruptcy Court resolving the dispute and approving the assumption, assumption and assignment, or rejection, as applicable, of the applicable Ballard Lease.  Solely with respect to the Ballard Leases, the Debtors or the Reorganized Debtors, as applicable, shall not modify the Assumed Executory Contracts and Unexpired Leases Schedule after the entry of the Confirmation Order, unless otherwise agreed to by the counterparty to such Ballard Lease.  Each of the Ballard Leases shall be deemed assumed or rejected, as applicable, on or before the Effective Date, unless otherwise agreed to by the applicable counterparty.  For the avoidance of doubt, until such time as the applicable Ballard Lease is assumed or rejected, the Debtors or the Reorganized Debtors, as applicable, shall continue to perform all obligations under the Ballard Lease, including but not limited to the payment of rent thereunder.

49.    **Texas Taxing Authorities.**  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the tax year 2024 and prior Claims of the Texas Taxing Authorities

shall be paid in full within 10 days of the Effective Date or, if later, on the date on which such Claims come due under applicable non-bankruptcy Law.  The Texas Taxing Authorities' Allowed Claims shall, subject to any applicable limitation in the Bankruptcy Code, include all accrued interest properly charged under applicable non-bankruptcy Law through the date of payment, to the extent the Texas Tax Code provides for interest with respect to any portion of the Texas Taxing Authorities' Allowed Claims.   The Reorganized Debtors shall pay their tax year 2025 and subsequent tax years' ad valorem tax liabilities owing to the Texas Taxing Authorities in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the Texas Taxing Authorities to file a Proof of Claim and/or an Administrative Claim and/or request for payment.  The Texas Taxing Authorities shall retain all statutory tax Liens against property of the Debtors or Reorganized Debtors, whether pre- or post-petition, until such outstanding taxes secured by a particular Lien are fully paid.  The Texas Taxing Authorities' Lien priority shall not be primed or subordinated by any exit financing approved by the Bankruptcy Court in conjunction with the Confirmation of the Plan or otherwise.

50.    In the event of a default by the Debtors or Reorganized Debtors to the Texas Taxing Authorities as provided herein, the Texas Taxing Authorities shall provide notice to counsel for the Debtors and/or Reorganized Debtors who shall have fifteen (15) calendar days from the date of such notice Cure the default.  If the default is not Cured, the Texas Taxing Authorities shall be entitled to pursue collection of all amounts owed pursuant to state law outside this Court without further notice.  The Debtors' and Reorganized Debtors' rights and defenses, as applicable, under applicable state Law and the Bankruptcy Code with respect to this provision of this Confirmation

Order, including their right to dispute or object to the Texas Taxing Authorities' Allowed Claims and Liens, are fully preserved.

51.    **Compromise of Controversies.**  In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, and in consideration for the distributions and other benefits, including releases, provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the Committee, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved under the Plan.  Those settlements and compromises are fair, equitable, and reasonable, and the entry of this Confirmation Order constitutes approval of such settlements and compromises under Bankruptcy Rule 9019.

52.    **Approval of Consents and Authorization to Take Acts Necessary to Implement the Plan.**  This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

53.    **Professional Compensation.**  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall

determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed, and which Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization, or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.

54.     The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all such Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

55.     Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything to the contrary in the Plan or Plan Supplement, the engagement or similar retention agreements of the Debtors' professionals shall remain in full force and effect,

including after the Effective Date, solely for the purposes of payment of such professionals'
Professional Fee Claims through the Effective Date.

56.    **Claim Objection Procedures.**    Notwithstanding anything in the Plan or this
Confirmation Order to the contrary, no Claim may be automatically expunged or disallowed absent
further notice of or action, order, or approval of the Bankruptcy Court pursuant to Bankruptcy Rule
3007.

57.    **Continued Effect of Stays and Injunction.**    Unless otherwise provided in the Plan
or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under
sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court that is in
existence upon entry of this Confirmation Order shall remain in full force and effect until the
Effective Date.  All injunctions or stays contained in the Plan or this Confirmation Order shall
remain in full force and effect in accordance with their terms.

58.    **Nonseverability of Plan Provisions Upon Confirmation.**    Each term and
provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan;
and (c) nonseverable and mutually dependent.

59.    **Post-Confirmation Modifications.**    In accordance with Article X.A of the Plan,
without need for further order or authorization of the Bankruptcy Court, the Debtors or the
Reorganized Debtors, as applicable, are authorized and empowered to make any and all
modifications to any and all documents that are necessary or desirable to effectuate the Plan and
the Restructuring Transactions contemplated therein, including the Recapitalization Transaction,
in each case that are consistent with the Plan, subject to any applicable consents or consultation
rights set forth therein.  Subject to certain restrictions and requirements set forth in section 1127
of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set

forth in the Plan, the Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

60.    **Applicable Nonbankruptcy Law.**  The provisions of this Confirmation Order, the Plan and related documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable federal, state, or foreign Law.

61.    **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to File any list, schedule, or statement with the Bankruptcy Court or the U.S. Trustee is permanently waived as to any such list, schedule, or statement not Filed as of the Confirmation Date.

62.    **Governmental Approvals Not Required.**   This Confirmation Order shall constitute all approvals and consents required, if any, by the Laws, rules, or regulations of any state, federal, or other governmental authority, with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement, including the documents contained in the Plan Supplement, the implementation and consummation of the Restructuring Transactions, and any other documents that are necessary or desirable to implement or consummate the Restructuring Transactions.

63.  **Reporting.**  After entry of this Confirmation Order, the Debtors or Reorganized Debtors, as applicable, shall have no obligation to File with the Bankruptcy Court, serve on any parties, or otherwise provide any party with any other report that the Debtors or Reorganized Debtors, as applicable, were obligated to provide under the Bankruptcy Code or an order of the Bankruptcy Court, including obligations to provide any reports to any parties otherwise required under the "first" and "second" day orders entered in these Chapter 11 Cases; *provided* that the Debtors, Reorganized Debtors, or the GUC Trustee, as applicable, will comply with the U.S. Trustee's quarterly reporting requirements.   From the Confirmation Date through the Effective Date, the Debtors will File such reports as are required under the Local Rules.

64.  **Notices of Confirmation and Effective Date.**  The Reorganized Debtors shall cause service of the notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (as may be revised to the applicable Reorganized Debtors, the "Notice of Effective Date"), to be provided in accordance with Bankruptcy Rules 2002 and 3020(c) on all parties served with notice of the Combined Hearing within ten (10) Business Days after the Effective Date or as soon as reasonably practicable thereafter.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

65.     The Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.  The Combined Hearing Notice, this Confirmation Order, and the Notice of Effective Date are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

66.     **Failure of Consummation.**  If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by the Debtors, or any Holders of Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of Claims against or Interests in the Debtors, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity, respectively.

67.     **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101(2) of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

68.     **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

69.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

70.    **Effect of Conflict.**  This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

71.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be Filed shall commence upon the entry hereof.

72.    **Waiver of 14-Day Stay.**  Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

73.    **Dissolution of Committee.**  On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; except with respect to (a) any continuing confidentiality obligations, (b) preparing and prosecuting requests for allowances of compensation and reimbursement of expenses incurred prior to the Effective Date, including the fees and expenses of the Creditors' Committee Professionals, and (c) in the event that the Bankruptcy Court's entry of this Confirmation Order is appealed, participating in such appeal if necessary.  The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the Creditors' Committee Professionals after the Effective Date, except with respect to (a) preparing and prosecuting requests for allowances of compensation and reimbursement of expenses incurred prior to the Effective Date, and (b) in the event that the

Bankruptcy Court's entry of this Confirmation Order is appealed, participating in such appeal if necessary.

74.   **Retention of Jurisdiction.**   The Bankruptcy Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.   Notwithstanding anything in the Plan or this Confirmation Order to the contrary, this Bankruptcy Court retains jurisdiction to the maximum extent otherwise allowed by Law under the applicable circumstances.

# # # END OF ORDER # # #

<u>Submitted by:</u>

| | |
|---|---|
| **GRAY REED** | **KIRKLAND & ELLIS LLP** |
| Jason S. Brookner (TX Bar No. 24033684) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Aaron M. Kaufman (TX Bar No. 24060067) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Amber M. Carson (TX Bar No. 24075610) | Ross J. Fiedler (admitted *pro hac vice*) |
| 1601 Elm Street, Suite 4600 | 601 Lexington Avenue |
| Dallas, Texas 75201 | New York, New York 10022 |

GRAY REED  
Jason S. Brookner (TX Bar No. 24033684)  
Aaron M. Kaufman (TX Bar No. 24060067)  
Amber M. Carson (TX Bar No. 24075610)  
1601 Elm Street, Suite 4600  
Dallas, Texas 75201  
Telephone:    (214) 954-4135  
Facsimile:    (214) 953-1332  
Email:    jbrookner@grayreed.com  
          akaufman@grayreed.com  
          acarson@grayreed.com

**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)  
Ross J. Fiedler (admitted *pro hac vice*)  
601 Lexington Avenue  
New York, New York 10022  
Telephone:    (212) 446-4800  
Facsimile:    (212) 446-4900  
Email:    joshua.sussberg@kirkland.com  
          ross.fiedler@kirkland.com

-and-

Lindsey Blumenthal (admitted *pro hac vice*)  
333 West Wolf Point Plaza  
Chicago, Illinois 60654  
Telephone:    (312) 862-2000  
Facsimile    (312) 862-2200  
Email    lindsey.blumenthal@kirkland.com

*Co-Counsel for the Debtors*  
*and Debtors in Possession*

*Co-Counsel for the Debtors*  
*and Debtors in Possession*

## **Exhibit A**

## **Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ZIPS CAR WASH, LLC, *et al.*, [1] | ) | Case No. 25-80069 (MVL) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THIRD AMENDED JOINT PLAN OF REORGANIZATION OF ZIPS CAR WASH, LLC
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:     (214) 954-4135
Facsimile:     (214) 953-1332
Email:         jbrookner@grayreed.com
               akaufman@grayreed.com
               acarson@grayreed.com

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Ross J. Fiedler (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               ross.fiedler@kirkland.com

-and-

Lindsey Blumenthal (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         lindsey.blumenthal@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

*Co-Counsel for the Debtors and Debtors in Possession*

April 18, 2025

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Zips Car Wash, LLC (3045); Express Car Wash Holdings, LLC (6223); Zips 2900 Wade Hampton, LLC (N/A); Zips 3107 N. Pleasantburg, LLC (N/A); Zips 6050 Wade Hampton, LLC (N/A); Zips Operating Holdings, LLC (2161); Zips Portfolio I, LLC (9999); Zips Portfolio II, LLC (1864); Zips Portfolio III, LLC (N/A); and Zips Portfolio IV, LLC (N/A). The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 8400 Belleview Drive, Suite 210, Plano, Texas 75024.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ...............................................................................................................................1
    A.    Defined Terms. .................................................................................................................1
    B.    Rules of Interpretation. ..................................................................................................15
    C.    Computation of Time. ....................................................................................................16
    D.    Governing Law. ..............................................................................................................16
    E.    Reference to Monetary Figures. .....................................................................................16
    F.    Reference to the Debtors or the Reorganized Debtors. ..................................................16
    G.    Controlling Document. ...................................................................................................16

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS .....................16
    A.    Administrative Claims. ...................................................................................................17
    B.    DIP Claims. ....................................................................................................................17
    C.    Professional Fee Claims. ................................................................................................17
    D.    Priority Tax Claims. .......................................................................................................18
    E.    Payment of Certain Fees and Expenses..........................................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................19
    A.    Classification of Claims and Interests. ...........................................................................19
    B.    Treatment of Claims and Interests. ................................................................................20
    C.    Special Provision Governing Unimpaired Claims. .........................................................23
    D.    Elimination of Vacant Classes. ......................................................................................23
    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes. ....................................23
    F.    Intercompany Interests. ..................................................................................................23
    G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .................23
    H.    Controversy Concerning Impairment. ............................................................................24
    I.    Subordinated Claims and Interests. ................................................................................24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .....................................................24
    A.    General Settlement of Claims and Interests. ..................................................................24
    B.    Restructuring Transactions. ...........................................................................................24
    C.    Reorganized Debtors. .....................................................................................................25
    D.    Sources of Consideration for Plan Distributions. ...........................................................25
    E.    Corporate Existence. ......................................................................................................27
    F.    Vesting of Assets in the Reorganized Debtors. ..............................................................27
    G.    Cancelation of Existing Securities, Agreements, and Interests. .....................................27
    H.    The GUC Trust. ..............................................................................................................28
    I.    Corporate Action. ...........................................................................................................30
    J.    New Organizational Documents. ....................................................................................30
    K.    [Reserved]. .....................................................................................................................31
    L.    Indemnification Obligations. ..........................................................................................31
    M.    Directors and Officers of the Reorganized Debtors. ......................................................31
    N.    Effectuating Documents; Further Transactions...............................................................31
    O.    Securities Law Matters. ..................................................................................................31
    P.    Section 1146 Exemption. ...............................................................................................32
    Q.    Private Company. ............................................................................................................32
    R.    Director and Officer Liability Insurance. .......................................................................32
    S.    Management Incentive Plan. ...........................................................................................33
    T.    Preservation of Causes of Action. ..................................................................................33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..............34
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ...................34
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases......................35
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..................35

D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ..........36
E.    Insurance Policies. ...................................................................................................................36
F.    Reservation of Rights. ...............................................................................................................36
G.    Nonoccurrence of Effective Date. ............................................................................................36
H.    Employee Compensation and Benefits. ....................................................................................37
I.    Contracts and Leases Entered into After the Petition Date. ......................................................37

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................38
A.    Timing and Calculation of Amounts to Be Distributed. ...........................................................38
B.    Distributions on Account of Claims Allowed as of the Effective Date. ....................................38
C.    Disbursing Agent. .....................................................................................................................38
D.    Rights and Powers of Disbursing Agent. ..................................................................................39
E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..............................39
F.    Manner of Payment. ..................................................................................................................40
G.    Indefeasible Distributions. ........................................................................................................41
H.    Securities Law Matters. .............................................................................................................41
I.    Compliance with Tax Requirements. .........................................................................................42
J.    Allocations. ................................................................................................................................42
K.    No Postpetition Interest on Claims. ..........................................................................................42
L.    Foreign Currency Exchange Rate. .............................................................................................42
M.    Setoffs and Recoupment. ...........................................................................................................42
N.    Claims Paid or Payable by Third Parties. ..................................................................................43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
DISPUTED CLAIMS ...............................................................................................................................43
A.    Allowance of Claims. ................................................................................................................43
B.    Claims Administration Responsibilities. ....................................................................................43
C.    Estimation of Claims and Interests. ..........................................................................................44
D.    Adjustment to Claims or Interests without Objection. ..............................................................44
E.    Disallowance of Claims or Interests. .........................................................................................44
F.    No Distributions Pending Allowance. ........................................................................................45
G.    Distributions After Allowance. ..................................................................................................45
H.    Amendments to Claims. .............................................................................................................45

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............45
A.    Discharge of Claims and Termination of Interests. ...................................................................45
B.    **Release of Liens.** ....................................................................................................................46
C.    **Releases by the Debtors.** .....................................................................................................46
D.    **Releases by the Releasing Parties.** ....................................................................................47
E.    **Exculpation.** ........................................................................................................................49
F.    **Injunction.** ...........................................................................................................................49
G.    No Release of Any Claims Held by Governmental Units. .........................................................50
H.    Protections Against Discriminatory Treatment. ........................................................................50
I.    Document Retention. ..................................................................................................................51
J.    Reimbursement or Contribution. ...............................................................................................51

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN..........................51
A.    Conditions Precedent to the Effective Date. ..............................................................................51
B.    Waiver of Conditions. ................................................................................................................52
C.    Effect of Failure of Conditions. ................................................................................................52
D.    Substantial Consummation. .......................................................................................................52

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ......................52
A.    Modification and Amendments. .................................................................................................52
B.    Effect of Confirmation on Modifications. .................................................................................52
C.    Revocation or Withdrawal of Plan. ...........................................................................................53

ARTICLE XI. RETENTION OF JURISDICTION ................................................................................53

ARTICLE XII. MISCELLANEOUS PROVISIONS ...........................................................................55
    A.     Immediate Binding Effect. ........................................................................................55
    B.     Additional Documents. ..............................................................................................55
    C.     Reservation of Rights. ...............................................................................................55
    D.     Payment of Statutory Fees. .......................................................................................55
    E.     Successors and Assigns. .............................................................................................55
    F.     Notices. ......................................................................................................................55
    G.     Term of Injunctions or Stays. ...................................................................................57
    H.     Entire Agreement. .....................................................................................................57
    I.     Plan Supplement. ......................................................................................................57
    J.     Nonseverability of Plan Provisions. .........................................................................57
    K.     Votes Solicited in Good Faith. ..................................................................................57
    L.     Closing of Chapter 11 Cases. ....................................................................................58
    M.     Waiver or Estoppel. ...................................................................................................58
    N.     Creditor Default. .......................................................................................................58

**INTRODUCTION**

Zips Car Wash, LLC ("Zips") and the other above-captioned debtors and debtors in possession (collectively, the "Debtors") propose this joint chapter 11 plan of reorganization (as may be amended, supplemented, or otherwise modified from time to time in accordance with its terms, this "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code.  The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  This Plan does not contemplate substantive consolidation of any of the Debtors.  Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.

Reference is made to the accompanying *Disclosure Statement for the Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*.  Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion on the Debtors' history, business, properties and operations, valuation, projections, risk factors, a summary and analysis of this Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD REVIEW THE SECURITIES LAW RESTRICTIONS AND NOTICES SET FORTH IN THIS PLAN (INCLUDING UNDER Article IV.O HEREOF) IN FULL.

THE ISSUANCE OF ANY SECURITIES REFERRED TO IN THIS PLAN SHALL NOT CONSTITUTE AN INVITATION OR OFFER TO SELL, OR THE SOLICITATION OF ANY INVITATION OR OFFER TO BUY, ANY SECURITIES IN CONTRAVENTION OF APPLICABLE LAW IN ANY JURISDICTION.  NO ACTION HAS BEEN TAKEN, NOR WILL BE TAKEN IN ANY JURISDICTION THAT WOULD PERMIT A PUBLIC OFFERING OF ANY SECURITIES REFERRED TO IN THIS PLAN (OTHER THAN SECURITIES ISSUED PURSUANT TO SECTION 1145 OF THE BANKRUPTCY CODE IN A DEEMED PUBLIC OFFERING) IN ANY JURISDICTION WHERE SUCH ACTION FOR THAT PURPOSE IS REQUIRED.

**ARTICLE I.
DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*1125(e) Exculpation Parties*" means, collectively, and in each case in its capacity as such:  (a) each of the Exculpated Parties; (b) the directors and officers of any of the Debtors; (c) each of the Reorganized Debtors; (d) with respect to the foregoing parties, the Related Parties thereof to the extent permitted under section 1125(e) of the Bankruptcy Code.

2.    "*Ad Hoc Term Lender Group Professionals*" means, collectively, Paul Hastings LLP and other professionals or consultants retained by the Ad Hoc Term Lender Group from time to time, in connection with the Restructuring Transactions, regardless of whether such advisor was retained prior to or following the Petition Date.

3.    "*Ad Hoc Term Lender Group*" means that certain ad hoc group of Term Loan Lenders holding 100% of the aggregate outstanding principal amount of Term Loans and who support the Restructuring Transactions, represented by the Ad Hoc Term Lender Group Professionals.

4.    "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which:  (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

5.        "*Administrative Claim Objection Bar Date*" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is 180 days following the Effective Date; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

6.        "*Administrative Claim*" means a Claim against any of the Debtors arising on or after the Petition Date and before the Effective Date for costs or expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) the Allowed Professional Fee Claims; (c) the DIP Claims; and (d) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

7.        "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity was a debtor in a case under the Bankruptcy Code.

8.        "*Agents*" means the Term Loan Agent, the DIP Agent, and the Exit Facilities Agents.

9.        "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under this Plan, the Bankruptcy Code, or pursuant to a Final Order, including the DIP Orders); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to this Plan or a Final Order, including the DIP Orders; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by this Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or agreement in writing by the Debtors and the Holder of such late-Filed Claim. "Allow" shall have a correlative meaning.

10.        "*Assumed Executory Contracts and Unexpired Leases Schedule*" means, to the extent applicable, in form and substance acceptable to the Term Loan Agent (at the direction of the Required Consenting Term Loan Lenders), a schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases (if any) to be assumed by the Debtors pursuant to this Plan, which schedule (if any) shall be included in the Plan Supplement.

11.        "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, actions, or remedies arising under chapter 5 of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes or common Law, including fraudulent transfer Laws.

12.        "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

2

13.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas.

14.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

15.     "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed, in the State of New York.

16.     "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

17.     "*Cash*" means the legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

18.     "*Causes of Action*" means collectively, any and all Claims, cross claims, third-party claims, Interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, loss, debt, fee or expense, judgment, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, contributions, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, Law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign Law, or breach of any duty imposed by Law or equity, including securities Laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (e) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

19.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

20.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

21.     "*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC, the notice, claims, and solicitation agent proposed to be retained by the Debtors in the Chapter 11 Cases.

22.     "*Claims Bar Date*" means the date established pursuant to an order of the Bankruptcy Court, by which Proofs of Claim must be Filed with respect to Claims, other than Administrative Claims, including Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

23.     "*Claims Objection Deadline*" means the date that is 180 days following the Effective Date.

24.     "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent or the clerk of the Bankruptcy Court.

25.     "*Class*" means a category of Claims or Interests as set forth in Article III of this Plan pursuant to section 1122(a) of the Bankruptcy Code.

26.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

27.    "*Combined Hearing*" means the combined hearing held by the Bankruptcy Court at which the Debtors will seek Confirmation of this Plan under section 1128 of the Bankruptcy Code, and final approval of the Disclosure Statement, as such hearing may be adjourned or continued from time to time.

28.    "*Committee Settlement*" means the settlement agreed to by the Committee Settlement Parties, as incorporated into this Plan and embodied in the term sheet, attached to the Final DIP Order, dated March 17, 2025.

29.    "*Committee Settlement Parties*" means the Debtors, the Creditors' Committee, the DIP Secured Parties, and the Term Loan Secured Parties.

30.    "*Common Equity Interests*" means, collectively, the shares (or any class thereof), common stock, limited liability company interests, and any other equity, ownership, or profits interests of Express Car Wash Holdings, LLC, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of Express Car Wash Holdings, LLC (in each case whether or not arising under or in connection with any Employment Agreement), other than the Preferred Equity Interests.

31.    "*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all employment, wages, compensation, and benefit plans and policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit plans, incentive and retention plans, programs, and payments, life and accidental death and dismemberment insurance plans and programs, for all employees of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

32.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

33.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, and, if applicable, approving the Disclosure Statement and the Solicitation Materials.

34.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to the conditions set forth in this Plan.

35.    "*Consummation*" means the occurrence of the Effective Date.

36.    "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code, on February 21, 2025, as set forth in the *Notice of Appointment of the Official Unsecured Creditors' Committee* [Docket No. 125] and as may be reconstituted from time to time.

37.    "*Creditors' Committee Fees and Expenses*" means all reasonable and documented fees, expenses, and costs incurred by the Creditors' Committee in connection with these Chapter 11 Cases, which shall be satisfied in accordance with the DIP Budget set forth in the Final DIP Order.  Any amounts not incurred by the Creditors' Committee, as allocated under the DIP Budget, shall be allocated to the recoveries for Holders of Allowed General Unsecured Claims.

38.    "*Creditors' Committee Professionals*" means, collectively, (a) Pachulski Stang Ziehl & Jones LLP, and (b) FTI Consulting, Inc.

39.    "*Cure Notice*" means, with respect to an Executory Contract or Unexpired Lease to be assumed under this Plan, a notice that (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory

4

Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under this Plan; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract(s) to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

40.    "*Cure/Assumption Objection Deadline*" means the date that is fourteen (14) days after Filing of the Assumed Executory Contracts and Unexpired Leases Schedule and service of the Cure Notice; *provided* that if any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtors is proposed to be assigned to a third party after the Filing of the initial Assumed Executory Contracts and Unexpired Leases Schedule, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of fourteen (14) days after service of the amended Assumed Executory Contracts and Unexpired Leases Schedule with such modification.

41.    "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under an Executory Contract or Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

42.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', officers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

43.    "*Debtor Release*" means the release set forth in Article VIII.C of this Plan.

44.    "*Debtors*" has the meaning set forth in the preamble.

45.    "*Definitive Documents*" means, collectively, (a) the Disclosure Statement; (b) the Solicitation Materials; (c) the DIP Facility Documents; (d) the Exit Facilities Documents; (e) this Plan (and all exhibits hereto); (f) the Confirmation Order; (g) the order of the Bankruptcy Court approving the Disclosure Statement and the other Solicitation Materials (and motion(s) seeking approval thereof); (h) the New Organizational Documents; (i) all material pleadings filed by the Debtors in connection with the Chapter 11 Cases (and related orders), including the First Day Pleadings and all orders sought pursuant thereto and any pleadings with respect to the sale of any of the Debtors' assets; (j) any Plan Supplement; (k) the GUC Trust Agreement; and (l) any and all filings with or requests for regulatory or other approvals from any governmental entity or unit, other than ordinary course filings and requests, necessary or desirable to implement the Restructuring Transactions, in each case of (a)–(l), in form and substance acceptable to the Required Consenting Term Loan Lenders.

46.    "*DIP Agent*" means Brightwood Loan Services, LLC, in its capacity as administrative agent and collateral agent under the DIP Credit Agreement, and any successors and permitted assigns, in such capacity.

47.    "*DIP Budget*" means the Approved Budget (as defined in the DIP Orders).

48.    "*DIP Claims*" means, collectively, the Claims on account of the $82.5 million loans provided under the DIP Facility.

49.    "*DIP Credit Agreement*" means the debtor-in-possession financing credit agreement by and among the Debtors, the DIP Agent, and the DIP Lenders setting forth the terms and conditions of the DIP Facility.

50.    "*DIP Facility Documents*" means, collectively, the DIP Credit Agreement, the DIP Orders, and any other documents governing the DIP Facility, including any amendments, modifications, and supplements thereto,

and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

51.     "*DIP Facility*" means the superpriority, senior secured debtor-in-possession financing facility to be provided to the Debtors on the terms and conditions set forth in the DIP Credit Agreement and the DIP Orders.

52.     "*DIP Lenders*" means the lenders from time to time under the DIP Credit Agreement.

53.     "*DIP Loans*" means all loans provided by the DIP Lenders under the DIP Facility.

54.     "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

55.     "*DIP Secured Parties*" means the DIP Lenders and the DIP Agent.

56.     "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that:  (a) has been disallowed by a Final Order; (b) is scheduled as zero or as contingent, Disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable Law or this Plan; (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable Law or this Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

57.     "*Disbursing Agent*" means, as applicable, the Reorganized Debtors or the Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions pursuant to this Plan.

58.     "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement.  The Disclosure Statement Order may be the Confirmation Order.

59.     "*Disclosure Statement*" means the disclosure statement in respect of this Plan, including all exhibits and schedules thereto, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, rule 3018 of the Bankruptcy Rules, and any other applicable Law, and all exhibits, schedules, supplements, modifications, and amendments thereto, to be approved pursuant to the Confirmation Order.

60.     "*Disinterested Managers*" means, collectively, Scott Vogel and Robert Warshauer.

61.     "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest (or portion thereof):  (a) that is not Allowed; (b) that is not Disallowed by this Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

62.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under this Plan, which date shall be the Effective Date, or such other date as determined by the Debtors.

63.     "*Effective Date*" means the first date that is a Business Day after the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of this Plan have been satisfied or waived in accordance with Article IX.B of this Plan; and (c) this Plan is declared effective by the Debtors by means of a Filing with the Bankruptcy Court.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

64.     "*Employment Agreement*" means any new and/or existing employment agreement or letter, indemnification agreement, severance agreement, or other agreement entered into with the Debtors' current and former officers and other employees by the Reorganized Debtors.

65.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

66.     "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtor after the Petition Date through and including the Effective Date.

67.     "*Exchange Act*" means the Securities Exchange Act of 1934, as amended and including any rule or regulation promulgated thereunder.

68.     "*Exculpated Parties*" means collectively, and in each case in its capacity as such:  (a) the Debtors; (b) an independent director of the Debtors; (c) the Creditors' Committee and each of its members, solely in their respective capacities as such; and (d) any other statutory committee appointed in the Chapter 11 Cases and each of their respective members, solely in their respective capacities as such.

69.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

70.     "*Exit Facilities Agents*" means the administrative agent and collateral agent under the Exit Facilities Documents, including any successors thereto.

71.     "*Exit Facilities Documents*" means, collectively, the New HoldCo Facility Documents and the New OpCo Facilities Documents.

72.     "*Exit Facilities Lenders*" means the lenders party to the Exit Facilities.

73.     "*Exit Facilities Secured Parties*" means the Exit Facilities Lenders and the Exit Facilities Agents.

74.     "*Exit Facilities*" means, collectively, the New HoldCo Facility, New OpCo RCF, and the New OpCo Term Loan Facility.

75.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

76.     "*File*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.  "Filed" and "Filing" shall have correlative meanings.

77.     "*Final DIP Order*" means the Bankruptcy Court's order approving the DIP Facility and the Debtors' use of Cash Collateral on a final basis.

78.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, modified, or amended, is not subject to any pending stay and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken; or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought, or the new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

79. "*First Day Pleadings*" means the pleadings and related documentation requesting certain emergency relief, or supporting the request for such relief, Filed by the Debtors on or around the Petition Date and heard at the "first day" hearing.

80. "*General Unsecured Claim*" means any Claim that is not a Secured Claim nor any of the following: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a DIP Claim; (f) an Other Secured Claim; (g) a Secured Term Loan Claim; (h) a Term Loan Deficiency Claim; (i) an Intercompany Claim; or (j) a Section 510(b) Claim.

81. "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Reorganized Debtors, as applicable.

82. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

83. "*GUC Trust*" means the trust established for the benefit of the GUC Trust Beneficiaries on the Effective Date in accordance with the Plan and pursuant to the GUC Trust Agreement to receive, hold, and administer the GUC Trust Assets and to reconcile General Unsecured Claims.

84. "*GUC Trust Agreement*" means the trust agreement establishing, among other things, the terms and conditions for the creation and operation of the GUC Trust to be entered into on or before the Effective Date between the Debtors and the GUC Trustee, which agreement shall be in form and substance acceptable to the Creditors' Committee and reasonably acceptable to the Debtors and DIP Lenders.

85. "*GUC Trust Assets*" means, collectively, (i) $2,500,000 in Cash, (ii) the 25% of the net proceeds of the sale of certain Owned Real Estate, up to a maximum recovery of $2,500,000 from the sale of such Owned Real Estate, and (iii) the sum of any amounts allocated in the DIP Budget for (a) the Creditors' Committee Professionals and (b) the Debtors' local counsel, Gray Reed, in each case, that are not incurred.

86. "*GUC Trust Beneficiaries*" means, collectively, the Holders of Allowed General Unsecured Claims; provided, however, for the avoidance of doubt, the Holders of any Term Loan Deficiency Claims shall not be GUC Trust Beneficiaries.

87. "*GUC Trust Fees and Expenses*" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets) incurred by the GUC Trust, any professionals retained by the GUC Trust, and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust that shall be paid out of the GUC Trust Assets.

88. "*GUC Trust Interests*" means, collectively, non-certified beneficial interests in the GUC Trust granted to each GUC Trust Beneficiary, which shall entitle such GUC Trust Beneficiary to its Pro Rata share of the GUC Trust Net Assets, subject to the terms and conditions of this Plan and the GUC Trust Agreement.

89. "*GUC Trust Net Assets*" means the GUC Trust Assets *less* the GUC Trust Fees and Expenses.

90. "*GUC Trustee*" means, in its capacity as such, the Person or Entity selected by the Creditors' Committee to serve as the trustee of the GUC Trust, and any successor thereto, in accordance with the GUC Trust Agreement.

91. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor, as applicable.

92. "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

93.    "*Indemnification Provisions*" means each of the Debtors' indemnification provisions currently in place, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, indemnification agreements, employment contracts, or trust agreements, for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, other Professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

94.    "*Independent Investigation*" means that certain investigation undertaken by the Special Committee, as more fully described in the Disclosure Statement.

95.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

96.    "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against a Debtor arising before the Petition Date.

97.    "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor or an Affiliate of a Debtor.

98.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interest, unit or share in any Debtor and any other rights, options, warrants, rights, restricted stock awards, performance share awards, performance share units, stock appreciation rights, phantom stock rights, redemption rights, repurchase rights, stock-settled restricted stock units, cash-settled restricted stock units, other securities, agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor or any other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor (whether or not arising under or in connection with any Employment Agreement, separation agreement, or employee incentive plan or program of a Debtor as of the Petition Date and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or similar security).

99.    "*Interim DIP Order*" means the Bankruptcy Court's order approving the DIP Facility and the Debtors' use of Cash Collateral on an interim basis.

100.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

101.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

102.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

103.    "*Management Incentive Plan*" means a management incentive plan providing for the issuance from time to time, of awards with respect to the New Zips Common Equity, to be adopted by the New Board following the Effective Date, the terms and conditions of which, including any and all awards granted thereunder, shall be determined by the New Board, including with respect to the participants, allocation, timing, and the form and structure and extent of issuance and vesting.

104.    "*MIP Equity Interests*" means any New Zips Common Equity issued pursuant to the Management Incentive Plan.

105.    "*New Board*" means the board of managers, as applicable, of New Zips as of the Effective Date, to be appointed in accordance with this Plan and New Organizational Documents, whose identities shall be disclosed in the Plan Supplement.

106.    "*New HoldCo Facility Agent*" means the administrative and collateral agent under the New HoldCo Facility Credit Agreement.

107.    "*New HoldCo Facility Credit Agreement*" means the credit agreement with respect to the New HoldCo Facility, as may be amended, supplemented, or otherwise modified from time to time.

108.    "*New HoldCo Facility Documents*" means, collectively, any documents governing the New HoldCo Facility and any and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents (including any amendments, restatements, supplements, or modifications of any of the foregoing).

109.    "*New HoldCo Facility*" means a new senior secured term loan facility, in an initial aggregate principal amount of $150 million comprising New HoldCo Loans, to be incurred by the Debtors on the Effective Date in accordance with this Plan and the Restructuring Transactions Memorandum.

110.    "*New HoldCo Loans*" means loans under the New HoldCo Facility.

111.    "*New Organizational Documents*" means any organizational and governance documents of the Reorganized Debtors, including, without limitation, any general partnership agreements, limited partnership agreements, certificates or articles of incorporation, certificates of formation, bylaws, limited liability company agreements, shareholder agreements (or equivalent governing documents), and the identities of the proposed members of the New Board.

112.    "*New OpCo Facilities Agent*" means the administrative and collateral agent under the New OpCo Facilities Credit Agreement.

113.    "*New OpCo Facilities Credit Agreement*" means the credit agreement with respect to the New OpCo Facilities, as may be amended, supplemented, or otherwise modified from time to time.

114.    "*New OpCo Facilities Documents*" means the collectively, any documents governing the New OpCo Facilities and any and all other agreements, documents, and instruments delivered or entered into in connection therewith, including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents (including any amendments, restatements, supplements, or modifications of any of the foregoing).

115.    "*New OpCo Facilities*" means, collectively, the New OpCo RCF and the New OpCo Term Loan Facility, pursuant to the New OpCo Facilities Credit Agreement.

116.    "*New OpCo Term Loan Facility*" means a new senior secured term loan facility, in an initial aggregate principal amount of $225 million comprising New OpCo Term Loans, to be incurred by the Debtors on the Effective Date in accordance with this Plan and the Restructuring Transactions Memorandum.

117.    "*New OpCo Term Loans*" means term loans issued under the New OpCo Term Loan Facility.

118.    "*New OpCo RCF Loans*" means revolving credit available under the New OpCo RCF.

119.    "*New OpCo RCF*" means the new $15 million senior secured revolving credit facility entered into by the Debtors on the Effective Date in accordance with the New OpCo Facilities Documents.

120.    "*New Zips Common Equity*" means the common equity or membership interests of New Zips to be issued on the Effective Date.

121.    "*New Zips*" means reorganized Zips Car Wash, LLC, any successor or assign thereto, by merger, consolidation or otherwise (including any subsidiary of Zips Car Wash, LLC), or any new corporation, limited liability company, partnership, or other Entity that may be formed to, among other things, directly or indirectly own and hold all stock of the Debtors, in accordance with this Plan, and issue the New Zips Common Equity to be distributed pursuant to the Restructuring Transactions and this Plan.

122. "*Other Priority Claim*" means any Claim, other than an Administrative Claim, DIP Claim, or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

123. "*Other Secured Claim*" means any Secured Claim other than a DIP Claim, Secured Tax Claim, or Term Loan Claim.

124. "*Owned Real Estate*" means those certain real properties owned by Debtors located at:  (i) 7860 Mexico Road, St. Peters, MO 63375; (ii) 12 Junction Driver West, Glen Carbon, IL 62034; (iii) 6678 Mexico Road, St. Peters, MO 63376; and (iv) 994 Parkway, Sevierville, TN 37862.

125. "*Permitted Designee*" means, with respect to any Holder of an Allowed Term Loan Claim, an entity that is an affiliate of such Holder and is designated (in writing in acceptable to the Debtors and delivered to the Debtors and the Claims and Noticing Agent) by such Holder to receive (a) all or any portion of the distributions issuable to such Holder pursuant to Article III.B of this Plan, and (b) the Holder's rights to such distribution as a result of equity contributions (through one or more layers of successive partnerships or entities).

126. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

127. "*Petition Date*" means the first date on which any of the Debtors commence a Chapter 11 Case.

128. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims or other eligible Entities under and in accordance with this Plan.

129. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed with the Bankruptcy Court, and any additional documents Filed as amendments to the Plan Supplement, including the following, as applicable: (a) the New Organizational Documents; (b) the Exit Facilities Documents; (c) to the extent known, the identities of the members of the New Board; (d) the Assumed Executory Contracts and Unexpired Leases Schedule; (e) the Rejected Executory Contracts and Unexpired Leases Schedule; (f) the Schedule of Retained Causes of Action; (g) the Restructuring Transactions Memorandum; and (h) the GUC Trust Agreement. The Plan Supplement shall be deemed incorporated into and part of this Plan as if set forth herein in full; *provided* that in the event of a conflict between this Plan and the Plan Supplement, the Plan Supplement shall control. Notwithstanding anything to the contrary herein, the Creditors' Committee shall not have any consent rights with respect to the Plan Supplement (or any documents set forth therein), other than the GUC Trust Agreement.

130. "*Preferred Equity Interests*" means, collectively, all units of junior preferred equity interests in Express Car Wash Holdings, LLC, and the Senior Preferred Equity Interests.

131. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

132. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class or the proportion of the Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claims under this Plan.

133. "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

134.    "*Professional Fee Escrow Account*" means an account to be funded by the Debtors with Cash on or prior to the Effective Date in an amount equal to the Professional Fee Escrow Amount.

135.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.C of this Plan.

136.    "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code;  or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

137.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable bar date.

138.    "*Reinstate*" means with respect to a Claim or Interest, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  "Reinstated" and "Reinstatement" shall have correlative meanings.

139.    "*Rejected Executory Contracts and Unexpired Leases Schedule*" means, to the extent applicable, a schedule (including any amendments, supplements, or modifications thereto) of Executory Contracts and Unexpired Leases (if any) to be rejected by the Debtors pursuant to this Plan, which schedule (if any) shall be included in the Plan Supplement.

140.    "*Related Party*" or "*Related Parties*" means, with respect to any Entity, in each case in its capacity as such with respect to such Entity, (a) such Entity's current and former Affiliates and (b) such Entity's and such Entity's current and former Affiliates' directors, managers, officers, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, successors, assigns (whether by operation of Law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, fiduciaries, employees, agents (including any disbursing agent), financial advisors, attorneys, accountants, investment bankers, and representatives.

141.    "*Release Opt-Out*" means the election included in the Solicitation Materials to permit Holders of Claims and Interests to opt out of the Third-Party Release.

142.    "*Released Party*" means each of, and in each case in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Secured Parties and Holders of DIP Claims; (d) the Exit Facilities Secured Parties; (e) the Term Loan Secured Parties; (f) the Sponsor; (g) each member of the Ad Hoc Term Lender Group; (h) the Senior Preferred Equity Interest Holders; (i) the Creditors' Committee and each of its members; (j) the Releasing Parties; (k) all Holders of Claims who do not affirmatively opt out of the releases provided by this Plan; (l) each current and former Affiliate of each Entity in clause (a) through the following clause (m); and (m) each Related Party of each Entity in clause (a) through this clause (m); *provided* that, in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases contained in Article VIII.D hereof or (y) timely objects to the releases contained in Article VIII.D hereof and such objection is not resolved before Confirmation.

143.    "*Releasing Party*" means each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Secured Parties and Holders of DIP Claims; (d) each of the Exit Facilities Secured Parties; (e)  the Term Loan Secured Parties; (f) the Sponsor; (g) each member of the Ad Hoc Term Lender Group; (h) the Senior Preferred Equity Interests Holders; (i) the Creditors' Committee and each of its members; (j) all Holders of Claims or Interests that vote to accept this Plan and who do not affirmatively opt out of the releases provided by this Plan; (k) all Holders of Claims or Interests that are deemed to accept this Plan and who do not

affirmatively opt out of the releases provided by this Plan; (l) all Holders of Claims that are deemed to reject this Plan and who do not affirmatively opt out of the releases provided by this Plan; (m) all Holders of Claims who abstain from voting on this Plan and who do not affirmatively opt out of the releases provided by this Plan; (n) all Holders of Claims who vote to reject this Plan and who do not affirmatively opt out of the releases provided by this Plan; (o) current and former Affiliates of each entity in clause (a) through the following clause (p) for which such Entity is legally entitled to bind such Affiliates to the releases contained in this Plan under applicable Law or that have otherwise received proper notice of this Plan; and (p) each Related Party of each Entity in clause (a) through this clause (p) for which such Entity is legally entitled to bind such Related Party to the releases contained in this Plan under applicable Law or that have otherwise received proper notice of this Plan; *provided* that, in each case, an Entity shall not be a Releasing Party if it:  (x) elects to opt out of the releases contained in Article VIII.D hereof or (y) timely objects to the releases contained in Article VIII.D hereof and such objection is not resolved before Confirmation. Notwithstanding the foregoing, no party shall be a Releasing Party to the extent that such party did not receive notice and service of the Release Opt-Out.  For the avoidance of doubt, each Holder of General Unsecured Claims or Interests (except for any Holder of Term Loan Deficiency Claims) that votes to accept this Plan and does not timely and properly submit a Release Opt-Out shall be bound by the releases contained in Article VIII.D hereof.

144.    "*Reorganized Debtors*" means, the Debtors, as reorganized pursuant to and under this Plan, including New Zips, on and after the Effective Date, or any successor or assign thereto, by transfer, merger, consolidation, or otherwise, including any new Entity established in connection with the implementation of the Restructuring Transactions.

145.    "*Required Consenting Term Loan Lenders*" means, as of the relevant date, members of the Ad Hoc Term Lender Group holding at least 50.01% of the aggregate outstanding principal amount of Term Loans that are held by the Ad Hoc Term Lender Group.

146.    "*Restructuring Expenses*" means, collectively, the reasonable and documented fees, costs, and expenses of the Ad Hoc Term Lender Group, including the reasonable and documented fees and expenses of the Ad Hoc Term Lender Group Advisors (subject to the terms of any applicable engagement letter or reimbursement letter with any of the Company Parties) incurred through the Effective Date in connection with the Restructuring Transactions to be paid on the Effective Date.

147.    "*Restructuring Transactions Memorandum*" means the summary of transaction steps to carried out to effectuate the Restructuring Transactions in accordance with this Plan as set forth in the Plan Supplement, and otherwise in a manner consistent with the Definitive Documents.

148.    "*Restructuring Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a corporate restructuring of the Debtors' and the Reorganized Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan, including the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to this Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.B of this Plan.

149.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to this Plan, as the same may be amended, modified, or supplemented from time to time, which, for the avoidance of doubt, shall not include any Causes of Action that are settled, released, or exculpated under this Plan.

150.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

151.    "*SEC*" means the United States Securities and Exchange Commission.

152.    "*Section 510(b) Claims*" means any Claim against any Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract.

153.    "*Secured Claim*" means a Claim that is:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to this Plan, or separate order of the Bankruptcy Court, as a secured claim.

154.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

155.    "*Secured Term Loan Claim*" means any Term Loan Claim that is a Secured Claim.

156.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

157.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

158.    "*Senior Preferred Equity Interest Holder*" means the Holders of Senior Preferred Equity Interests.

159.    "*Senior Preferred Equity Interest*" means approximately 215.4 million units of senior Preferred Equity Interests in Express.

160.    "*Solicitation Materials*" means, collectively, the solicitation materials with respect to this Plan.

161.    "*Special Committee*" means that certain special committee of the board of managers of Zips, comprised of the Disinterested Managers.

162.    "*Sponsor*" means, collectively, Atlantic Street Capital Management, LLC and each of its affiliates and managed funds, including, but not limited to:  ASC – Zips Holdings, Inc. and ICG Shine Partners LP, and each of their respective affiliates and managed funds, that manages or controls, or managed or controlled, directly or indirectly, Claims against or Interests in one or more of the Debtors.

163.    "*Term Loan Agent*" means Brightwood Loan Services, LLC, as administrative agent under the Term Loans, including any successors thereto.

164.    "*Term Loan Claims*" means any Claim on account of the Term Loan Credit Agreement.

165.    "*Term Loan Credit Agreement*" means that certain Credit Agreement, dated as of August 30, 2016 (as amended, supplemented, or otherwise modified from time to time), by and among Zips, as borrower, the other loan parties thereto, the lenders and letter of credit issuers party thereto, and Brightwood Loan Services, LLC, as administrative agent.

166.    "*Term Loan Deficiency Claims*" means, to the extent that the value of the collateral securing any Term Loan Claim is less than the Allowed amount of such Term Loan Claim (after taking into account any Allowed Claims that are senior in priority to the Term Loan Claims), the undersecured portion of such Allowed Claim, which is, for the avoidance of doubt, waived pursuant to this Plan in accordance with the Committee Settlement.

167.    "*Term Loan Lenders*" means the term loan lenders party from time to time to the Term Loan Credit Agreement.

168.    "*Term Loan Secured Parties*" means the Term Loan Lenders and the Term Loan Agent.

169.    "*Term Loans*" means the term loans outstanding under the Term Loan Credit Agreement.

170.    "*Third-Party Release*" means the release set forth in Article VIII.D of this Plan.

171.    "*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

172.    "*Unclaimed Distribution*" means any distribution under this Plan on account of an Allowed Claim or Allowed Interest to a Holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check within 180 calendar days of receipt; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution within 180 calendar days of receipt; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution prior to the deadline included in such request for information; or (d) timely taken any other action necessary to facilitate such distribution.

173.    "*Unexpired Lease*" means a lease of non-residential, real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

174.    "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

175.    "*Voting Report*" means the report certifying the methodology for the tabulation of votes and result of voting on this Plan.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with this Plan or the Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (8) subject to the provisions of any contract, charter, bylaws, limited liability company agreements, operating agreements, certificates of incorporation, or other organization documents or shareholders' agreements, as applicable, instrument, release, or other agreement or document created or entered into in connection with this Plan, the rights and obligations arising pursuant to this Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as

15

applicable; (16) any immaterial effectuating provisions may be interpreted by the Debtors or Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of this Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; and (18) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of this Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the Laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in this Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and this Plan or the Disclosure Statement, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims.*

Except with respect to the Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code, and except to the extent that a Holder of an Allowed Administrative Claim and the Debtors against which such Allowed Administrative Claim is asserted agree to less favorable treatment for such Holder or such Holder has been paid by any Debtor on account of such Allowed Administrative Claim prior to the Effective Date, each Holder of an Allowed Administrative Claim will receive, in full and final satisfaction of its Allowed Administrative Claim, an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, no later than forty-five (45) days after the Effective Date or as soon as reasonably practicable thereafter; (2) if such Administrative Claim is not Allowed as of the Effective Date, on the date of such allowance or as soon as reasonably practicable thereafter, but in any event no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except for Professional Fee Claims and DIP Claims, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Reorganized Debtors, or the property of any of the foregoing, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Reorganized Debtors, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

B.    *DIP Claims.*

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to (a) the principal amount outstanding under the DIP Facility on such date, (b) all interest accrued and unpaid thereon to the date of payment, and (c) all accrued and unpaid fees, expenses, and non-contingent indemnification obligations payable under the DIP Facility Documents and the DIP Orders.  Except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, on the Effective Date, each such Holder of an Allowed DIP Claim shall receive (i) payment in full in Cash or (ii) such other treatment as agreed in writing among the Debtors and the Required Lenders (as defined in the DIP Credit Agreement).

Following such satisfaction of the Allowed DIP Claims, the DIP Facility, the DIP Facility Documents, and all related loan documents shall be deemed canceled, all Liens on property of the Debtors and the Reorganized Debtors arising out of or related to the DIP Facility shall automatically terminate, and all collateral subject to such Liens shall be automatically released, in each case, without further action by the DIP Agent or the DIP Lenders.  The DIP Agent and the DIP Lenders shall take all actions to effectuate and confirm such termination, release, and discharge as reasonably requested by the Debtors or the Reorganized Debtors, as applicable.

C.    *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court Allows, including from the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed, and which

Allowed amount shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code.

2.  <u>Professional Fee Escrow Account</u>.

No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders. No Liens, Claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account. Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.

The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When such Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals, any remaining amount in the Professional Fee Escrow Account shall promptly be transferred to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3.  <u>Professional Fee Escrow Amount</u>.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than five (5) days before the Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

4.  <u>Post-Confirmation Date Fees and Expenses</u>.

Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business for the period after the Confirmation Date without any further notice to or action, order, or approval of the Bankruptcy Court.

D.   *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.   *Payment of Certain Fees and Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein without any requirement to File a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court or U.S. Trustee review or approval; *provided* that the foregoing shall be subject to the Debtors' receipt of an invoice with reasonable detail (but

without the need for time detail or privileged information) from the applicable Entity entitled to such Restructuring Expenses in accordance with, if applicable, such Entity's respective engagement letter or fee letter. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided, however,* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses (it being understood that any difference in (a) estimated Restructuring Expenses on and including the Effective Date as compared to (b) Restructuring Expenses actually incurred on and including the Effective Date shall be reconciled following the submission of a final invoice by the relevant Entity following the Effective Date). In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses related to implementation, Consummation, and defense of this Plan, whether incurred before, on, or after the Effective Date in accordance with, if applicable, the respective engagement letter or fee letter and solely upon receipt of an invoice from any Entity requesting such Restructuring Expenses with reasonable detail (but without the need for time detail or privileged information).

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan constitutes a separate Plan proposed by each Debtor, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 6 | Intercompany Interests | Unimpaired/ Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Preferred Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 9 | Common Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under this Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to in writing by the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date (or, if payment is not then due, in accordance with such Claim's or Interest's terms in the ordinary course of business) or as soon as reasonably practicable thereafter.

1.   Class 1 – Other Secured Claims

   (a)      *Classification*:  Class 1 consists of all Other Secured Claims.

   (b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the applicable Debtor or the Reorganized Debtor, either:

      (i)      payment in full in Cash;

      (ii)      the collateral securing its Allowed Other Secured Claim;

      (iii)      Reinstatement of its Allowed Other Secured Claim; or

      (iv)      such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

   (c)      *Voting*:  Class 1 is Unimpaired under this Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

2.   Class 2 – Other Priority Claims

   (a)      *Classification*:  Class 2 consists of all Other Priority Claims.

   (b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Other Priority Claim:

      (i)      payment in full in Cash; or

      (ii)      treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

   (c)      *Voting*:  Class 2 is Unimpaired under this Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject this Plan.

3.  <u>Class 3 – Term Loan Claims</u>

    (a)    *Classification*:  Class 3 consists of all Term Loan Claims.

    (b)    *Allowance*:  The Term Loan Claims shall be deemed Allowed in full the aggregate principal amount of $653,912,724.08 of principal plus any and all unpaid interest, fees, costs, and premiums owed under the Term Loan Credit Agreement as of the Effective Date, less any Term Loan Deficiency Claims (if applicable).

    (c)    *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Term Loan Claim agrees to less favorable treatment, each Holder of an Allowed Term Loan Claim shall receive, in full and final satisfaction of such Allowed Term Loan Claim, its *Pro Rata* share of:

        (i)    New OpCo Term Loans under the New OpCo Term Loan Facility

        (ii)    New HoldCo Loans under the New HoldCo Facility; and

        (iii)    100% of the New Zips Common Equity, subject to dilution on account of the MIP Equity Interests.

    (d)    *Voting*:  Class 3 is Impaired under this Plan.  Therefore, Holders of Allowed Term Loan Claims are entitled to vote to accept or reject this Plan.

4.  <u>Class 4 – General Unsecured Claims</u>

    (a)    *Classification*:  Class 4 consists of all General Unsecured Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, its *Pro Rata* share of the GUC Trust Interests.

        Pursuant to the Committee Settlement, the Term Loan Secured Parties agreed to waive any Term Loan Deficiency Claims and therefore the Holders of any Term Loan Deficiency Claims shall not receive any GUC Trust Interests or any recovery from the GUC Trust or the GUC Trust Net Assets.

    (c)    *Voting*:  Class 4 is Impaired under this Plan.  Therefore, Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject this Plan.

5.  <u>Class 5 – Intercompany Claims</u>

    (a)    *Classification*:  Class 5 consists of all Intercompany Claims.

    (b)    *Treatment*:  Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor or the Reorganized Debtor, either:

        (i)    Reinstated;

        (ii)    adjusted, converted to equity, set off, settled, distributed, contributed; or

        (iii)    discharged, canceled, and released without any distribution on account of any

Intercompany Claims.

    (c)    *Voting*: Class 5 is (i) Unimpaired if the Allowed Intercompany Claims are Reinstated or (ii) Impaired under this Plan if the Allowed Intercompany Claims are canceled. Holders of Allowed Intercompany Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code or conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

6.    <u>Class 6 – Intercompany Interests</u>

    (a)    *Classification*: Class 6 consists of all Intercompany Interests.

    (b)    *Treatment:* Each Allowed Intercompany Interests shall be, at the option of the applicable Debtor or the Reorganized Debtor, either:

        (i)    Reinstated; or

        (ii)    set off, settled, distributed, contributed, canceled, and/or released without any distribution on account of any Intercompany Interests, or otherwise addressed or eliminated.

    (c)    *Voting*: Class 6 is Unimpaired under this Plan. Holders of Intercompany Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject this Plan.

7.    <u>Class 7 – Section 510(b) Claims</u>

    (a)    *Classification*: Class 7 consists of all Section 510(b) Claims.

    (b)    *Allowance*: Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

    (c)    *Treatment*: On the Effective Date, all Allowed Section 510(b) Claims, if any, shall be canceled, released, and extinguished, and will be of no further force or effect, without any distribution to Holders of Section 510(b) Claims.

    (d)    *Voting*: Class 7 is Impaired under this Plan. Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders (if any) are not entitled to vote to accept or reject this Plan.

8.    <u>Class 8 – Preferred Equity Interests</u>

    (a)    *Classification*: Class 8 consists of all Preferred Equity Interests.

    (b)    *Treatment*: On the Effective Date, all Preferred Equity Interests shall be canceled, released, extinguished, and discharged and will be of no further force or effect. Holders of Preferred Equity Interests shall receive no recovery or distribution on account thereof and each Holder of a Preferred Equity Interest shall not receive or retain any distribution, property, or other value on account of such Preferred Equity Interest.

    (c)    *Voting*: Class 8 is Impaired under this Plan. Holders of Preferred Equity Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the

Bankruptcy Code.  Therefore, Holders of Preferred Equity Interests are not entitled to vote to accept or reject this Plan.

9.  <u>Class 9 – Common Equity Interests</u>

(a)  *Classification*:  Class 9 consists of all Common Equity Interests.

(b)  *Treatment*:  On the Effective Date, all Common Equity Interests shall be canceled, released, extinguished, and discharged and will be of no further force or effect.  Holders of Common Equity Interests shall receive no recovery or distribution on account thereof and each Holder of a Common Equity Interest shall not receive or retain any distribution, property, or other value on account of such Common Equity Interest.

(c)  *Voting*:  Class 9 is Impaired under this Plan.  Holders of Common Equity Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Common Equity Interests are not entitled to vote to accept or reject this Plan.

C.  *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in this Plan, nothing under this Plan shall affect the rights of the Debtors' or the Reorganized Debtors', as applicable, regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under this Plan.

D.  *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.  *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject this Plan, this Plan shall be deemed accepted by such Class.

F.  *Intercompany Interests.*

To the extent Reinstated under this Plan, distributions (if any) on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and to maintain the corporate structure prior to the Petition Date for the ultimate benefit of the holders of New Zips Common Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under this Plan to make certain distributions to the Holders of Allowed Claims.  For the avoidance of doubt, unless otherwise set forth in the Restructuring Transactions Memorandum, to the extent Reinstated pursuant to this Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

G.  *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of this Plan by one or more of the Classes entitled to vote pursuant to Article III.B of this Plan.  The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify this Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including

by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests.*

To the greatest extent provided for by the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, on the Effective Date, the provisions of this Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to this Plan.  To the greatest extent permissible under the Bankruptcy Code, this Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims Against and Interests in the Debtors.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Restructuring Transactions.*

On or before the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall consummate the Restructuring Transactions and are authorized in all respects to enter into and take any actions as may be necessary or appropriate to effectuate the Restructuring Transactions, as set forth in the Restructuring Transactions Memorandum.  The actions to implement the Restructuring Transactions may include (and in any event, shall be in accordance with the consent rights in the Definitive Documents):  (1) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, formation, organization, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree, including the documents constituting the Plan Supplement; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, the Plan Supplement, and the other Definitive Documents, and having other terms to which the applicable Entities may agree; (3) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state Law; (4) the execution and delivery of the New Organizational Documents; (5) the issuance, distribution, reservation, or dilution, as applicable, of the New Zips Common Equity, as set forth herein; (6) the execution and delivery of the Exit Facilities Documents;

(7) the execution of the GUC Trust Agreement and the conveyance of the GUC Trust Assets to the GUC Trust; and (8) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, contemplated by, or necessary to effectuate this Plan, including the Restructuring Transactions.

C.      *Reorganized Debtors.*

On the Effective Date, the New Board shall be established, and the Reorganized Debtors shall adopt their New Organizational Documents.  The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under this Plan as necessary to consummate this Plan.  Cash payments to be made pursuant to this Plan will be made by the Debtors or Reorganized Debtors.  The Debtors and Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or Reorganized Debtors, as applicable, to satisfy their obligations under this Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of this Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement, including the Exit Facilities Documents, shall have the right and authority, without further order of the Bankruptcy Court, to raise additional capital and obtain additional financing, subject to the New Organizational Documents, as the boards of directors or boards of managers of the applicable Reorganized Debtors deem appropriate.

D.      *Sources of Consideration for Plan Distributions.*

The Debtors and the Reorganized Debtors, as applicable, shall fund distributions under this Plan, including the conveyance and funding of the GUC Trust Assets, as applicable, with:  (1) Cash on hand, including Cash from operations; (2) the New Zips Common Equity; (3) the issuance of New HoldCo Loans under the New HoldCo Facility; (4) the issuance of New OpCo Term Loans under the New OpCo Term Loan Facility; (5) the issuance of New OpCo RCF Loans under the New OpCo RCF; (6) the proceeds arising from the sale of the Owned Real Estate; and (7) the sum of any amounts allocated in the DIP Budget for (i) Creditors' Committee Professionals and (ii) the Debtors' local counsel, Gray Reed, in each case, that are not incurred.  For the avoidance of doubt, the sale of the Owned Real Estate shall be subject to the consent of the Required Consenting Term Loan Lenders in consultation with the Creditors' Committee and, in all respects, in accordance with the Committee Settlement.  The GUC Trust shall fund its distributions, as contemplated by the Plan and the GUC Trust Agreement, from the GUC Trust Net Assets.  Each distribution and issuance referred to in Article VI shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance, distribution, or authorization, as applicable, of certain Securities in connection with this Plan, including the New Zips Common Equity, will be exempt from registration under the Securities Act, as described more fully in Article IV.O hereof.

1.    Use of Cash.

The Debtors or Reorganized Debtors, as applicable, shall use Cash on hand to fund distributions to Holders of Allowed Claims, consistent with the terms of this Plan.

2.    Issuance of New Zips Common Equity.

On the Effective Date, New Zips shall issue the New Zips Common Equity pursuant to its New Organizational Documents and this Plan.  The issuance of the New Zips Common Equity, including equity awards reserved for the Management Incentive Plan, by the Reorganized Debtors shall be authorized without the need for any

further corporate action or without any further action by the Debtors or Reorganized Debtors or by Holders of any Claims or Interests, as applicable.

All of the shares (or comparable units) of New Zips Common Equity issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Zips Common Equity shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s). Any Entity's acceptance of New Zips Common Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. The New Organizational Documents will be effective as of the Effective Date and, as of such date, will be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Zips Common Equity will be bound thereby in all respects. The New Zips Common Equity will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company, and the Reorganized Debtors will not be voluntarily subject to any reporting requirements promulgated by the SEC.

    3.   Exit Facilities.

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facilities pursuant to the Exit Facilities Documents. To the extent applicable, Confirmation of this Plan shall be deemed (a) approval of the Exit Facilities (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors, as applicable, in connection therewith), and (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to, without further notice to or order of the Bankruptcy Court, (i) execute and deliver those documents and agreements necessary or appropriate to pursue or obtain the Exit Facilities, including the Exit Facilities Documents, and incur and pay any fees and expenses in connection therewith, and (ii) act or take action under applicable Law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or the Reorganized Debtors, as applicable, may deem to be necessary or appropriate to consummate the Exit Facilities.

As of the Effective Date, all of the Liens and security interests to be granted by the Debtors in accordance with the Exit Facilities Documents: (a) shall be deemed to be granted; (b) shall be legal, valid, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral specified in the Exit Facilities Documents; (c) shall be deemed automatically perfected on or prior to the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit Facilities Documents; and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. To the extent provided in the Exit Facilities Documents, the Exit Facilities Agents are authorized to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The priorities of such Liens and security interests shall be as set forth in the Exit Facilities Documents. The Exit Facilities Agents shall be authorized to make all filings and recordings necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the occurrence of the Effective Date and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The guarantees granted under the Exit Facilities Documents have been granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall be deemed to not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

Notwithstanding the foregoing, New Zips and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents

that may be necessary or desired to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will hereafter cooperate to make all other filings and recordings that otherwise may be necessary under applicable law to give notice of such Liens and security interests to third parties.

E.      *Corporate Existence.*

Except as otherwise provided in this Plan, the Confirmation Order, the Restructuring Transactions Memorandum, or any agreement, instrument, or other document incorporated therein, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under this Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to this Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  After the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  On or after the Effective Date, one or more of the Reorganized Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to this Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in this Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, no Reorganized Debtor shall be treated as being liable on any Claim that is discharged pursuant to this Plan.

G.      *Cancelation of Existing Securities, Agreements, and Interests.*

On the Effective Date, except to the extent otherwise provided in this Plan or Confirmation Order, all notes, instruments, certificates, credit agreements, and other documents evidencing Claims or Interests (other than those Reinstated Claims), Preferred Equity Interests, or Common Equity Interests, shall be canceled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged and deemed satisfied in full, released, canceled, discharged, and of no force or effect, without any need for further action or approval by the Bankruptcy Court for a Holder to take further action, and the Agents shall be released from all duties and obligations thereunder and shall have no further duty, obligation or liability except as provided in this Plan and Confirmation Order.

Holders of or parties to such canceled instruments, Preferred Equity Interests, or Common Equity Interests, and other documentation will have no rights arising from or relating to such instruments, Interests, and other documentation, or the cancellation thereof, except the rights provided for or reserved pursuant to this Plan. Notwithstanding anything to the contrary herein, but subject to any applicable provisions of Article VI hereof, the Term Loan Credit Agreement and DIP Facility Documents shall continue in effect after the Effective Date to the extent necessary to: (a) permit Holders of Claims under the Term Loan Credit Agreement and DIP Facility Documents to receive and accept their respective distributions on account of such Claims, if any; (b) permit the Disbursing Agent or the Agents, as applicable, to make distributions on account of the Allowed Claims under the Term Loan Credit

27

Agreement and DIP Facility Documents; (c) preserve any rights of the Agents, to maintain, exercise, and enforce any applicable rights of indemnity, expense reimbursement, priority of payment, contribution, subrogation, or any other similar claim or entitlement (whether such claims accrued before or after the Effective Date), and preserve any exculpations of the Agents, all of which shall remain fully enforceable against the Reorganized Debtors and all other applicable Persons under the Term Loan Credit Agreement and DIP Facility Documents; (d) permit the Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court, including to enforce the respective obligations owed to them under this Plan and to enforce any obligations owed to their respective Holders of Claims under this Plan in accordance with the applicable Term Loan Credit Agreement and DIP Facility Documents; and (e) permit the Agents to perform any functions that are necessary to effectuate the foregoing; *provided, however*, that (1) the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable, except as expressly provided for in this Plan (including clause (c) of the preceding proviso), and (2) except as otherwise provided in this Plan, the terms and provisions of this Plan shall not modify any existing contract or agreement that would in any way be inconsistent with distributions under this Plan.

H.      *The GUC Trust.*

1.      <u>General Terms</u>.

On the Effective Date, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement and the GUC Trust Assets shall vest or deem to be vested in the GUC Trust irrevocably and automatically without further action by any Person, free and clear of all Claims, Liens, and Interests, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax. Under no circumstance shall the Debtors or the Reorganized Debtors or any other party be required to contribute any additional assets to the GUC Trust other than the GUC Trust Assets. After the Effective Date, neither the Debtors, Reorganized Debtors, nor any other party shall have any interest in the GUC Trust Assets except as expressly set forth herein. For the avoidance of doubt, the Holders of any Term Loan Deficiency Claims shall not be GUC Trust Beneficiaries and shall have no interest in the GUC Trust.

The GUC Trustee shall be the exclusive administrator of the assets of the GUC Trust (including the GUC Trust Assets) for purposes of section 1123(b)(3)(B) of the Bankruptcy Code with respect to any matters involving Class 4 General Unsecured Claims under the Plan for purposes of carrying out the GUC Trustee's duties under the GUC Trust Agreement. The GUC Trustee shall be a party in interest under section 1109(b) of the Bankruptcy Code for purposes of the claims reconciliation process, including objecting to General Unsecured Claims, and any other matter affecting the GUC Trust.

The Debtors and the Reorganized Debtors shall provide commercially reasonable access to the GUC Trustee and any professionals retained by the GUC Trust (at the sole cost and expense of the GUC Trust) to retrieve or access data reasonably necessary to reconcile General Unsecured Claims; *provided* that the Debtors and Reorganized Debtors shall not incur any expenses to provide such access to the GUC Trustee and any professionals retained by the GUC Trust. To the extent the GUC Trust receives information from the Debtors or the Reorganized Debtors in connection with the General Unsecured Claims, the GUC Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtors or the Reorganized Debtors, as applicable, and the Debtors or the Reorganized Debtors, as applicable, retain the sole right to waive their own privileges. Reasonable agreements will be made with the GUC Trustee such that confidential information and privileges are preserved, while permitting the GUC Trustee to use, as necessary to administer the GUC Trust, such information and privilege; absent such agreements, either the GUC Trustee or the Reorganized Debtors may present the issue to the Bankruptcy Court for resolution.

The GUC Trust shall be governed by the GUC Trust Agreement and administered by the GUC Trustee. The powers, rights, and responsibilities of the GUC Trustee shall be specified in the GUC Trust Agreement and shall include, without limitation, the authority and responsibility to take the actions set forth in this Article H.1. Among other things, the GUC Trustee shall have the sole power and authority to distribute and allocate the GUC Trust Net Assets to the GUC Trust Beneficiaries on account of such beneficiaries' GUC Trust Interests in accordance with the treatment set forth in the Plan for Class 4. The powers, rights, and responsibilities of the GUC Trustee specified in the GUC Trust Agreement shall also include the responsibility and requisite power to reconcile General Unsecured

Claims, including asserting any objections thereto. The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust and the GUC Trustee; *provided* that, for the avoidance of doubt, any such indemnification shall be by the GUC Trust and the GUC Trustee alone and shall not implicate the Debtors or the Reorganized Debtors. The GUC Trust may retain and employ professionals, in the GUC Trustee's sole discretion and without the need for approval of the Bankruptcy Court, to aid the GUC Trust in carrying out its purpose as set forth in this Plan and the GUC Trust Agreement. In the event of any conflict between the terms of the Plan and the GUC Trust Agreement, the terms of the Plan shall govern.

From and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, shall, in the ordinary course of business and without the need for any approval by the Bankruptcy Court, pay the GUC Trust Fees and Expenses from the GUC Trust Assets. The Debtors, the Reorganized Debtors, and their Affiliates (and anyone acting on their behalf) shall not be responsible for any costs, fees, or expenses of the GUC Trust. The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, such time as all distributions required to be made by the GUC Trustee under the Plan have been made, but in no event later than the fifth anniversary of the Effective Date (unless extended by order of the Bankruptcy Court).

Upon dissolution of the GUC Trust, any remaining GUC Trust Net Assets shall be distributed to all Holders of Allowed General Unsecured Claims in accordance with the Plan and the GUC Trust Agreement as appropriate; *provided*, *however*, that if the GUC Trustee reasonably determines that such remaining GUC Trust Net Assets are insufficient to render a further distribution practicable, the GUC Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the GUC Trust, (ii) deposit any balance into the registry of the Court so that Holders of General Unsecured Claims with a colorable, unpaid Claim may apply to the Bankruptcy Court for payment, and (iii) dissolve the GUC Trust.

2. Tax Treatment.

In furtherance of this section of the Plan, (i) it is intended that the GUC Trust be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and guidance promulgated in respect thereof, including Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 677 of the Internal Revenue Code consistent with the terms of the Plan, and accordingly, all assets held by the GUC Trust are intended to be deemed for U.S. federal income tax purposes to have been distributed by the Debtors or the Reorganized Debtors, as applicable, directly to the Holders of Allowed General Unsecured Claims in respect of such Claims, and then contributed by such Holders of Allowed General Unsecured Claims to the GUC Trust in exchange for their *Pro Rata* interests in the GUC Trust; (ii) the primary purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Net Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including, without limitation, the Debtors, the Reorganized Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report consistently with such treatment described in provisos (i) and (ii) of this paragraph; (iv) all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report consistently with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee) and prepared pursuant to this Plan for all U.S. federal income tax purposes; (v) the "taxable year" of the GUC Trust shall be the "calendar year" as such terms are defined in section 441 of the Internal Revenue Code; (vi) the GUC Trustee shall be responsible for filing all applicable tax returns for the GUC Trust and shall file such tax returns treating the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vii) the GUC Trustee shall annually send to each Holder of an interest in the GUC Trust a separate statement regarding such Holder's share of items of income, gain, loss, deduction or credit (including receipts and expenditures) of the GUC Trust as relevant for U.S. federal income tax purposes.

Subject to definitive guidance from the United States Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or the receipt of an adverse determination by the United States Internal Revenue Service upon audit if not contested by the GUC Trustee), the GUC Trustee may timely elect to (i) treat any portion of the GUC Trust

allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for United States state and local income tax purposes. If a "disputed ownership fund" election is made, (i) the GUC Trust Assets will be subject to entity-level taxation and (ii) all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report for U.S. federal (and, to the extent applicable state, and local) income tax purposes consistently with the foregoing.

Any taxes (including with respect to earned interest, if any) imposed on the GUC Trust, including as a result of an election to be treated as a "disputed ownership fund" shall be paid by the GUC Trustee out of the assets of the GUC Trust (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). The GUC Trustee may request an expedited determination of taxes of the GUC Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

The GUC Trust shall continue to have all of the rights and powers granted to the GUC Trust as set forth in this Plan and applicable non-bankruptcy law, and the GUC Trustee shall also have the rights, powers, and obligations set forth in the GUC Trust Agreement.

I.      *Corporate Action.*

Upon the Effective Date, as applicable, all actions contemplated under this Plan (including the Restructuring Transactions Memorandum and the other documents contained in the Plan Supplement) shall be deemed authorized and approved by the Bankruptcy Court in all respects without any further corporate or equity holder action, including, as applicable: (1) the adoption or assumption, as applicable, of the Compensation and Benefits Programs; (2) the selection of the directors, officers, or managers for the Reorganized Debtors, including the appointment of the New Board; (3) the authorization, issuance and distribution of the Exit Facilities and the New Zips Common Equity, and the execution, delivery, and filing of any documents pertaining thereto, as applicable; (4) the implementation of the Restructuring Transactions; (5) the entry into the Exit Facilities Documents; (6) all other actions contemplated under this Plan (whether to occur before, on, or after the Effective Date); (7) the adoption of the New Organizational Documents; (8) the assumption, assumption and assignment, or rejection (to the extent applicable), as applicable, of Executory Contracts and Unexpired Leases; and (9) the execution of the GUC Trust Agreement and the conveyance of the GUC Trust Assets to the GUC Trust; and (10) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtors, as applicable, in connection with this Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, members, directors, officers, or managers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under this Plan (or necessary or desirable to effect the transactions contemplated under this Plan) in the name of and on behalf of the Reorganized Debtors, including the New Zips Common Equity, the New Organizational Documents, the Exit Facilities Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under nonbankruptcy law.

J.      *New Organizational Documents.*

On the Effective Date, except as otherwise provided in this Plan and subject to any local Law requirements, the New Organizational Documents shall be automatically adopted by the applicable Reorganized Debtors. To the extent required under this Plan or applicable nonbankruptcy Law, each of the Reorganized Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization if and to the extent required in accordance with the applicable Laws of such jurisdiction. The New Organizational Documents will, among other things, (a) authorize the issuance of the New Zips Common Equity and (b) prohibit the issuance of

non-voting equity Securities, solely to the extent required under section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents.

K.       [Reserved].

L.       *Indemnification Obligations*.

       Subject to section 510 of the Bankruptcy Code, the treatment of Section 510(b) Claims under this Plan, and to the fullest extent permitted under applicable law (including being subject to the limitations of the Delaware General Corporation Law, including the limitations contained therein on a corporation's ability to indemnify officers and directors), all Indemnification Provisions in place as of the Petition Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of, or acting on behalf of, the Debtors than the Indemnification Provisions in place prior to the Effective Date; *provided* that nothing herein shall expand any of the Debtors' indemnification obligations in place as of the Petition Date or constitute a finding or conclusion that any party that may seek indemnification is entitled to indemnification under the terms of such Indemnification Provisions.  For the avoidance of doubt, following the Effective Date, the Reorganized Debtors will not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date or any other individuals covered by any D&O Liability Insurance Policies will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date.

M.       *Directors and Officers of the Reorganized Debtors*.

       As of the Effective Date, the term of the current members of the board of directors or other Governing Body of each of the Debtors shall expire, such current directors shall be deemed to have resigned unless provided otherwise in the Plan Supplement, and all of the directors for the initial term of the New Board shall be appointed.  The members of the New Board will be disclosed in the Plan Supplement or prior to the Combined Hearing, consistent with section 1129(a)(5) of the Bankruptcy Code.  Each director and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the applicable New Organizational Documents and other constituent documents.

N.       *Effectuating Documents; Further Transactions*.

       On and after the Effective Date, the Reorganized Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, the Restructuring Transactions, the Exit Facilities entered into, and the Securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Plan.

O.       *Securities Law Matters*.

       Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and

distribution of the New Zips Common Equity, in each case, as contemplated herein shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. federal, state, or local laws requiring registration prior to the offering, issuance, distribution, or sale of securities.

The New Zips Common Equity to be issued under this Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code and compliance with any applicable securities laws and the rules and regulations of the SEC or state or local securities laws, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Zips Common Equity in the New Organizational Documents and any other applicable regulatory approvals.

Any New Zips Common Equity that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder, and/or other available exemptions from registration of Securities will be considered "restricted securities" under the federal securities laws, will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act or any similarly applicable exemption under state or local securities laws and will be further subject to any restrictions on the transferability of such New Zips Common Equity in the New Organizational Documents and any other applicable regulatory approvals.

P.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors, including the New Zips Common Equity, (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Reorganized Debtors' obligations under and in connection with the Exit Facilities; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Q.      *Private Company.*

The Reorganized Debtors (a) shall continue as and emerge from these Chapter 11 Cases as a private company on the Effective Date and the New Zips Common Equity shall not be listed on a recognized U.S. securities exchange, (b) shall not be voluntarily subject to any reporting requirements promulgated by the SEC, and (c) shall not be required to list the New Zips Common Equity on a recognized U.S. securities exchange, except in each case (if at all), as otherwise may be required pursuant to the New Organizational Documents.

R.      *Director and Officer Liability Insurance.*

The D&O Liability Insurance Policies shall remain in place in the ordinary course during the Chapter 11 Cases and shall go into runoff in accordance with the applicable tail policy for the six-year period following the

Effective Date in accordance with its terms.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, nothing in the Plan, the Plan Supplement, or the Confirmation Order shall reject, terminate, or otherwise reduce the coverage under any D&O Liability Insurance Policies, and on the Effective Date, the D&O Liability Insurance Policies and any agreements, documents, or instruments relating thereto shall remain in full force and effect pursuant to their terms following the Effective Date.  After the Effective Date, all directors, officers, managers, authorized agents or employees of the Debtors (or their affiliates) who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any applicable D&O Liability Insurance Policies for the full term of such policies, including but not limited to the six-year tail period that will go effective upon the Effective Date, in accordance with the terms thereof.  Following the Effective Date, the Reorganized Debtors shall not seek to terminate or reduce the policy limits under the D&O Liability Insurance Policies.  Following the Effective Date, the Reorganized Debtors shall not have any obligation to satisfy any financial terms or obligations under any of the D&O Liability Insurance Policies or any applicable tail, including, without limitation, with respect to any self-insured retention, deductibles, or premiums.

S.      *Management Incentive Plan.*

        After the Effective Date, the New Board shall adopt and implement the Management Incentive Plan, which shall provide for the grants of equity and equity-based awards to employees, directors, consultants, and other service providers of the Reorganized Debtors, as determined at the discretion of the New Board.  The terms and conditions, including with respect to participants, allocation, timing, and the form and structure of the equity or equity-based awards, shall be determined at the discretion of the New Board after the Effective Date.

T.      *Preservation of Causes of Action.*

        In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, each Debtor or Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or exculpated herein (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in this Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.  For the avoidance of doubt, all Avoidance Actions are being released pursuant to this Plan and shall not constitute Retained Causes of Action.

        The Reorganized Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan.**  The Reorganized Debtors may settle any such Cause of Action without any further notice to or action, order, or approval of the Bankruptcy Court.  Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in this Plan or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

        The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation (to the extent applicable) of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to this Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in this Plan, including Article VIII hereof.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action

33

and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.T include any Claim or Cause of Action with respect to, or against, a Released Party or Exculpated Party.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.       *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in this Plan, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected (to the extent applicable) will be deemed rejected by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are:  (1) identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed or rejected (to the extent applicable) by the Debtors pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, and related Cure amounts with respect thereto, or rejections of the Executory Contracts or Unexpired Leases as set forth in this Plan, the Assumed Executory Contracts and Unexpired Leases Schedule, or the Rejected Executory Contracts and Unexpired Leases Schedule (if any), pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein or in the Plan Supplement, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of this Plan or any Final Order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in this Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule or the Rejected Executory Contracts and Unexpired Leases Schedule (if any) at any time up to forty-five (45) days after the Effective Date.  The Debtors or the Reorganized Debtors, as applicable, shall File with the Bankruptcy Court and serve on the applicable counterparty any change to the Rejected Executory Contracts and Unexpired Leases Schedule, Assumed Executory Contracts and Unexpired Leases Schedule, and any applicable counterparty shall have fourteen (14) days from the Filing of such notice to File an objection with the Bankruptcy Court.

34

To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease, such requirement shall be satisfied if the Debtors make an election to assume or reject such Executory Contract or Unexpired Lease prior to the deadline set forth by the Bankruptcy Code or the Bankruptcy Rules, as applicable, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

If certain, but not all, of a contract counterparty's Executory Contracts or Unexpired Leases are assumed pursuant to this Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts or Unexpired Leases that are being rejected pursuant to this Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being assumed pursuant to this Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to this Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Combined Hearing (to the extent not resolved by the parties prior to the Combined Hearing).

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, to the extent applicable, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, including pursuant to this Plan or the Confirmation Order, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. The notice of the Plan Supplement shall be deemed appropriate notice of rejection when served on applicable parties.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease with respect to which a Proof of Claim is not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, the GUC Trust, or their property without the need for any objection by the Reorganized Debtors or the GUC Trust, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall pay all Cure costs (if any) relating to Executory Contracts and Unexpired Leases that are being assumed under this Plan in the ordinary course of business. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed no later than fourteen (14) days after the service of notice of assumption on affected counterparties. Any such request that is not timely Filed shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure costs shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the applicable Cure costs; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure costs despite the failure of the relevant counterparty to File such request for payment of such Cure costs. The Reorganized Debtors also may settle any Cure costs without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under this Plan must be Filed with the Bankruptcy Court on or before the Combined Hearing. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Combined Hearing or as otherwise scheduled for hearing by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure costs, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of any Cure costs shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtors and Reorganized Debtors, as applicable reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later or (1) the date of entry of a Final Order of the Bankruptcy Court (including the Confirmation Order), approving such assumption or (2) the effective date of such assumption without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that nothing herein shall affect the allowance of Claims or any Cure costs agreed to by the Debtors or the Reorganized Debtors, as applicable, in any written agreement amending or modifying any Executory Contract or Unexpired lease prior to its assumption.**

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

To the extent applicable, rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases (if any).

E.      *Insurance Policies.*

The Debtors' insurance policies and any agreements, documents, or instruments relating thereto, that are Executory Contracts shall only be assumed by the Reorganized Debtors to the extent set forth in this Plan and the Plan Supplement.

F.      *Reservation of Rights.*

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection (to the extent applicable), the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.      *Employee Compensation and Benefits.*

1.      Compensation and Benefits Programs.

To the extent they are Executory Contracts, the Reorganized Debtors shall assume the Employment Agreements on the Effective Date solely to the extent set forth in the Plan Supplement.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

To the extent they are Executory Contracts, the Reorganized Debtors shall assume the Compensation and Benefits Programs solely to the extent set forth in the Plan Supplement.  For the avoidance of doubt, the following Compensation and Benefits Programs shall not be assumed:

     (a)  all employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Preferred Equity Interest or Common Equity Interests in any of the Debtors, which shall not constitute or be deemed to constitute Executory Contracts and shall be deemed terminated on the Effective Date;

     (b)  Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court; and

     (c)  Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any Compensation and Benefits Program.

A counterparty to a Compensation and Benefits Program assumed pursuant to this Plan shall have the same rights under such Compensation and Benefits Program as such counterparty had thereunder immediately prior to such assumption (unless otherwise agreed by such counterparty and the applicable Reorganized Debtor(s)); *provided, however*, that any assumption of Compensation and Benefits Programs pursuant to this Plan or any of the Restructuring Transactions shall not trigger or be deemed to trigger any change of control, immediate vesting, termination, or similar provisions therein.

2.      Workers' Compensation Programs.

As of the Effective Date, except as set forth in the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under:  (a) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (b) the Reorganized Debtors shall assume, to the extent they are Executory Contracts, the Debtors' written contracts, agreements, agreements of indemnity, self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.  All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy Law with respect to any such contracts, agreements, policies, programs, and plans; *provided, further*, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable non-bankruptcy law.

I.      *Contracts and Leases Entered into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.       *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in this Plan, on, or as soon as reasonably practicable thereafter, the Effective Date (or, if a Claim or Interest is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim, as applicable, shall receive the full amount of the distributions that this Plan provides for Allowed Claims in the applicable Class. Specifically with respect to Holders of Allowed General Unsecured Claims (but, for the avoidance of doubt, excluding any Holders of Term Loan Deficiency Claims), each such Holder shall receive, upon completion of the Claims reconciliation process, its *Pro Rata* share of GUC Trust Interests in accordance with Article III.B.4 and the GUC Trust Agreement. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in this Plan, Holders of Allowed Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. For the avoidance of doubt, distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

B.       *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the Holder of the applicable Allowed Claim, on the Distribution Record Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall make initial distributions under this Plan on account of Claims Allowed on or before the Effective Date, subject to the Reorganized Debtors' right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of this Plan. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law, section 1129(a)(9)(C) of the Bankruptcy Code, or in the ordinary course of business.

C.       *Disbursing Agent.*

All Plan Distributions shall be made by the Disbursing Agent or the GUC Trustee, acting on behalf of the GUC Trust, as applicable. The Disbursing Agent and the GUC Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent or the GUC Trustee is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors or the GUC Trustee, respectively. For the avoidance of doubt, the GUC Trustee may, in its sole discretion, retain or employ a disbursing agent, which may be the Disbursing Agent, in accordance with the GUC Trust Agreement.

All Plan Distributions to any Disbursing Agent for the benefit of the Holders of Claims listed on the Claims Register (or the Permitted Designees of such Holder, as applicable) shall be deemed completed by the Debtors and/or the Reorganized Debtors when received by such Disbursing Agent. The Plan Distributions shall be made to any such Holders (or the Permitted Designees of such Holder, as applicable) at the direction of the applicable Disbursing Agent.

D.    *Rights and Powers of Disbursing Agent.*

1.    Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register and the loan registers maintained by the Agents shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register or such loan registers as of the close of business on the Distribution Record Date (or the Permitted Designees of such Holders, as applicable).  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General.

Except as otherwise provided herein or in the Plan Supplement, distributions payable to Holders of Allowed Claims shall be made by the Disbursing Agent or the GUC Trustee, as applicable, to the Permitted Designee of each such Holder as of the Distribution Record Date or, if such Holder has not identified a Permitted Designee, to:  (a) such Holder at the address for each such Holder (or its Permitted Designee) as indicated on the Debtors' books and records as of the Distribution Record Date; (b) to the signatory set forth on any Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have not been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Disbursing Agent or GUC Trustee, as appropriate, after the date of any related Proof of Claim; or (d) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf; *provided* that the manner of such distributions shall be determined at the discretion of the Disbursing Agent or the GUC Trustee, as applicable; *provided*, *further*, that the address of each Holder of an Allowed Claim or Interest shall be deemed to be the address set forth in, as appliable, any Proof of Claim or Interest Filed by such Holder, or, if no Proof of Claim or Interest has been Filed, the address set forth in the Schedules.

3.    Minimum Distributions.

No fractional shares (or comparable units) of New Zips Common Equity shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to this Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Zips Common Equity that is not a whole number, the actual distribution of shares of New Zips Common Equity shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares (or comparable units) of New Zips Common Equity to be distributed to Holders of Allowed Claims (or their Permitted Designees) hereunder shall be adjusted as necessary to account for the foregoing rounding.

In the discretion of the Reorganized Debtors, there shall be no (x) cash payments of less than $250.00 or (y) any distribution and issuance of New Zips Common Equity comprising either less than five shares (or comparable units) of New Zips Common Equity or $250.00 in value (as determined in good faith by the Reorganized Debtors), in each case, to a Holder of an Allowed Claim or Allowed Interest (taken together with such Holder's affiliates for the purposes of the foregoing calculations) on account of such Allowed Claim or Allowed Interest.

4.    Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims (or its Permitted Designee, as applicable) is returned as undeliverable (including due to such Holder not delivering or causing to be delivered all signatures, certificates, and other documents that are required of the Holder to receive such distribution, including with respect to the New Zips Common Equity), no distribution to such Holder (or its Permitted Designee, as applicable) shall be made unless and until the Disbursing Agent of the GUC Trustee, as applicable, has determined the then-current address of such Holder (or its Permitted Designee, as applicable), at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors, or the GUC Trust (in the case of distributions from the GUC Trust Net Assets) automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary) and, to the extent such unclaimed distribution comprises New Zips Common Equity, such New Zips Common Equity shall be canceled. Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. The Disbursing Agent shall adjust the number of shares of New Zips Common Equity outstanding as of the date of such cancelation to ensure that the distributions of New Zips Common Equity contemplated under this Plan are given full force and effect. For the avoidance of doubt, treatment of undeliverable distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

5.    Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been canceled in accordance with Article IV.G hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument shall be canceled solely with respect to the Debtors and such cancelation shall not alter the obligations or rights of any non-Debtor third parties (other than the non-Debtor Affiliates) in respect of one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under this Plan, charging liens, priority of payment, and reimbursement and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under this Plan.

F.    *Manner of Payment.*

1.    Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated by this Plan or the Plan Supplement, all distributions of the New Zips Common Equity to the Holders of the applicable Allowed Claims (or their Permitted Designees) under this Plan shall be made by the Disbursing Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

2.    All distributions of Cash, as applicable, to the Holders of the applicable Allowed Claims (or their Permitted Designees) under this Plan shall be made by the Disbursing Agent or the GUC Trustee, as applicable, on behalf of the applicable Debtor or Reorganized Debtor, as applicable.

3.    At the option of the Disbursing Agent or the GUC Trustee, as applicable, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

G.      *Indefeasible Distributions.*

Any and all distributions made under this Plan shall be indefeasible and not subject to clawback or turnover provisions.

H.      *Securities Law Matters.*

Before the Petition Date, the offering, issuance, and distribution (if applicable) of any Securities and any Securities issuable pursuant to the Management Incentive Plan (to the extent not issued pursuant to a registration statement) will be issued pursuant to section 4(a)(2) of the Securities Act. Any Securities distributed pursuant to section 4(a)(2) under the Securities Act will be considered "restricted securities" as defined by Rule 144 of the Securities Act and may not be resold under the Securities Act or applicable state securities laws absent an effective registration statement, or pursuant to an applicable exemption from registration, under the Securities Act and applicable state securities laws and subject to any restrictions in the New Organizational Documents.

After the Petition Date, pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the Securities issuable pursuant to this Plan, excluding the MIP Equity Interests, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act or any similar federal, state, or local law in reliance on section 1145 of the Bankruptcy Code or, only to the extent such exemption under Section 1145 of the Bankruptcy Code is not available, any other available exemption from registration under the Securities Act. Pursuant to section 1145 of the Bankruptcy Code, such Securities (other than the MIP Equity Interests) will be freely transferable under the Securities Act by the recipients thereof, subject to the provisions of (1) section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 1145(b) of the Bankruptcy Code and in compliance with any applicable state or local securities laws, if any, and the rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Securities, (2) any other applicable regulatory approvals, and (3) any restrictions in the Reorganized Debtors' New Organizational Documents.

Any New Zips Common Equity that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D or Regulation S promulgated thereunder, and/or other available exemptions from registration of Securities will be considered "restricted securities" under the federal securities laws, will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act or any similarly applicable exemption under state or local securities laws and will be further subject to any restrictions on the transferability of such New Zips Common Equity in the New Organizational Documents and any other applicable regulatory approvals.

The Reorganized Debtors need not provide any further evidence other than this Plan or the Confirmation Order to any Entity (including to any securities depository or transfer agent for the New Zips Common Equity) with respect to the treatment of the New Zips Common Equity to be issued under this Plan under applicable securities laws. Any securities depository, including The Depository Trust Company or any transfer agent for the New Zips Common Equity shall be required to accept and conclusively rely upon this Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Zips Common Equity to be issued under this Plan are exempt from registration and/or eligible for book-entry delivery, settlement, and depository (to the extent applicable). Notwithstanding anything to the contrary in this Plan, no Entity (including The Depository Trust Company and any transfer agent for the New Interests) may require a legal opinion regarding the validity of any transaction contemplated by this Plan, including, for the avoidance of doubt, whether the New Zips Common Equity to be issued under this Plan are exempt from registration. Recipients of any New Zips Common Equity are advised to consult with their own legal advisors as to the availability of any exemption from registration under the Securities Act and any applicable state "blue sky" for resales of New Zips Common Equity.

Any and all GUC Trust Interests shall be non-transferable other than if transferred by will, intestate, succession, or otherwise by operation of Law. In addition, any and all GUC Trust Interests will not be registered pursuant to the Securities Act or any applicable state or local securities Law pursuant to section 1145 of the Bankruptcy Code, and will be exempt from the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

I.      *Compliance with Tax Requirements.*

In connection with this Plan, to the extent applicable, the Debtors, Reorganized Debtors, Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, Reorganized Debtors, and GUC Trustee reserve the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under this Plan shall, upon request, deliver to the applicable Disbursing Agent an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8.

J.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

K.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the DIP Orders, this Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

L.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

M.      *Setoffs and Recoupment.*

Except as expressly provided in the DIP Orders and this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all Claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

N.      *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties.

The Debtors, the Reorganized Debtors, or the GUC Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Reorganized Debtor, or the GUC Trust, as applicable. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Reorganized Debtor, or the GUC Trust on account of such Claim, such Holder shall, within five (5) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor or the GUC Trust (in the case of distributions from the GUC Trust Net Assets), to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor or the GUC Trust (in the case of distributions from the GUC Trust Net Assets) annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies.

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Allowance of Claims.*

After the Effective Date, except as otherwise expressly set forth herein, each of the Reorganized Debtors or the GUC Trust (solely with respect to General Unsecured Claims) shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy Law.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in this Plan, after the Effective Date, the Reorganized Debtors or the GUC Trust (solely with respect to General Unsecured Claims) shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective

Date, each Reorganized Debtor, or the GUC Trust, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.T of this Plan.

Notwithstanding the foregoing, the Debtors, Reorganized Debtors, and GUC Trust, as applicable shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy Law. If the Debtors, Reorganized Debtors, or GUC Trustee, as applicable, dispute any General Unsecured Claim, such dispute may be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced, provided that, for the avoidance of doubt, the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code to the extent applicable.

C.      *Estimation of Claims and Interests.*

Before or after the Effective Date, the Debtors, the Reorganized Debtors, or the GUC Trust, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under this Plan (including for purposes of distributions), and the relevant Reorganized Debtor or the GUC Trust, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged (including pursuant to this Plan) on the Claims Register by the Reorganized Debtors, the Claims and Noticing Agent, and/or the GUC Trust (with respect to General Unsecured Claims), as applicable, without the Reorganized Debtors or the GUC Trust, as applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed if: (1) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

44

**Except as provided herein or otherwise agreed to by the Reorganized Debtors or the GUC Trust (with respect to any General Unsecured Claims), in their sole discretion, any and all Proofs of Claim Filed after the Claims Bar Date or the Administrative Claims Bar Date, as appropriate, shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

F.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of this Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

G.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of this Plan. After the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent or the GUC Trustee, as applicable, shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

H.      *Amendments to Claims.*

Except as otherwise expressly provided for in this Plan or the Confirmation Order, on or after the Claims Bar Date or the Administrative Claims Bar Date, as appropriate, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court, the Reorganized Debtors, or the GUC Trust (with respect to General Unsecured Claims). Absent such authorization, any new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable Law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Confirmation Order, or any other Definitive Documents, or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted this Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest

that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. Therefore, notwithstanding anything in section 1141(d)(3) to the contrary, all Persons or Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors or the Reorganized Debtors, or the Chapter 11 Cases, that occurred prior to the Effective Date, other than as expressly provided in this Plan, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than the Reinstated Claims) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan.

B.      **Release of Liens.**

        **Except as otherwise provided in the Exit Facilities Documents, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created or entered into, in each case, pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim or any related claim that may be asserted against a non-Debtor Affiliate, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates or any non-Debtor affiliate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim or claim against a non-Debtor Affiliate (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor or non-Debtor Affiliate (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

        **To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to this Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps reasonably requested by the Debtors, the Reorganized Debtors, or the Exit Facilities Agents, that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

C.      **Releases by the Debtors.**

        **Notwithstanding anything contained in this Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the reorganization of the Debtors and implementation of the Restructuring Transactions, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by and on behalf of each and all of the Debtors, their Estates, and if applicable, the Reorganized Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims (other than Reinstated Claims), Interests, obligations, rights, suites, damages, and Causes of Action whatsoever (including any derivative claims and Avoidance Actions,**

asserted or assertable on behalf of the Debtors, the Reorganized Debtors, and their Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein-after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, the Reorganized Debtors, and their Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors, the Reorganized Debtors, and their Estates, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, this Plan, the Plan Supplement, any Definitive Document, or any Restructuring Transaction, contract instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the Exit Facilities, this Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause, the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the releases set forth above, release:  (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions; or (c) the rights of any Holder of Allowed Claims to receive distributions under this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the Restructuring Transactions and implementing this Plan; (b) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.      *Releases by the Releasing Parties.*

Notwithstanding anything contained herein or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, to the maximum extent permitted by applicable Law, in exchange for good and valuable consideration, including the obligations of the Debtors under this Plan and the contributions and services of the Released Parties in facilitating the reorganization of the Debtors and implementation of the

Restructuring Transactions, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is hereby conclusively, absolutely, unconditionally, irrevocably and forever, released, waived, and discharged by each and all of the Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, and their Estates), obligations, rights, suits, or damages, whether liquidated or unliquidated, fixed, or contingent, matured, or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executory, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors, the Reorganized Debtors, and their Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or their Estates (including the capital structure, management, ownership, or operation thereof), the Chapter 11 Cases, the Restructuring Transactions, the Reorganized Debtors (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors, the Reorganized Debtors, and their Estates, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion of enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases including all prior recapitalizations, restructurings, or refinancing efforts and transactions, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the decision to file the Chapter 11 Cases, any related adversary proceedings, the formulation, documentation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, this Plan, the Plan Supplement, any Definitive Document, the DIP Facility, the Exit Facilities, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before, in respect of the foregoing clause, the Effective Date; *provided*, that the provisions of this Third Party Release shall not operate to waive, release, or otherwise impair any Causes of Action arising from willful misconduct, actual or criminal fraud, or gross negligence of such applicable Released Party as determined by the Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing, the Released Parties do not, pursuant to the releases set forth above, release:  (a) any Causes of Action identified in the Schedule of Retained Causes of Action; (b) any post-Effective Date obligations of any party or Entity under this Plan, the Confirmation Order, any Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan or the Restructuring Transactions; or (c) the rights of any Holder of Allowed Claims to receive distributions under this Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of this Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for a hearing; and (g) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

E.    *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be exculpated from, any Claim or Cause of Action arising prior to or on the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Definitive Documents, the Plan Supplement, the Exit Facilities, the DIP Facility, the DIP Orders, the DIP Facility Documents, or the Filing of the Chapter 11 Cases, the solicitation of votes for, or Confirmation of, this Plan, the funding of this Plan, the occurrence of the Effective Date, the administration of this Plan or the property to be distributed under this Plan, the issuance of Securities under or in connection with this Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, if applicable, in connection with this Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.

The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in this Plan, each of the Exculpated Parties and the 1125(e) Exculpation Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.  No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the Exculpated Parties or 1125(e) Exculpation Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to the terms of this paragraph, without this Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against any such Exculpated Party or 1125(e) Exculpation Party and such party is not exculpated pursuant to this provision; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Exculpated Party or 1125(e) Exculpation Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

F.    *Injunction.*

Except as otherwise expressly provided in this Plan or the Confirmation Order or for obligations or distributions issued or required to be paid pursuant to this Plan or the Confirmation Order, effective as of the Effective Date, all Entities that have held, hold, or may hold Claims (other than Reinstated Claims), Interests, Causes of Action, or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action, suit, or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against

49

such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities; (d) asserting any right of setoff or subrogation, or recoupment, of any kind against any obligation due from such Entities or against the property of such Entities or the Estates on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date or has filed a Proof of Claim or proof of Interest indicating that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released, settled or subject to exculpation pursuant to this Plan.  Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under this Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions (including under the Exit Facilities), or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facilities) executed to implement this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to this Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, the 1125(e) Exculpation Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article VIII.C, Article VIII.D, and Article VIII.E hereof, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, 1125(e) Exculpation Party, or Released Party, as applicable.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

G.      *No Release of Any Claims Held by Governmental Units.*

Nothing in this Plan or the Confirmation Order shall effect a release of any claim by any Governmental Unit or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against any party or Person, nor shall anything in this Plan or the Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or Person for any liability of such Persons whatsoever, including, without limitation, any claim, suit, or action arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against such persons, nor shall anything in this Plan or the Confirmation Order exculpate any party or Person from any liability to any Governmental Unit or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental Laws, or any criminal Laws of the United States or any state or local authority against any party or Person.

H.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the

Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

J.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.  the Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect;

2.  the Bankruptcy Court shall have entered the Confirmation Order;

3.  each Definitive Document shall have been executed (or deemed executed) or Filed, as applicable, in form and substance consistent with this Plan, and shall not have been modified in a manner inconsistent therewith, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the Definitive Documents shall have been satisfied or duly waived in writing in accordance with the terms of the applicable Definitive Document;

4.  all actions, documents, and agreements necessary to implement and consummate this Plan shall have been effected and executed (or deemed executed);

5.  the New Zips Common Equity shall have been issued;

6.  the Exit Facilities Documents shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness of the Exit Facilities shall have been satisfied or duly waived in writing in accordance with the terms of the Exit Facilities Documents and the closing of the Exit Facilities shall have occurred;

7.  the GUC Trust Agreement shall have been executed and the GUC Trust Assets shall have vested or be deemed to have vested in the GUC Trust;

8.  the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate this Plan and the Restructuring Transactions;

9.   the New Organizational Documents shall have been adopted;

10.  all fees and expenses of retained professionals that require the Bankruptcy Court's approval shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending the Bankruptcy Court's approval of such fees and expenses; and

11.  all fees, expenses, and other amounts payable to the Ad Hoc Term Lender Group pursuant to the DIP Orders and this Plan, including, without limitation, the Restructuring Expenses shall have been paid in full.

B.      *Waiver of Conditions.*

Any one or more of the conditions to Consummation set forth in this Article IX may be waived, in whole or in part, by the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

C.      *Effect of Failure of Conditions.*

If Consummation does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, or any Holders of Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims against or Interests in the Debtors, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity, respectively.

D.      *Substantial Consummation.*

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in this Plan, the Debtors reserve the right to modify this Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided* that any such modification shall be acceptable to the Required Consenting Term Loan Lenders and, to the extent that they directly and materially affect the Committee or the global settlement with the Committee, the Committee.  Subject to those restrictions on modifications set forth in this Plan, and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify this Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to this Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.       *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or Consummation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain, and including the Allowance or disallowance, of all or any portion of any Claim or Interest or Class of Claims or Interests), assumption or rejection (to the extent applicable) of Executory Contracts or Unexpired Leases effected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Impaired Claim or Impaired Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, classification, or allowance of Impaired Claims or Impaired Interests;

2.   decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

3.   resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection (to the extent applicable) of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (to the extent applicable) or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.   ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of this Plan;

5.   adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.   adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.   enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan, the Confirmation Order, or the Disclosure Statement;

8. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of this Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in this Plan, including under Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.N hereof;

13. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan, the Plan Supplement, or the Disclosure Statement;

15. enter an order concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under this Plan;

17. consider any modifications of this Plan, to Cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22. adjudicate, decide, or resolve any and all matters related to the GUC Trust or the GUC Trust Assets;

23. hear any other matter not inconsistent with the Bankruptcy Code; and

24. enforce all orders previously entered by the Bankruptcy Court.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Organizational Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, the documents contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims against or Interests in the Debtors (irrespective of whether such Holders have, or are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim or Interest has voted on this Plan.

B.      *Additional Documents.*

On or before the Effective Date, (1) the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Plan and (2) the Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims against the Debtors receiving distributions pursuant to this Plan, and all other parties in interest, shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

C.      *Reservation of Rights.*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

D.      *Payment of Statutory Fees.*

All fees due and payable by the Debtors pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee until such Reorganized Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  The GUC Trust shall not be liable for any statutory fees.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

F.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or

made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.  <u>If to a Company Party, to:</u>

    Zips Car Wash, LLC
    Attention:  Kevin Nystrom, Chief Transformation Officer
    E-mail address:  knystrom@alixpartners.com

    with copies to (which shall not constitute notice)

    Kirkland & Ellis LLP
    Kirkland & Ellis International LLP
    601 Lexington Avenue
    New York, New York 10022
    Attention:        Joshua A. Sussberg, P.C., Ross J. Fiedler
    E-mail address:   joshua.sussberg@kirkland.com
                      ross.fiedler@kirkland.com

    -and-

    Kirkland & Ellis LLP
    Kirkland & Ellis International LLP
    333 West Wolf Point Plaza
    Chicago, Illinois 60654
    Attention:        Lindsey Blumenthal
    E-mail address:   lindsey.blumenthal@kirkland.com

2.  <u>If to the Ad Hoc Term Lender Group or Administrative Agent, to:</u>

    Brightwood Loan Services, LLC
    810 Seventh Avenue, 26th Floor
    New York, NY 10019
    Attention:        Loan Operations
    E-mail address:   finance@brightwoodlp.com

    with copies to (which shall not constitute notice):

    Paul Hastings LLP
    200 Park Avenue
    New York, NY 10166
    Attention:        Justin Rawlins, Robert Nussbaum, Matthew Friedrick
    E-mail address:   justinrawlins@paulhastings.com
                      matthewfriedrick@paulhastings.com
                      robertnussbaum@paulhastings.com

3.  <u>If to the Creditors' Committee, to:</u>

    Pachulski Stang Ziehl & Jones LLP
    780 Third Avenue, 34th Floor
    New York, NY 10017
    Attention:        Bradford J. Sandler, Robert J. Feinstein, Paul J. Labov, Judith Elkin
    E-mail address:   bsandler@pszjlaw.com
                      rfeinstein@ pszjlaw.com

plabov@ pszjlaw.com
jelkin@ pszjlaw.com

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date and provided such notice was sent, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.    Term of Injunctions or Stays.

**Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

H.    Entire Agreement.

Except as otherwise indicated, and without limiting the effectiveness of this Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

I.    Plan Supplement.

All exhibits and documents included in the Plan Supplement are an integral part of this Plan and are incorporated into and are a part of this Plan as if set forth in full in this Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.ra.kroll.com/ZipsCarWash or the Bankruptcy Court's website at www.txnb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the Plan Supplement exhibit or document shall control.

J.    Nonseverability of Plan Provisions.

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided, however*, any such alteration or interpretation shall be acceptable to the Debtors. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) nonseverable and mutually dependent.

K.    Votes Solicited in Good Faith.

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Ad Hoc Term Lender Group, and each of their respective Affiliates, agents,

representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under this Plan and any previous plan, and, therefore, neither any of such parties nor individuals nor the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan and any previous plan.

L.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, rule 3022-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.  The Restructuring Transactions Memorandum shall provide that the Reorganized Debtors shall wind down, liquidate, and dissolve any Debtors.  The Reorganized Debtors shall be responsible for facilitating the preparation and filing of all tax returns relating to such Debtors until any such wind down, liquidation, or dissolution (solely as an administrator and not as a principal or equityholder).

M.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

N.      *Creditor Default.*

An act or omission by a holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan.  Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Reorganized Debtors in remedying such default.  Upon the finding of such a default by a creditor, the Bankruptcy Court may: (a) designate a party to appear, sign and/or accept the documents required under this Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce this Plan by order of specific performance; (c) award judgment against such defaulting creditor in favor of the Reorganized Debtors in an amount, including interest, to compensate the Reorganized Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of this Plan.

Dated:  April 18, 2025                    ZIPS CAR WASH, LLC
                                          on behalf of itself and all other Debtors


                                          */s/ Kevin Nystrom*
                                          Name:  Kevin Nystrom
                                          Title:  Chief Transformation Officer

**<u>Exhibit B</u>**

**Proposed Notice of Effective Date**

Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Amber M. Carson (TX Bar No. 24075610)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:     (214) 954-4135
Facsimile:     (214) 953-1332
Email:  jbrookner@grayreed.com
          akaufman@grayreed.com
          acarson@grayreed.com

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Ross J. Fiedler (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:  joshua.sussberg@kirkland.com
          ross.fiedler@kirkland.com

-and-

Lindsey Blumenthal (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:  lindsey.blumenthal@kirkland.com

*Co-Counsel for the Debtors*
*and Debtors in Possession*

*Co-Counsel for the Debtors*
*and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ZIPS CAR WASH, LLC, *et al.*,[1] | ) | Case No. 25-80069 (MVL) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**NOTICE OF (I) ENTRY OF AN ORDER (A) APPROVING THE
DEBTORS' DISCLOSURE STATEMENT AND (B) CONFIRMING THE
THIRD AMENDED JOINT PLAN OF REORGANIZATION OF ZIPS CAR
WASH, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11
OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF THE EFFECTIVE DATE**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Zips Car Wash, LLC (3045); Express Car Wash Holdings, LLC (6223); Zips 2900 Wade Hampton, LLC (N/A); Zips 3107 N. Pleasantburg, LLC (N/A); Zips 6050 Wade Hampton, LLC (N/A); Zips Operating Holdings, LLC (2161); Zips Portfolio I, LLC (9999); Zips Portfolio II, LLC (1864); Zips Portfolio III, LLC (N/A) and Zips Portfolio IV, LLC (N/A).  The location of Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 8400 Belleview Drive, Suite 210, Plano, Texas 75024.

On [●], 2025, the Honorable Judge Michelle V. Larson, United States Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), entered the *Order (I) Approving the Debtors' Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Confirmation Order") confirming the *Third Amended Joint Plan of Reorganization of Zips Car Wash, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 365] (as amended, supplemented, or otherwise modified from time to time, the "Plan")[2] of the above-captioned debtors and debtors in possession (the "Debtors").

The Effective Date of the Plan occurred on **[_____], 2025**.

The Plan and the Confirmation Order are available for inspection. If you would like to obtain a copy of the Confirmation Order or the Plan, you may contact Kroll Restructuring Administration LLC, the notice, claims, and solicitation agent retained by the Debtors in these Chapter 11 Cases, by: (a) calling the Debtors' restructuring hotline at (888) 343-1371 (US/Canada toll free) or +1 (646) 876-2491 (international); (b) visiting the Debtors' restructuring website at: https://cases.ra.kroll.com/Zipscarwash/Home-Index; or (c) emailing [●]. You may also obtain copies of any pleadings Filed in these Chapter 11 Cases for a fee via PACER at: www.txnb.uscourts.gov.

The Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

The Plan and its provisions are binding on the Debtors, the Reorganized Debtors, the Disbursing Agent, the GUC Trustee, and any Holder of a Claim or an Interest and such Holder's respective successors and assigns, whether or not the Claim or the Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

The Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

---

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC BY CALLING (888) 343-1371 (TOLL FREE) or +1 (646) 876-2491 (INTERNATIONAL)**

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.

Dated:  [●], 2025
Dallas, Texas

*/s/Draft*
_____

**GRAY REED**
Jason S. Brookner (TX Bar No. 24033684)
Aaron M. Kaufman (TX Bar No. 24060067)
Amber M. Carson (TX Bar No. 24075610)
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:    (214) 954-4135
Facsimile:    (214) 953-1332
Email:          jbrookner@grayreed.com
                   akaufman@grayreed.com
                   acarson@grayreed.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Ross J. Fiedler (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                   ross.fiedler@kirkland.com

-and-

Lindsey Blumenthal (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile      (312) 862-2200
Email           lindsey.blumenthal@kirkland.com

*Co-Counsel for the Debtors*
*and Debtors in Possession*

*Co-Counsel for the Debtors*
*and Debtors in Possession*